# EXHIBIT A

| From: | Horak, Emily |
|---|---|
| To: | Worley, Regis; WTRI-PMI; Penner, Scott; Patino, Jose; Gray, Justin |
| Cc: | Bakewell, Eric; McMeans, Hannah; Yu, Benita |
| Subject: | WTRI v. PMI - PMI"s Revised Proposed Stipulations |
| Date: | Friday, April 1, 2022 10:10:52 AM |
| Attachments: | PMI - 2022-04-01 Response to WTRI Proposed Stipulations (redline).DOCX |
| | PMI - 2022-04-01 Response to WTRI Proposed Stipulations (clean).DOCX |

[EXTERNAL]

Dear Regis:

Attached is a redline and clean version of PMI's response to WTRI's proposed stipulations.  We adapted WTRI's chart into a format that allowed us to revise and begin to narrow the issues left in dispute.  PMI continues to review the stipulations holistically and reserves the right to modify or withdraw its agreement as stipulations are revised or removed.

We note that WTRI's most recent draft represented a huge step backwards.  WTRI continues to strip out multiple stipulations we have proposed relating to facts about which there appears no legitimate dispute while at the same time continuing to re-insert proposed stipulations that we have previously rejected.  And, we have been clear throughout the entire process that: (1) there are not going to be "stipulations" without agreement; and (2) we have no intention of signing onto a set of "stipulations" that seems unfairly slanted in WTRI's direction or that omits what we believe are facts that do not appear subject to any good faith dispute.  Accordingly, we have revised WTRI's most recent draft to what we believe is a fair document of undisputed facts after taking into account the stipulations WTRI seems determined to exclude.

With respect to the proposed "admissions" section, it seems obvious to us that this is going to be an unwieldy section for any type of joint document or the proposed pretrial order.  Our view is that: (1) WTRI's proposed "admissions" generally are either duplicative of facts that are subject to stipulations (rendering that group duplicative and unnecessary), inaccurate characterizations of what WTRI apparently believes PMI admitted, or misleading statements improperly cherry picked from longer and more fulsome documents and lacking appropriate context; and (2) these "admissions" are simply leading to a situation where Judge Miller is refereeing what are effectively discovery disputes or making factual findings (neither of which is appropriate at this stage).  Moreover, any "joint" document will need to allow the other party sufficient space and opportunity to explain why the proposed "admissions" are improper which seems almost certain to render the document unwieldy and not in a form that Judge Miller will approve.  Nevertheless, we have provided a response to WTRI's proposed "admissions" and included PMI's proposed "admissions" as part of our good faith efforts to prepare the pretrial order, but we continue to think this whole concept is a terrible and ill-conceived idea that should be shelved.

Please let us know if you want to discuss any of these issues further and/or provide us with any further revised document.

Best,

Emily

**Emily Horak**
**Willkie Farr & Gallagher LLP**
2029 Century Park East  | Los Angeles, CA 90067-2905
Direct: +1 310 855 3026 | Fax: +1 310 855 3099
ehorak@willkie.com | vCard | www.willkie.com bio

---

**Important Notice:**  This email message is intended to be received only by persons entitled to receive the confidential information it may contain.  Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged.  Please do not read, copy, forward or store this message unless you are an intended recipient of it.  If you have received this message in error, please forward it back.  Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

51775902

**Workplace Technologies Research, Inc. v. Project Management Institute, Inc.**
**No. 18-cv-1927-JM-MSB**

**PMI'S PROPOSED STIPULATIONS – April 1, 2022**

| WTRI's Proposed Changes (as of 03/24/2022) | PMI's Response (as of 04/01/2022) |
|---|---|
| 1. Plaintiff Workplace Technologies Research, Inc. ("WTRI") is a Delaware corporation with its principal place of business in San Diego, California. | Agreed to by PMI and WTRI |
| 2. Defendant Project Management Institute, Inc. ("PMI") is a Pennsylvania corporation organized as a not-for-profit membership association, with its principal place of business in Newtown Square, Pennsylvania. | Agreed to by PMI and WTRI |
| 3. The parties entered two agreements relating to the co-development of an immersive accelerated learning technology platform for project management professionals. | Agreed to by PMI and WTRI |
| 4. The first agreement is called the "Software Technology Development And Purchase Agreement" (which the parties often refer to as the "Development Agreement") and has an effective date of September 8, 2015. The parties amended the Development Agreement through the "First Amendment to Software Technology Development and Purchase Agreement" (sometimes referred to as the "First Amendment to the Development Agreement"). The First Amendment to the Development Agreement has an effective date of November 30, 2016. | Agreed to by PMI and WTRI |
| 5. The second agreement is called the "Services Agreement" and has an effective date of December 15, 2016. | Agreed to by PMI and WTRI |

- 1 -

51775902

| WTRI's Proposed Changes<br>*(as of 03/24/2022)* | PMI's Response<br>*(as of 04/01/2022)* |
|---|---|
| 6.  PMI and WTRI do not dispute that the Development Agreement, the First Amendment to the Development Agreement, and the Services Agreement, are valid contracts. | **PMI's Proposed Change:**<br><br>PMI and WTRI do not dispute that the Development Agreement, the First Amendment to the Development Agreement, and the Services Agreement, are valid contracts that both parties entered into knowingly and willingly without fraud, duress, coercion, or undue influence. However, the parties dispute to what extent (if at all) the language contained in certain exhibits to the agreements affected the parties' rights and obligations. |
| 7.  The parties' project came to be known as the Project Management Institute Advanced Learning ("PAL") project. | Agreed to by PMI and WTRI |
| 8.  In late 2013, WTRI approached PMI, per the NSF's recommendation, to request a letter of support in connection with a grant WTRI intended to seek from the National Science Foundation ("NSF"). | **PMI's Proposed Change:**<br><br>In late 2013, WTRI approached PMI, per the ~~NSF's~~ National Science Foundation's ("NSF") recommendation, to request a letter of support in connection with a grant WTRI intended to seek from the NSF ~~National Science Foundation ("NSF")~~. |
| 9.  On January 27, 2014, PMI provided the letter of support that WTRI requested for WTRI's grant proposal to NSF. | **PMI's Proposed Change:**<br><br>On January 27, 2014, PMI provided the letter of support that WTRI requested for WTRI's grant proposal to NSF. WTRI did not raise any issues with the letter PMI provided. |
| 10. In early 2014, PMI and WTRI began discussions about a potential commercial partnership to co-develop the technology. | **PMI's Proposed Change:**<br><br>In early 2014, PMI and WTRI began discussions about a potential commercial partnership to co-develop an immersive accelerated learning technology platform for project management professionals~~the technology~~. |

- 2 -

51775902

| WTRI's Proposed Changes (as of 03/24/2022) | PMI's Response (as of 04/01/2022) |
|---|---|
| 11. There are three exhibits attached to the Development Agreement.  Exhibit A is labeled "Product Description" and lists 79 "Acceptance Criteria" agreed to by the parties.  Exhibit B is labeled "Software Development Plan" ("Development Plan").  Exhibit C is labeled "Exhibit C." | Agreed to by PMI and WTRI |
| 12. The parties intended that development of the technology under the Development Agreement would proceed in a phased approach including an Alpha, Beta, and Charlie phase. | **PMI's Proposed Change:**<br><br>The ~~parties intended that development of the technology under the~~ Development Agreement <u>contemplated</u> ~~would proceed in~~ a phased ~~approach~~<u>software build</u> ~~including an~~<u>with three phases named</u> Alpha, Beta, and Charlie~~phase~~. |
| 13. The Development Agreement called for PMI to make an initial payment to WTRI of $1,000,000, as well as potential additional payments, to WTRI toward the development of the technology.  PMI made the $1,000,000 initial payment to WTRI in September 2015. | **PMI's Proposed Change:**<br><br>The Development Agreement called for PMI to make ~~an initial~~<u>a $1,000,000</u> payment to WTRI ~~of $1,000,000 to WTRI~~ toward the development of the technology.  PMI made the $1,000,000 ~~initial~~ payment to WTRI in September 2015. |
| 14. The Development Agreement contemplated three potential additional payments contingent upon satisfaction of the "Acceptance Criteria" contained in the Development Agreement: (a) once WTRI delivered the fifth (version) Alpha Software; (b) after PMI's acceptance of the fifth (version) Alpha Software and upon WTRI's delivery the final production build ("Charlie") Software; and (c) after PMI's acceptance of the Charlie Software. | **PMI's Proposed Change:**<br><br>The Development Agreement contemplated three potential additional payments contingent upon satisfaction of the "Acceptance Criteria" contained in the Development Agreement: (a) once WTRI delivered the fifth (version) Alpha Software; (b) after PMI's acceptance of the fifth (version) Alpha Software and upon WTRI's delivery the final production build ("Charlie") Software; and (c) after PMI's acceptance of the Charlie Software.  <u>The maximum amount of payments from PMI to WTRI as compensation for development of the software under the Development Agreement would be no more than $4,000,000 which would be due only if all milestones were met.</u> |

- 3 -

51775902

| **WTRI's Proposed Changes** (as of 03/24/2022) | **PMI's Response** (as of 04/01/2022) |
|---|---|
| 15. NSF provided $500,000 in "matching" funds to WTRI as a result of PMI's September 2015 payment of $1,000,000 to WTRI. | **PMI's Proposed Change:** NSF awarded a total of $1,250,000 in grants to WTRI to research and develop the technology used for the PAL project. NSF provided $500,000 in "matching" funds to WTRI as a result of PMI's September 2015 payment of $1,000,000 to WTRI under the Development Agreement. |
| 16. On September 10, 2015, PMI provided the second letter of support that WTRI requested for WTRI's grant proposal to NSF. | **PMI's Proposed Change:** On September 10, 2015, PMI provided the second letter of support that WTRI requested for WTRI's grant proposal to NSF. WTRI did not raise any issues with this letter, and WTRI did not request that PMI provide any additional letters. |
| 17. The First Amendment to the Development Agreement provided that the parties would enter into a Services Agreement if PMI rejected the fifth version "Alpha Software" and retained the rejected version. | Agreed to by PMI and WTRI |
| 18. On December 2, 2016, Victor Carter-Bey who was one of PMI's Vice Presidents at the time sent an email to WTRI stating PMI's election to reject the fifth version "Alpha Software" and retain PMI's interest in the rejected software. | **PMI's Proposed Change:** On December 2, 2016, Dr. Victor Carter-Bey who was an (a PMI employee of PMI at the time) sent an email to Dr. Lia DiBello of WTRI stating PMI's election to reject the fifth version "Alpha Software" and retain PMI's interest in the rejected software. |
| 19. The Services Agreement contains three exhibits. Exhibit A is labeled "License Agreement." Exhibit B is labeled "Service Level Agreement." Exhibit C is labeled "Services Detail and Delivery Schedule." | Agreed to by PMI and WTRI |

51775902

| WTRI's Proposed Changes (as of 03/24/2022) | PMI's Response (as of 04/01/2022) |
|---|---|
| 20. PMI paid WTRI $1,137,623 to WTRI under the Services Agreement. | **PMI's Proposed Change:** PMI paid WTRI $1,137,623 ~~to WTRI~~ in full satisfaction of the contractual owed to WTRI under the Services Agreement. These payments by PMI to WTRI included $568,811.50 on or around December 15, 2016; $284,405.75 on or around June 1, 2017; and $284,405.75 on or around December 14, 2017. |
| 21. In or around March 2018, Brian Weiss, who was one of PMI's Vice Presidents at the time, explained to Dr. Lia DiBello, who was WTRI's President at the time, that PMI had invested over $10 million in the PAL project. | **PMI's Proposed Change:** In or around March 2018, Brian Weiss, ~~(who was an employee of~~a PMI employee) at the time~~) explained to~~ told Dr. Lia DiBello ~~of, who was WTRI's President at the time~~WTRI, that PMI ~~had~~ invested over $10 million in the PAL project. That $10 million investment by PMI included PMI's ~~PMI directly paid~~payments to WTRI ~~of~~ over $2.1 million ~~in connection with the PAL project~~pursuant to the Development and Services Agreements. |
| 22. WTRI sent PMI a letter dated June 18, 2018 containing a notice of termination of the Development Agreement and claiming alleged damages. | Agreed to by PMI and WTRI |
| 23. PMI and WTRI jointly collaborated on two software programs under the Development Agreement and Services Agreement: (a) Proteum ERP rehearsal, created under the Development Agreement; and (b) IceBochz rehearsal, created under the Services Agreement. | **PMI's Proposed Change:** PMI and WTRI jointly collaborated on two software programs under the Development Agreement and Services Agreement: (a) Proteum ERP rehearsal~~, created under the Development Agreement~~; and (b) IceBochz rehearsal~~, created under the Services Agreement~~. |
| 24. WTRI developed the Maxx Virtual World Agile Leadership Rehearsal.  WTRI advertises Maxx Virtual World Agile Leadership Rehearsal as one of its products. | Agreed to by PMI and WTRI |

- 5 -

51775902

| **WTRI's Proposed Changes**<br>*(as of 03/24/2022)* | **PMI's Response**<br>*(as of 04/01/2022)* |
|---|---|
| 25. Four third-parties also worked on developing parts of the PAL project: (a) Neudesic, LLC.; (b) Czarina Games; (c) KMS Technology, Inc.; and (d) Creative Veteran Productions, LLC ("CVP"). | **PMI's Proposed Change:**<br><br>~~Four~~ At least five third-parties also ~~worked on developing parts of~~ served as consultants for or otherwise worked on the PAL project: (a) Neudesic, LLC; (b) Czarina Games LLC; (c) KMS Technology, Inc.; (d) PricewaterhouseCoopers ("PwC"); and (e) Creative Veteran Productions, LLC ("CVP"). |

- 6 -

51775902

## DISPUTED ITEMS WTRI WISHES TO INCLUDE IN PROPOSED PRETRIAL ORDER ~~PMI'S ADMISSIONS TO WTRI~~

PMI rejects the basic principle of including a "disputed items" or purported "admissions" section in the proposed pretrial order.  First, obviously, there is a dispute relating to these purported "admissions" which contradicts the notion that there is some agreed upon or undisputed "admission" at issue.  Second, WTRI's claimed "admissions" by PMI tend to be duplicative of what the parties already agreed to in their Stipulations, inaccurate recitations of what PMI actually stated in various pleadings and discovery responses, and/or misleading and confusing characterizations of PMI's statements that lack sufficient and necessary context.  Third, as PMI believes that these are not undisputed and unequivocal "admissions," resolving any disputes necessarily requires this Court to referee discovery disputes or make factual findings neither of which are appropriate at this stage of the proceedings.

Simply put, referring to any of the items WTRI proposes as "admissions" is confusing and misleading because these were not unqualified admissions.  A "disputed items" section is: (1) an improper and unnecessary waste of party and judicial resources; (2) an improper attempt to prejudice and confuse the Court and the jury; and (3) an improper attempt to circumvent the process of reaching stipulations mutually agreed upon by both parties.

PMI further finds WTRI's proposed "admissions" improper for at least the following reasons:

- PMI rejects each and every item to the extent the items were stripped of necessary context.  For example, a common trope employed by WTRI is cherry picking a statement from PMI's Answer, Counterclaims, or discovery responses while excluding the rest of PMI's response or context.  Taking one phrase or sentence out of context is prejudicial and confusing to the jury.

- PMI rejects each and every item below to the extent each item is duplicative and cumulative of other items and stipulations already agreed to by the parties.

- PMI further rejects each and every item below to the extent the items are irrelevant or provide no value to the trier of fact.  PMI believes it is inappropriate to present disorganized facts that lack appropriate context to the jury before the parties' cases are presented.  This will only confuse the jury.  And, the parties need to present evidence on the items below regardless of whether they are read to the jury, so the "disputed items" section does not save the parties any time.

- PMI also rejects each and every item below on the basis that WTRI engages in naked and improper gamesmanship with respect to these purported "admissions."  PMI attempted to admit and deny facts in its pleadings and discovery responses in good faith.  In contrast, WTRI only admitted a very limited number of facts in its Answer (approximately 24 facts compared to PMI's approximately 65 admissions in its Answer), denied all of PMI's requests for admission, and refuses to admit basic facts for which there is no legitimate dispute and/or WTRI agreed in its response to PMI's summary judgment motion.  Therefore, WTRI should be prohibited from using its refusal to participate in the pleading and discovery

- 7 -

51775902

processes in good faith to its advantage at trial.  *See, e.g.*, Counterclaims ¶ 16;
Answer to Counterclaims ¶ 16 (denying that PMI made an initial payment to
WTRI or $1,000,000 under the Development Agreement).

| Item | ~~Admission~~Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|---|---|---|---|
| 1 | PMI held discussions with WTRI at some point concerning WTRI's technology and a potential commercial relationship between PMI and WTRI. | D.I. 46, ¶ 8 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations Nos. 3, 4, 5, 7, 8.<br>• Whether the parties discussed a potential relationship is: (1) not what the case is about; (2) an unnecessarily general version of what the parties already agreed to as part of the proposed stipulations regarding their relationship; and (3) a confusing distraction given that the case is about the actual agreements that the parties entered. |

Formatted Table

- 8 -

51775902

| Item | ~~Admission~~Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|---|---|---|---|
| 2 | PMI discussed with WTRI an interest in expanding PMI's product offerings. | D.I. 46, ¶ 9 | • Whether PMI discussed an interest in expanding its product offerings is irrelevant to the issues before the jury.<br>• This item is taken out of context as PMI denied the remaining allegations associated with this item. Namely, PMI denied WTRI's allegation that "PMI's products were not as attractive as they once were in the past and PMI believed that its involvement with WTRI's proposal to the NSF would enhance PMI's product offerings." *See* D.I. 37, ¶ 9; D.I. 46, ¶ 9. WTRI's use of this item to prove its allegations in Paragraph 9 of the Third Amended Complaint is disingenuous given PMI's denial of the associated allegations.<br>• This item may be confusing to the jury to the extent that it is vague and ambiguous as to "expanding PMI's product offerings" and the jury may be presented with the complete context during PMI's case. |

Formatted Table

- 9 -

51775902

| Item | ~~Admission~~Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|---|---|---|---|
| 3 | WTRI provided demonstrations of its technology to PMI employees in late 2014 and early 2015. | D.I. 46, ¶ 10 | • Whether WTRI demonstrated the technology to PMI is irrelevant to the issues before the jury.<br>• This item is taken out of context as PMI denied the remaining allegations associated with this item. Namely, PMI denied WTRI's allegations in the same paragraph that "PMI offered to co-develop and integrate WTRI's software into PMI's enterprise system ('Enterprise Architecture') for project management training and education." *See* D.I. 37, ¶ 10; D.I. 46, ¶ 10.  WTRI's use of this item to prove its allegations in Paragraph 10 of the Third Amended Complaint is disingenuous given PMI's denial of the associated allegations.<br>• This item is confusing to the extent that it is vague and ambiguous as to what "technology" was demonstrated and to which PMI employees. |

Formatted Table

51775902

| Item | ~~Admission~~Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|------|-------------------------------|------------|---------------|
| 4 | WTRI showed PMI its calculations and projections seeking to demonstrate that WTRI's technology could produce hundreds of millions of dollars in revenue for PMI. | D.I. 46, ¶ 11 | • This item is taken out of context as PMI denied the remaining allegations associated with this item. PMI has always hotly disputed the accuracy of these projections (even at the time WTRI presented them). This selection out of context is confusing and prejudicial because it ignores PMI's adamant disagreement. *See* D.I. 46, ¶ 11. |
| 5 | Under the terms of the Development Agreement, PMI was required to make an upfront payment of $1,000,000 to WTRI toward purchase of the technology to be developed and ultimately made this payment to WTRI. | D.I. 46, ¶ 21 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 13. |
| 6 | PMI made an initial payment of $1,000,000 to WTRI toward the purchase of the software to be developed in accordance with terms of the Development Agreement. | D.I. 46, ¶ 17 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 13. Moreover, this item is cumulative of Item No. 5 above. |
| 7 | A Software Development Plan ("Development Plan") was labeled as Exhibit B and attached as an addendum to the Development Agreement. | D.I. 46, ¶ 27 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 11.<br>• This item is not properly contextualized with references to the other exhibits to the Development Agreement. |

Formatted Table

- 11 -

51775902

| Item | ~~Admission~~Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|------|------------------------------------------------------------|-------------------|---------------|
| 8 | The Development Agreement incorporated the Software Development Plan. | D.I. 46, ¶ 29; see also D.I. 215 at 13 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 11.<br>• This item is also not properly contextualized because PMI disputes to what extent the Software Development Plan dictates the parties' obligations. |
| 9 | WTRI pitched the software to be developed as having multi-player and single player capabilities. | D.I. 46, ¶ 71 | • Whether WTRI pitched the software to include multi-player capabilities is irrelevant to the issues before the jury.<br>• This item is not properly contextualized.  First, this item does not explain what "multi-player and single player capabilities" are.  Then, this item does not explain the significance of this fact. Finally, PMI has always disputed which software was more valuable.  Namely, PMI denied WTRI's allegations in the same paragraph that "PMI had begun to focus almost exclusively on the development of the single-player mode for the software – doing little to advance the far more valuable multi-player environment."  *See* D.I. 37, ¶ 71; D.I. 46, ¶ 71.  WTRI's use of this item to prove its allegations in Paragraph 71 of the Third Amended Complaint is disingenuous given PMI's denial of the associated allegations. |

Formatted Table

- 12 -

51775902

| Item | ~~Admission~~Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|------|---------------------------------------------------------|---------------------|---------------|
| 10 | The software developed pursuant to the Development Agreement was to be developed in accordance with acceptance criteria mutually agreed to by the parties (the "Acceptance Criteria"). | D.I. 46, ¶ 30 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.,* Proposed Stipulations Nos. 11, 14. |
| 11 | The Acceptance Criteria mutually agreed to by the parties were incorporated into the Development Agreement. | D.I. 47, ¶ 19 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.,* Proposed Stipulations Nos. 11, 14. |

Formatted Table

- 13 -

51775902

| Item | ~~Admission~~Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|---|---|---|---|
| 12 | PMI's employees attended a meeting at WTRI's San Diego office at or around December 14, 2015. | D.I. 46, ¶ 46 | • Whether PMI and WTRI met in San Diego around December 14, 2015 is irrelevant to the issues before the jury.<br>• This item is taken out of context as PMI denied the remaining allegations associated with this item. Namely, PMI denied WTRI's allegations in the next paragraph that "At this meeting, Ms. Holloway was pressed on the PMI content development team's failure to provide content, and she had an emotional episode and confessed that her team could not perform PMI's obligations under the Development Agreement with the resources provided by PMI." *See* D.I. 37, ¶ 47; D.I. 46, ¶ 47. WTRI's use of this item to prove its allegations in Paragraph 47 of the Third Amended Complaint is disingenuous given PMI's denial of the associated allegations.<br>• This item may be confusing to the jury to the extent that it is vague and ambiguous as to "PMI's employees" and the jury may be presented with the complete context during PMI's case. |
| 13 | PMI hired Neudesic, LLC ("Neudesic"). | D.I. 46, ¶ 52 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 25. |

- 14 -

Formatted Table

51775902

| Item | ~~Admission~~Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|---|---|---|---|
| 14 | PMI and WTRI executed the First Amendment to Software Technology Development and Purchase Agreement on or about November 30, 2016 (the "Amended Development Agreement"). | D.I. 46, ¶ 79 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 4. |
| 15 | WTRI introduced PMI to Creative Veterans Production ("CVP"). | D.I. 46, ¶ 88 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 25. |
| 16 | PMI discussed with Dr. DiBello the development of an Agile product and entering into a Services Agreement with WTRI. | D.I. 46, ¶ 102 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 5.<br>• Whether PMI discussed entering into the Services Agreement is irrelevant to the issues before the jury.<br>• Moreover, this item is an example of an item that is cumulative and otherwise confusing. This item proposes an obvious fact to the extent the parties executed a Services Agreement and stipulated to the agreement. |
| 17 | PMI and WTRI both executed the Services Agreement. | D.I. 46, ¶ 107 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 5. |

- 15 -

Formatted Table

51775902

| Item | ~~Admission~~Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|---|---|---|---|
| 18 | The parties contemporaneously executed a license agreement dated December 15, 2016 (the "License Agreement"). | D.I. 47, ¶ 30 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 19. |
| 19 | The Services Agreement incorporated the License Agreement. | D.I. 47, ¶¶ 38, 52, 57 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 19. |
| 20 | The Services Agreement contains an Exhibit C titled "Services Detail and Delivery Schedule." | D.I. 46, ¶ 109 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 19. |
| 21 | WTRI was to be engaged in development under the Services Agreement. | D.I. 46, ¶ 122 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 5. <br> • This item may be confusing to the jury to the extent that it is vague and ambiguous as to "WTRI was to be engaged in development." |
| 22 | Dr. DiBello discussed with PMI her intention to include certain entities to participate in the Proteum pilot program. | D.I. 46, ¶ 115 | • This item may be confusing to the jury and prejudicial to the extent that it is pulled out of context because PMI has always disputed the veracity of Dr. DiBello's statements about participants in pilot programs. *See* D.I. 37, ¶ 115; D.I. 46, ¶ 115. |

Formatted Table

- 16 -

51775902

| Item | ~~Admission~~Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|------|------|------|------|
| 23 | WTRI created "IceBochz." | D.I. 46, ¶ 123 | • This item may be confusing to the jury and prejudicial to the extent that it is pulled out of context and is vague and ambiguous as to "created." Namely, "IceBochz" was created pursuant to WTRI's contractual obligations for software to be owned by PMI. *See* D.I. 37, ¶ 123 ("WTRI, nonetheless, as part of its agreement with PMI created, designed, and provided the virtual company to PMI. The name of the virtual company was IceBochz."). |
| 24 | WTRI registered a domain for "IceBochz." | D.I. 46, ¶ 123 | • This item may be confusing to the jury and prejudicial to the extent that it is pulled out of context. Namely, "IceBochz" was created pursuant to WTRI's contractual obligations for software to be owned by PMI. *See* D.I. 37, ¶ 123 ("WTRI, nonetheless, as part of its agreement with PMI created, designed, and provided the virtual company to PMI. The name of the virtual company was IceBochz."). <br>• This item may be confusing to the jury and prejudicial to the extent that there is no context to explain the relevance or significance of this fact. |

Formatted Table

- 17 -

51775902

| Item | ~~Admission~~Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|------|---|---|---|
| 25 | Mr. Weiss and Dr. DiBello discussed a sale back to WTRI of the technology that PMI had purchased from WTRI. Mr. Weiss told Dr. DiBello that PMI had invested over $10,000,000 in the technology. | D.I. 46, ¶ 129 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 21. |
| 26 | PMI engaged in discussions with WTRI to attempt to resolve issues that had been raised in regard to the Services Agreement. | D.I. 46, ¶ 136 | • This item is taken out of context as PMI denied the remaining allegations associated with this item.  *See* D.I. 46, ¶ 136.  First, the item is vague and ambiguous as to "issues that had been raised." Second, the item, when placed alongside the following Item Nos. 27-28 is misleading.  PMI alleges that this action was made by WTRI in bad faith. *See* D.I. 47, ¶¶ 28, 31-38.  The current framing is a skewed selection of cherry picked facts to craft a narrative that is different from what PMI alleges.<br>• This item may be confusing to the jury and prejudicial to the extent that there is no context to explain the relevance or significance of this fact. |

Formatted Table

51775902

| Item | ~~Admission~~Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|------|------|------|------|
| 27 | WTRI prepared a written proposal for further product development. | D.I. 46, ¶ 137 | • This item is taken out of context as PMI denied the remaining allegations associated with this item.  *See* D.I. 46, ¶ 137.  First, the item is vague and ambiguous as to "proposal for further product development."  Second, the item, when placed alongside the Item Nos. 26 and 28 is misleading.  PMI alleges that this action was made by WTRI in bad faith.  *See* D.I. 47, ¶¶ 28, 31-38.  The current framing is a skewed selection of cherry picked facts to craft a narrative that is different from what PMI alleges.<br>• This item may be confusing to the jury and prejudicial to the extent that there is no context to explain the relevance or significance of this fact. |

Formatted Table

51775902

| Item | ~~Admission~~Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|------|------|------|------|
| 28 | PMI did not accept WTRI's proposal for further product development. | D.I. 46, ¶ 138 | • This item is taken out of context as PMI denied the remaining allegations associated with this item. *See* D.I. 46, ¶ 138.  First, the item is vague and ambiguous as to "issues that had been raised." Second, the item, when placed alongside the preceding Item Nos. 26-27 is misleading.  PMI alleges that this action was made by WTRI in bad faith. *See* D.I. 47, ¶¶ 28, 31-38.  The current framing is a skewed selection of cherry picked facts to craft a narrative that is different from what PMI alleges.<br>• This item may be confusing to the jury and prejudicial to the extent that there is no context to explain the relevance or significance of this fact. |

Formatted Table

- 20 -

51775902

~~WTRI'S ADMISSIONS TO PMI~~DISPUTED ITEMS PMI WISHES TO INCLUDE IN PROPOSED PRETRIAL ORDER

| Item | Disputed Items PMI Wishes To Include In Proposed Pretrial Order~~Admission~~ | ~~Reference~~ Citation |
|------|------------------------------------------------------------------------------|------------------------|
| 1. | WTRI approached PMI in late 2013 to discuss WTRI's accelerated learning technology and sought a letter of support. | D.I. 53, ¶ 15 |
| 2. | WTRI sought a letter of support from PMI. | D.I. 53, ¶ 15 |
| 3. | In response, the NSF ultimately invested $1,250,000 in WTRI's proposal, with $500,000 as a direct "match" to PMI's first payment of $1,000,000 under the proposed Development Agreement between WTRI and PMI. | D.I. 37, ¶ 17 |
| 4. | The parties executed a Software Technology Development and Purchase Agreement on or about September 8, 2015. | D.I. 53, ¶ 17 |
| 5. | On November 29, 2016, the parties agreed to accelerate the acceptance testing schedule for Alpha 5. | D.I. 182-1, UMF 6 |
| 6. | PMI and WTRI executed the First Amendment to the Development Agreement on November 30, 2016. | D.I. 53, ¶ 25 |
| 7. | The First Amendment to the Software Technology Development Agreement provided that the parties would enter into a Services Agreement (with PMI owing no additional payments under the Development Agreement) if PMI rejected the fifth version "Alpha Software" and retained the rejected version. | D.I. 182-1, UMF 5 |
| 8. | PMI did not owe WTRI the Second, Third, or Final Payments contemplated in the Development Agreement after it rejected Alpha 5. | D.I. 182-1, UMF 69 |
| 9. | PMI and WTRI executed a Services Agreement dated December 15, 2016. | D.I. 53, ¶ 49 |
| 10. | The Services Agreement was a valid contract to which WTRI was a willing party. | D.I. 182-1, UMF 189 |
| 11. | WTRI negotiated and agreed voluntarily to the Services Agreement with PMI. | D.I. 182-1, UMF 190 |
| 12. | WTRI understood the importance of product marketing as it relates to market acceptance of virtual world accelerated learning technology. | D.I. 53, ¶ 36 |
| 13. | PMI paid WTRI directly over $2.1 million. | D.I. 53, ¶ 33 |
| 14. | Dr. DiBello testified that WTRI's damages expert is quantifying WTRI's damages. | D.I. 182-1, UMF 143 |
| 15. | Whitney Missildine, the lead designer for WTRI during the PAL project, testified that he had "no knowledge of whether PMI intentionally tried to sabotage the PAL project." Missildine testified that he had "no knowledge as to whether PMI intentionally tried to sabotage its business relationship with WTRI." | D.I. 182-1, UMF 176 |

- 21 -

51775902

| Item | Disputed Items PMI Wishes To Include In Proposed Pretrial Order~~Admission~~ | Reference~~,~~ Citation |
|------|------------------------------------------------------------------------------|-------------------------|
| 16. | Missildine testified that he had "no knowledge as to whether Karen Holloway intentionally tried to sabotage the PAL project." | D.I. 182-1, UMF 176 |
| 17. | Dr. Sanchez testified that she had no "reason to believe that PMI sought to sabotage WTRI's ability to complete the PAL project." | D.I. 182-1, UMF 180 |
| 18. | Dr. Sanchez testified that she did not "personally witness any PMI employee commit an act of sabotage against WTRI." | D.I. 182-1, UMF 180 |
| 19. | Tim Marshall of Neudesic testified that Neudesic had no reason to believe that PMI tried to sabotage the PAL project. | D.I. 182-1, UMF 181 |
| 20. | Karen Holloway (a PMI employee) testified that she began developing the Flows around January 2017. | D.I. 182-1, UMF 202 |
| 21. | WTRI provides the online advertisement and content at the following webpage: https://wtri.com/wp-content/uploads/2017/09/WTRI-Learn-More.pdf | D.I. 53, ¶ 44 |
| 22. | WTRI provides the online advertisement and content at the following webpage: https://wtri.com/wp-content/uploads/2019/09/MAXX-VWR-Brochure-V2.pdf | D.I. 53, ¶ 44 |
| 23. | WTRI provides the online advertisement and content at the following webpage: https://www.linkedin.com/pulse/accelerating-expertise-we-really-outdid-ourselves-time-lia-dibello/ | D.I. 53, ¶ 44 |

Formatted Table

51775902

**Workplace Technologies Research, Inc. v. Project Management Institute, Inc.**
No. 18-cv-1927-JM-MSB

**PMI'S PROPOSED STIPULATIONS – April 1, 2022**

| WTRI's Proposed Changes (as of 03/24/2022) | PMI's Response (as of 04/01/2022) |
|---|---|
| 1. Plaintiff Workplace Technologies Research, Inc. ("WTRI") is a Delaware corporation with its principal place of business in San Diego, California. | Agreed to by PMI and WTRI |
| 2. Defendant Project Management Institute, Inc. ("PMI") is a Pennsylvania corporation organized as a not-for-profit membership association, with its principal place of business in Newtown Square, Pennsylvania. | Agreed to by PMI and WTRI |
| 3. The parties entered two agreements relating to the co-development of an immersive accelerated learning technology platform for project management professionals. | Agreed to by PMI and WTRI |
| 4. The first agreement is called the "Software Technology Development And Purchase Agreement" (which the parties often refer to as the "Development Agreement") and has an effective date of September 8, 2015. The parties amended the Development Agreement through the "First Amendment to Software Technology Development and Purchase Agreement" (sometimes referred to as the "First Amendment to the Development Agreement"). The First Amendment to the Development Agreement has an effective date of November 30, 2016. | Agreed to by PMI and WTRI |
| 5. The second agreement is called the "Services Agreement" and has an effective date of December 15, 2016. | Agreed to by PMI and WTRI |

51775902

| **WTRI's Proposed Changes** **(as of 03/24/2022)** | **PMI's Response** **(as of 04/01/2022)** |
|---|---|
| 6. PMI and WTRI do not dispute that the Development Agreement, the First Amendment to the Development Agreement, and the Services Agreement, are valid contracts. | **PMI's Proposed Change:**<br><br>PMI and WTRI do not dispute that the Development Agreement, the First Amendment to the Development Agreement, and the Services Agreement, are valid contracts that both parties entered into knowingly and willingly without fraud, duress, coercion, or undue influence. However, the parties dispute to what extent (if at all) the language contained in certain exhibits to the agreements affected the parties' rights and obligations. |
| 7. The parties' project came to be known as the Project Management Institute Advanced Learning ("PAL") project. | Agreed to by PMI and WTRI |
| 8. In late 2013, WTRI approached PMI, per the NSF's recommendation, to request a letter of support in connection with a grant WTRI intended to seek from the National Science Foundation ("NSF"). | **PMI's Proposed Change:**<br><br>In late 2013, WTRI approached PMI, per the National Science Foundation's ("NSF") recommendation, to request a letter of support in connection with a grant WTRI intended to seek from the NSF. |
| 9. On January 27, 2014, PMI provided the letter of support that WTRI requested for WTRI's grant proposal to NSF. | **PMI's Proposed Change:**<br><br>On January 27, 2014, PMI provided the letter of support that WTRI requested for WTRI's grant proposal to NSF.  WTRI did not raise any issues with the letter PMI provided. |
| 10. In early 2014, PMI and WTRI began discussions about a potential commercial partnership to co-develop the technology. | **PMI's Proposed Change:**<br><br>In early 2014, PMI and WTRI began discussions about a potential commercial partnership to co-develop an immersive accelerated learning technology platform for project management professionals. |

51775902

| **WTRI's Proposed Changes**<br>*(as of 03/24/2022)* | **PMI's Response**<br>*(as of 04/01/2022)* |
|---|---|
| 11. There are three exhibits attached to the Development Agreement.  Exhibit A is labeled "Product Description" and lists 79 "Acceptance Criteria" agreed to by the parties.  Exhibit B is labeled "Software Development Plan" ("Development Plan").  Exhibit C is labeled "Exhibit C." | Agreed to by PMI and WTRI |
| 12. The parties intended that development of the technology under the Development Agreement would proceed in a phased approach including an Alpha, Beta, and Charlie phase. | **PMI's Proposed Change:**<br><br>The Development Agreement contemplated a phased software build with three phases named Alpha, Beta, and Charlie. |
| 13. The Development Agreement called for PMI to make an initial payment to WTRI of $1,000,000, as well as potential additional payments, to WTRI toward the development of the technology.  PMI made the $1,000,000 initial payment to WTRI in September 2015. | **PMI's Proposed Change:**<br><br>The Development Agreement called for PMI to make a $1,000,000 payment to WTRI toward the development of the technology.  PMI made the $1,000,000 payment to WTRI in September 2015. |
| 14. The Development Agreement contemplated three potential additional payments contingent upon satisfaction of the "Acceptance Criteria" contained in the Development Agreement: (a) once WTRI delivered the fifth (version) Alpha Software; (b) after PMI's acceptance of the fifth (version) Alpha Software and upon WTRI's delivery the final production build ("Charlie") Software; and (c) after PMI's acceptance of the Charlie Software. | **PMI's Proposed Change:**<br><br>The Development Agreement contemplated three potential additional payments contingent upon satisfaction of the "Acceptance Criteria" contained in the Development Agreement: (a) once WTRI delivered the fifth (version) Alpha Software; (b) after PMI's acceptance of the fifth (version) Alpha Software and upon WTRI's delivery the final production build ("Charlie") Software; and (c) after PMI's acceptance of the Charlie Software.  The maximum amount of payments from PMI to WTRI as compensation for development of the software under the Development Agreement would be no more than $4,000,000 which would be due only if all milestones were met. |

51775902

| **WTRI's Proposed Changes**<br>*(as of 03/24/2022)* | **PMI's Response**<br>*(as of 04/01/2022)* |
|---|---|
| 15. NSF provided $500,000 in "matching" funds to WTRI as a result of PMI's September 2015 payment of $1,000,000 to WTRI. | **PMI's Proposed Change:**<br><br>NSF awarded a total of $1,250,000 in grants to WTRI to research and develop the technology used for the PAL project.  NSF provided $500,000 in "matching" funds to WTRI as a result of PMI's September 2015 payment of $1,000,000 to WTRI under the Development Agreement. |
| 16. On September 10, 2015, PMI provided the second letter of support that WTRI requested for WTRI's grant proposal to NSF. | **PMI's Proposed Change:**<br><br>On September 10, 2015, PMI provided the second letter of support that WTRI requested for WTRI's grant proposal to NSF.  WTRI did not raise any issues with this letter, and WTRI did not request that PMI provide any additional letters. |
| 17. The First Amendment to the Development Agreement provided that the parties would enter into a Services Agreement if PMI rejected the fifth version "Alpha Software" and retained the rejected version. | Agreed to by PMI and WTRI |
| 18. On December 2, 2016, Victor Carter-Bey who was one of PMI's Vice Presidents at the time sent an email to WTRI stating PMI's election to reject the fifth version "Alpha Software" and retain PMI's interest in the rejected software. | **PMI's Proposed Change:**<br><br>On December 2, 2016, Dr. Victor Carter-Bey (a PMI employee at the time) sent an email to Dr. Lia DiBello of WTRI stating PMI's election to reject the fifth version "Alpha Software" and retain the rejected software. |
| 19. The Services Agreement contains three exhibits.  Exhibit A is labeled "License Agreement."  Exhibit B is labeled "Service Level Agreement."  Exhibit C is labeled "Services Detail and Delivery Schedule." | Agreed to by PMI and WTRI |

51775902

| **WTRI's Proposed Changes** *(as of 03/24/2022)* | **PMI's Response** *(as of 04/01/2022)* |
|---|---|
| 20. PMI paid WTRI $1,137,623 to WTRI under the Services Agreement. | **PMI's Proposed Change:**<br><br>PMI paid WTRI $1,137,623 in full satisfaction of the contractual payments owed to WTRI under the Services Agreement. These payments by PMI to WTRI included $568,811.50 on or around December 15, 2016; $284,405.75 on or around June 1, 2017; and $284,405.75 on or around December 14, 2017. |
| 21. In or around March 2018, Brian Weiss, who was one of PMI's Vice Presidents at the time, explained to Dr. Lia DiBello, who was WTRI's President at the time, that PMI had invested over $10 million in the PAL project. | **PMI's Proposed Change:**<br><br>In or around March 2018, Brian Weiss(a PMI employee) at the time) told Dr. Lia DiBello of WTRI, that PMI invested over $10 million in the PAL project.  That $10 million investment by PMI included PMI's payments to WTRI of over $2.1 million pursuant to the Development and Services Agreements. |
| 22. WTRI sent PMI a letter dated June 18, 2018 containing a notice of termination of the Development Agreement and claiming alleged damages. | Agreed to by PMI and WTRI |
| 23. PMI and WTRI jointly collaborated on two software programs under the Development Agreement and Services Agreement: (a) Proteum ERP rehearsal, created under the Development Agreement; and (b) IceBochz rehearsal, created under the Services Agreement. | **PMI's Proposed Change:**<br><br>PMI and WTRI jointly collaborated on two software programs under the Development Agreement and Services Agreement: (a) Proteum ERP rehearsal; and (b) IceBochz rehearsal. |
| 24. WTRI developed the Maxx Virtual World Agile Leadership Rehearsal.  WTRI advertises Maxx Virtual World Agile Leadership Rehearsal as one of its products. | Agreed to by PMI and WTRI |

51775902

| **WTRI's Proposed Changes** *(as of 03/24/2022)* | **PMI's Response** *(as of 04/01/2022)* |
|---|---|
| 25. Four third-parties also worked on developing parts of the PAL project: (a) Neudesic, LLC; (b) Czarina Games; (c) KMS Technology, Inc.; and (d) Creative Veteran Productions, LLC ("CVP"). | **PMI's Proposed Change:**<br><br>At least five third-parties also served as consultants for or otherwise worked on the PAL project: (a) Neudesic, LLC; (b) Czarina Games LLC; (c) KMS Technology, Inc.; (d) PricewaterhouseCoopers ("PwC"); and (e) Creative Veteran Productions, LLC ("CVP"). |

51775902

## DISPUTED ITEMS WTRI WISHES TO INCLUDE IN PROPOSED PRETRIAL ORDER

PMI rejects the basic principle of including a "disputed items" or purported "admissions" section in the proposed pretrial order.  First, obviously, there is a dispute relating to these purported "admissions" which contradicts the notion that there is some agreed upon or undisputed "admission" at issue.  Second, WTRI's claimed "admissions" by PMI tend to be duplicative of what the parties already agreed to in their Stipulations, inaccurate recitations of what PMI actually stated in various pleadings and discovery responses, and/or misleading and confusing characterizations of PMI's statements that lack sufficient and necessary context.  Third, as PMI believes that these are not undisputed and unequivocal "admissions," resolving any disputes necessarily requires this Court to referee discovery disputes or make factual findings neither of which are appropriate at this stage of the proceedings.

Simply put, referring to any of the items WTRI proposes as "admissions" is confusing and misleading because these were not unqualified admissions.  A "disputed items" section is: (1) an improper and unnecessary waste of party and judicial resources; (2) an improper attempt to prejudice and confuse the Court and the jury; and (3) an improper attempt to circumvent the process of reaching stipulations mutually agreed upon by both parties.

PMI further finds WTRI's proposed "admissions" improper for at least the following reasons:

- PMI rejects each and every item to the extent the items were stripped of necessary context.  For example, a common trope employed by WTRI is cherry picking a statement from PMI's Answer, Counterclaims, or discovery responses while excluding the rest of PMI's response or context.  Taking one phrase or sentence out of context is prejudicial and confusing to the jury.

- PMI rejects each and every item below to the extent each item is duplicative and cumulative of other items and stipulations already agreed to by the parties.

- PMI further rejects each and every item below to the extent the items are irrelevant or provide no value to the trier of fact.  PMI believes it is inappropriate to present disorganized facts that lack appropriate context to the jury before the parties' cases are presented.  This will only confuse the jury.  And, the parties need to present evidence on the items below regardless of whether they are read to the jury, so the "disputed items" section does not save the parties any time.

- PMI also rejects each and every item below on the basis that WTRI engages in naked and improper gamesmanship with respect to these purported "admissions."  PMI attempted to admit and deny facts in its pleadings and discovery responses in good faith.  In contrast, WTRI only admitted a very limited number of facts in its Answer (approximately 24 facts compared to PMI's approximately 65 admissions in its Answer), denied all of PMI's requests for admission, and refuses to admit basic facts for which there is no legitimate dispute and/or WTRI agreed in its response to PMI's summary judgment motion.  Therefore, WTRI should be prohibited from using its refusal to participate in the pleading and discovery processes in good faith to its advantage at trial.  *See, e.g.*, Counterclaims ¶ 16;

51775902

Answer to Counterclaims ¶ 16 (denying that PMI made an initial payment to WTRI or $1,000,000 under the Development Agreement).

| Item | Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|------|------------------------------------------------------------------|--------------------|---------------|
| 1 | PMI held discussions with WTRI at some point concerning WTRI's technology and a potential commercial relationship between PMI and WTRI. | D.I. 46, ¶ 8 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations Nos. 3, 4, 5, 7, 8.<br>• Whether the parties discussed a potential relationship is: (1) not what the case is about; (2) an unnecessarily general version of what the parties already agreed to as part of the proposed stipulations regarding their relationship; and (3) a confusing distraction given that the case is about the actual agreements that the parties entered. |

- 8 -

51775902

| Item | Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|------|---------------------------------------------------------------|--------------------|---------------|
| 2 | PMI discussed with WTRI an interest in expanding PMI's product offerings. | D.I. 46, ¶ 9 | • Whether PMI discussed an interest in expanding its product offerings is irrelevant to the issues before the jury.<br>• This item is taken out of context as PMI denied the remaining allegations associated with this item. Namely, PMI denied WTRI's allegation that "PMI's products were not as attractive as they once were in the past and PMI believed that its involvement with WTRI's proposal to the NSF would enhance PMI's product offerings." *See* D.I. 37, ¶ 9; D.I. 46, ¶ 9.  WTRI's use of this item to prove its allegations in Paragraph 9 of the Third Amended Complaint is disingenuous given PMI's denial of the associated allegations.<br>• This item may be confusing to the jury to the extent that it is vague and ambiguous as to "expanding PMI's product offerings" and the jury may be presented with the complete context during PMI's case. |

51775902

| Item | Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|---|---|---|---|
| 3 | WTRI provided demonstrations of its technology to PMI employees in late 2014 and early 2015. | D.I. 46, ¶ 10 | • Whether WTRI demonstrated the technology to PMI is irrelevant to the issues before the jury. <br> • This item is taken out of context as PMI denied the remaining allegations associated with this item. Namely, PMI denied WTRI's allegations in the same paragraph that "PMI offered to co-develop and integrate WTRI's software into PMI's enterprise system ('Enterprise Architecture') for project management training and education." *See* D.I. 37, ¶ 10; D.I. 46, ¶ 10.  WTRI's use of this item to prove its allegations in Paragraph 10 of the Third Amended Complaint is disingenuous given PMI's denial of the associated allegations. <br> • This item is confusing to the extent that it is vague and ambiguous as to what "technology" was demonstrated and to which PMI employees. |

- 10 -

51775902

| Item | Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|---|---|---|---|
| 4 | WTRI showed PMI its calculations and projections seeking to demonstrate that WTRI's technology could produce hundreds of millions of dollars in revenue for PMI. | D.I. 46, ¶ 11 | • This item is taken out of context as PMI denied the remaining allegations associated with this item.  PMI has always hotly disputed the accuracy of these projections (even at the time WTRI presented them).  This selection out of context is confusing and prejudicial because it ignores PMI's adamant disagreement. *See* D.I. 46, ¶ 11. |
| 5 | Under the terms of the Development Agreement, PMI was required to make an upfront payment of $1,000,000 to WTRI toward purchase of the technology to be developed and ultimately made this payment to WTRI. | D.I. 46, ¶ 21 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 13. |
| 6 | PMI made an initial payment of $1,000,000 to WTRI toward the purchase of the software to be developed in accordance with terms of the Development Agreement. | D.I. 46, ¶ 17 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 13.  Moreover, this item is cumulative of Item No. 5 above. |
| 7 | A Software Development Plan ("Development Plan") was labeled as Exhibit B and attached as an addendum to the Development Agreement. | D.I. 46, ¶ 27 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 11.<br>• This item is not properly contextualized with references to the other exhibits to the Development Agreement. |

- 11 -

51775902

| Item | Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|------|------------------------------------------------------------------|--------------------|---------------|
| 8 | The Development Agreement incorporated the Software Development Plan. | D.I. 46, ¶ 29; see also D.I. 215 at 13 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 11.<br>• This item is also not properly contextualized because PMI disputes to what extent the Software Development Plan dictates the parties' obligations. |
| 9 | WTRI pitched the software to be developed as having multi-player and single player capabilities. | D.I. 46, ¶ 71 | • Whether WTRI pitched the software to include multi-player capabilities is irrelevant to the issues before the jury.<br>• This item is not properly contextualized.  First, this item does not explain what "multi-player and single player capabilities" are.  Then, this item does not explain the significance of this fact.  Finally, PMI has always disputed which software was more valuable.  Namely, PMI denied WTRI's allegations in the same paragraph that "PMI had begun to focus almost exclusively on the development of the single-player mode for the software – doing little to advance the far more valuable multi-player environment."  *See* D.I. 37, ¶ 71; D.I. 46, ¶ 71.  WTRI's use of this item to prove its allegations in Paragraph 71 of the Third Amended Complaint is disingenuous given PMI's denial of the associated allegations. |

- 12 -

51775902

| Item | Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|------|------------------------------------------------------------------|-------------------|---------------|
| 10 | The software developed pursuant to the Development Agreement was to be developed in accordance with acceptance criteria mutually agreed to by the parties (the "Acceptance Criteria"). | D.I. 46, ¶ 30 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations Nos. 11, 14. |
| 11 | The Acceptance Criteria mutually agreed to by the parties were incorporated into the Development Agreement. | D.I. 47, ¶ 19 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations Nos. 11, 14. |

51775902

| Item | Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|------|------|------|------|
| 12 | PMI's employees attended a meeting at WTRI's San Diego office at or around December 14, 2015. | D.I. 46, ¶ 46 | • Whether PMI and WTRI met in San Diego around December 14, 2015 is irrelevant to the issues before the jury.<br>• This item is taken out of context as PMI denied the remaining allegations associated with this item. Namely, PMI denied WTRI's allegations in the next paragraph that "At this meeting, Ms. Holloway was pressed on the PMI content development team's failure to provide content, and she had an emotional episode and confessed that her team could not perform PMI's obligations under the Development Agreement with the resources provided by PMI." *See* D.I. 37, ¶ 47; D.I. 46, ¶ 47. WTRI's use of this item to prove its allegations in Paragraph 47 of the Third Amended Complaint is disingenuous given PMI's denial of the associated allegations.<br>• This item may be confusing to the jury to the extent that it is vague and ambiguous as to "PMI's employees" and the jury may be presented with the complete context during PMI's case. |
| 13 | PMI hired Neudesic, LLC ("Neudesic"). | D.I. 46, ¶ 52 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 25. |

- 14 -

51775902

| Item | Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|------|------------------------------------------------------------------|---------------------|---------------|
| 14 | PMI and WTRI executed the First Amendment to Software Technology Development and Purchase Agreement on or about November 30, 2016 (the "Amended Development Agreement"). | D.I. 46, ¶ 79 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 4. |
| 15 | WTRI introduced PMI to Creative Veterans Production ("CVP"). | D.I. 46, ¶ 88 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 25. |
| 16 | PMI discussed with Dr. DiBello the development of an Agile product and entering into a Services Agreement with WTRI. | D.I. 46, ¶ 102 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 5. <br> • Whether PMI discussed entering into the Services Agreement is irrelevant to the issues before the jury. <br> • Moreover, this item is an example of an item that is cumulative and otherwise confusing.  This item proposes an obvious fact to the extent the parties executed a Services Agreement and stipulated to the agreement. |
| 17 | PMI and WTRI both executed the Services Agreement. | D.I. 46, ¶ 107 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 5. |

51775902

| Item | Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|------|------------------------------------------------------------------|---------------------|----------------|
| 18 | The parties contemporaneously executed a license agreement dated December 15, 2016 (the "License Agreement"). | D.I. 47, ¶ 30 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 19. |
| 19 | The Services Agreement incorporated the License Agreement. | D.I. 47, ¶¶ 38, 52, 57 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 19. |
| 20 | The Services Agreement contains an Exhibit C titled "Services Detail and Delivery Schedule." | D.I. 46, ¶ 109 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 19. |
| 21 | WTRI was to be engaged in development under the Services Agreement. | D.I. 46, ¶ 122 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 5.<br>• This item may be confusing to the jury to the extent that it is vague and ambiguous as to "WTRI was to be engaged in development." |
| 22 | Dr. DiBello discussed with PMI her intention to include certain entities to participate in the Proteum pilot program. | D.I. 46, ¶ 115 | • This item may be confusing to the jury and prejudicial to the extent that it is pulled out of context because PMI has always disputed the veracity of Dr. DiBello's statements about participants in pilot programs. *See* D.I. 37, ¶ 115; D.I. 46, ¶ 115. |

51775902

| Item | Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|---|---|---|---|
| 23 | WTRI created "IceBochz." | D.I. 46, ¶ 123 | • This item may be confusing to the jury and prejudicial to the extent that it is pulled out of context and is vague and ambiguous as to "created." Namely, "IceBochz" was created pursuant to WTRI's contractual obligations for software to be owned by PMI. *See* D.I. 37, ¶ 123 ("WTRI, nonetheless, as part of its agreement with PMI created, designed, and provided the virtual company to PMI. The name of the virtual company was IceBochz."). |
| 24 | WTRI registered a domain for "IceBochz." | D.I. 46, ¶ 123 | • This item may be confusing to the jury and prejudicial to the extent that it is pulled out of context. Namely, "IceBochz" was created pursuant to WTRI's contractual obligations for software to be owned by PMI. *See* D.I. 37, ¶ 123 ("WTRI, nonetheless, as part of its agreement with PMI created, designed, and provided the virtual company to PMI. The name of the virtual company was IceBochz.").<br>• This item may be confusing to the jury and prejudicial to the extent that there is no context to explain the relevance or significance of this fact. |

| Item | Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|---|---|---|---|
| 25 | Mr. Weiss and Dr. DiBello discussed a sale back to WTRI of the technology that PMI had purchased from WTRI. Mr. Weiss told Dr. DiBello that PMI had invested over $10,000,000 in the technology. | D.I. 46, ¶ 129 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 21. |
| 26 | PMI engaged in discussions with WTRI to attempt to resolve issues that had been raised in regard to the Services Agreement. | D.I. 46, ¶ 136 | • This item is taken out of context as PMI denied the remaining allegations associated with this item. *See* D.I. 46, ¶ 136. First, the item is vague and ambiguous as to "issues that had been raised." Second, the item, when placed alongside the following Item Nos. 27-28 is misleading. PMI alleges that this action was made by WTRI in bad faith. *See* D.I. 47, ¶¶ 28, 31-38. The current framing is a skewed selection of cherry picked facts to craft a narrative that is different from what PMI alleges.<br>• This item may be confusing to the jury and prejudicial to the extent that there is no context to explain the relevance or significance of this fact. |

51775902

| Item | Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|------|------------------------------------------------------------------|--------------------|----------------|
| 27 | WTRI prepared a written proposal for further product development. | D.I. 46, ¶ 137 | • This item is taken out of context as PMI denied the remaining allegations associated with this item. *See* D.I. 46, ¶ 137. First, the item is vague and ambiguous as to "proposal for further product development." Second, the item, when placed alongside the Item Nos. 26 and 28 is misleading. PMI alleges that this action was made by WTRI in bad faith. *See* D.I. 47, ¶¶ 28, 31-38. The current framing is a skewed selection of cherry picked facts to craft a narrative that is different from what PMI alleges.<br>• This item may be confusing to the jury and prejudicial to the extent that there is no context to explain the relevance or significance of this fact. |

- 19 -

51775902

| Item | Disputed Items WTRI Wishes To Include In Proposed Pretrial Order | Reference Citation | PMI Responses |
|------|-----------------------------------------------------------------|-------------------|---------------|
| 28 | PMI did not accept WTRI's proposal for further product development. | D.I. 46, ¶ 138 | • This item is taken out of context as PMI denied the remaining allegations associated with this item. *See* D.I. 46, ¶ 138. First, the item is vague and ambiguous as to "issues that had been raised." Second, the item, when placed alongside the preceding Item Nos. 26-27 is misleading. PMI alleges that this action was made by WTRI in bad faith. *See* D.I. 47, ¶¶ 28, 31-38. The current framing is a skewed selection of cherry picked facts to craft a narrative that is different from what PMI alleges.<br>• This item may be confusing to the jury and prejudicial to the extent that there is no context to explain the relevance or significance of this fact. |

51775902

**DISPUTED ITEMS PMI WISHES TO INCLUDE IN PROPOSED PRETRIAL ORDER**

| Item | Disputed Items PMI Wishes To Include In Proposed Pretrial Order | Reference Citation |
|------|------------------------------------------------------------------|--------------------|
| 1. | WTRI approached PMI in late 2013 to discuss WTRI's accelerated learning technology and sought a letter of support. | D.I. 53, ¶ 15 |
| 2. | WTRI sought a letter of support from PMI. | D.I. 53, ¶ 15 |
| 3. | In response, the NSF ultimately invested $1,250,000 in WTRI's proposal, with $500,000 as a direct "match" to PMI's first payment of $1,000,000 under the proposed Development Agreement between WTRI and PMI. | D.I. 37, ¶ 17 |
| 4. | The parties executed a Software Technology Development and Purchase Agreement on or about September 8, 2015. | D.I. 53, ¶ 17 |
| 5. | On November 29, 2016, the parties agreed to accelerate the acceptance testing schedule for Alpha 5. | D.I. 182-1, UMF 6 |
| 6. | PMI and WTRI executed the First Amendment to the Development Agreement on November 30, 2016. | D.I. 53, ¶ 25 |
| 7. | The First Amendment to the Software Technology Development Agreement provided that the parties would enter into a Services Agreement (with PMI owing no additional payments under the Development Agreement) if PMI rejected the fifth version "Alpha Software" and retained the rejected version. | D.I. 182-1, UMF 5 |
| 8. | PMI did not owe WTRI the Second, Third, or Final Payments contemplated in the Development Agreement after it rejected Alpha 5. | D.I. 182-1, UMF 69 |
| 9. | PMI and WTRI executed a Services Agreement dated December 15, 2016. | D.I. 53, ¶ 49 |
| 10. | The Services Agreement was a valid contract to which WTRI was a willing party. | D.I. 182-1, UMF 189 |
| 11. | WTRI negotiated and agreed voluntarily to the Services Agreement with PMI. | D.I. 182-1, UMF 190 |
| 12. | WTRI understood the importance of product marketing as it relates to market acceptance of virtual world accelerated learning technology. | D.I. 53, ¶ 36 |
| 13. | PMI paid WTRI directly over $2.1 million. | D.I. 53, ¶ 33 |
| 14. | Dr. DiBello testified that WTRI's damages expert is quantifying WTRI's damages. | D.I. 182-1, UMF 143 |
| 15. | Whitney Missildine, the lead designer for WTRI during the PAL project, testified that he had "no knowledge of whether PMI intentionally tried to sabotage the PAL project." Missildine testified that he had "no knowledge as to whether PMI intentionally tried to sabotage its business relationship with WTRI." | D.I. 182-1, UMF 176 |

- 21 -

51775902

| Item | Disputed Items PMI Wishes To Include In Proposed Pretrial Order | Reference Citation |
|------|------------------------------------------------------------------|--------------------|
| 16. | Missildine testified that he had "no knowledge as to whether Karen Holloway intentionally tried to sabotage the PAL project." | D.I. 182-1, UMF 176 |
| 17. | Dr. Sanchez testified that she had no "reason to believe that PMI sought to sabotage WTRI's ability to complete the PAL project." | D.I. 182-1, UMF 180 |
| 18. | Dr. Sanchez testified that she did not "personally witness any PMI employee commit an act of sabotage against WTRI." | D.I. 182-1, UMF 180 |
| 19. | Tim Marshall of Neudesic testified that Neudesic had no reason to believe that PMI tried to sabotage the PAL project. | D.I. 182-1, UMF 181 |
| 20. | Karen Holloway (a PMI employee) testified that she began developing the Flows around January 2017. | D.I. 182-1, UMF 202 |
| 21. | WTRI provides the online advertisement and content at the following webpage: https://wtri.com/wp-content/uploads/2017/09/WTRI-Learn-More.pdf | D.I. 53, ¶ 44 |
| 22. | WTRI provides the online advertisement and content at the following webpage: https://wtri.com/wp-content/uploads/2019/09/MAXX-VWR-Brochure-V2.pdf | D.I. 53, ¶ 44 |
| 23. | WTRI provides the online advertisement and content at the following webpage: https://www.linkedin.com/pulse/accelerating-expertise-we-really-outdid-ourselves-time-lia-dibello/ | D.I. 53, ¶ 44 |