# EXHIBIT B

**Worley, Regis**

| | |
|---|---|
| **From:** | Worley, Regis |
| **Sent:** | Wednesday, April 20, 2022 10:52 AM |
| **To:** | Horak, Emily; Bakewell, Eric; McMeans, Hannah; Yu, Benita |
| **Cc:** | WTRI-PMI |
| **Subject:** | RE: WTRI v PMI - input and exhibits to the Joint Proposed Pretrial Order |
| **Attachments:** | WTRI-PMI - REVISED Joint Proposed Pretrial Conference Order.DOCX; WTRI-PMI - REDLINE Joint Proposed Pretrial Conference Order.docx |

Counsel,

Attached is a revised version of the joint proposed order in clean and redlined versions.  Please note the following:

- In an effort to be as accommodating as possible, and in an effort to meet the deadline to lodge the proposed order, WTRI has accepted nearly all of PMI's last-minute revisions.
- The remaining rejections of PMI's edits should not be controversial.  WTRI does not accept PMI's new proposal of adding "and elements of its intellectual property related to project management training and instruction" to the statement of facts, as it is overly slanted in favor of PMI's trade secret claim.  Likewise, as WTRI has repeatedly stated, the "if so" clause in the statement of facts is entirely neutral, whereas PMI's suggested removal of that clause implies that PMI does in fact have trade secrets, which WTRI adamantly disputes.  The third edit, in the stipulation section, is intended to address PMI's concern that it does not want to stipulate that Dr. Carter-Bey was a Vice President, and simply identifies with which party Dr. DiBello and Dr. Carter-Bey are associated.
- Regarding the admission section, WTRI maintains that regardless of any legal research your team may have conducted, Judge Miller made it abundantly clear that admissions from the pleadings that the parties could not agree to include in the stipulation section should be included in a separate section.  As WTRI understands that PMI may have a different view of Judge Miller's request, we have revised the "admissions" section to a "party positions" section where each party may present its position without any endorsement of the other party.  As such, we moved PMI's lengthy footnote responding to WTRI's inclusion of PMI's judicial admissions into PMI's portion of that section.  Obviously, PMI may add, delete, or edit its own section as it wishes.  To the extent that PMI believes that additional clarifying language should be included in the opening paragraph of the "party positions" section to disclaim PMI's endorsement of WTRI's position, WTRI is willing to work with PMI.  However, WTRI is not willing to disregard Judge Miller and delete this portion from the joint filing.

Please let us know by 1:00 p.m. whether these changes are acceptable to PMI.

Regards,

Regis Worley | Counsel

Eversheds Sutherland (US) LLP
12255 El Camino Real, Suite 100, San Diego, CA 92130, US
T: +1.858.252.6458

Email
www.eversheds-sutherland.com
**Eversheds Sutherland**
Helping our clients, our people and our communities to thrive

**From:** Horak, Emily <EHorak@willkie.com>
**Sent:** Monday, April 18, 2022 6:52 PM
**To:** Worley, Regis <RegisWorley@eversheds-sutherland.us>; Bakewell, Eric <EBakewell@willkie.com>; McMeans, Hannah <HMcMeans@willkie.com>; Yu, Benita <BYu@willkie.com>
**Cc:** WTRI-PMI <WTRI-PMI@eversheds-sutherland.us>
**Subject:** RE: WTRI v PMI - input and exhibits to the Joint Proposed Pretrial Order

[EXTERNAL]

Counsel,

We have no objections to jointly contacting the Court tomorrow to ask to lodge the proposed pretrial order on April 20 if acceptable to the Court.

Best,
Emily


**Emily Horak**
**Willkie Farr & Gallagher LLP**
2029 Century Park East  | Los Angeles, CA 90067-2905
Direct: +1 310 855 3026 | Fax: +1 310 855 3099
ehorak@willkie.com | vCard | www.willkie.com bio

**From:** Worley, Regis <regisworley@eversheds-sutherland.com>
**Sent:** Monday, April 18, 2022 6:42 PM
**To:** Horak, Emily <EHorak@willkie.com>; Bakewell, Eric <EBakewell@willkie.com>; McMeans, Hannah <HMcMeans@willkie.com>; Yu, Benita <BYu@willkie.com>
**Cc:** WTRI-PMI <wtri-pmi@eversheds-sutherland.com>
**Subject:** RE: WTRI v PMI - input and exhibits to the Joint Proposed Pretrial Order

**\*\*\* EXTERNAL EMAIL \*\*\***

Counsel,

In light of the fact the Court just pushed the Final Pretrial Conference back to April 27, we suggest the parties use this additional time to meet and confer concerning the remaining disputed issues and then lodge the Joint Final Pretrial Conference Order on April 20, consistent with the local rules.

As the Court is now closed, we also suggest jointing emailing Mr. Chen in the morning to confirm that lodging the Joint Final Pretrial Conference Order on April 20 is acceptable to the Court.

Please let us know if you agree to the above.

Regards,
Regis

Regis Worley | Counsel

Eversheds Sutherland (US) LLP
12255 El Camino Real, Suite 100, San Diego, CA 92130, US
T: +1.858.252.6458

Email
www.eversheds-sutherland.com

**Eversheds Sutherland**
Helping our clients, our people and our communities to thrive

**From:** Horak, Emily <EHorak@willkie.com>
**Sent:** Monday, April 18, 2022 4:20 PM
**To:** Worley, Regis <RegisWorley@eversheds-sutherland.us>; Bakewell, Eric <EBakewell@willkie.com>; McMeans, Hannah <HMcMeans@willkie.com>; Yu, Benita <BYu@willkie.com>

**Cc:** WTRI-PMI <WTRI-PMI@eversheds-sutherland.us>
**Subject:** RE: WTRI v PMI - input and exhibits to the Joint Proposed Pretrial Order

[EXTERNAL]

Counsel,

**Statement of the Case**
PMI added the intellectual property language to ensure the statement of the case was balanced.  The statement of the case provides that WTRI contributed two skills (experience with virtual worlds and research) and that PMI contributed two skills (expertise in project management and IP).  Moreover, Exhibit A (pp. 9-10) attached to the Development Agreement explicitly states that the software will use PMI's intellectual property, so this statement should not be controversial.  To reach a compromise, PMI is amenable to WTRI's change at 2:26 if WTRI is amenable to PMI's change at 2:13-14.

**Proposed Stipulations**
PMI has maintained in every email returning edits to WTRI and in every meet and confer over the past four months that we are examining the document holistically.  PMI emphasized that agreement with a stipulation could change if WTRI removed other stipulations.  That is exactly what happened after WTRI's most recent version was sent to us.  WTRI stripped out any stipulations they did not agree to and PMI in turn removed stipulations to ensure the document is fair and balanced.

Moreover, WTRI's use of Judge Miller's statement is misleading. PMI made no unqualified admissions.  The parties did not explain to Judge Miller the ways in which the alleged admissions were cherry-picked to craft a narrative that will only confuse and mislead the jury.  And, Judge Miller did not instruct the parties to include a **disputed** admissions section for the Court to referee.

Ultimately, we will stipulate to what we returned this morning.  We take no issue with WTRI seeking to bring the admissions issue to the Court but we will not sign a proposed pretrial order with the admissions section.

**Next Steps**
Please send the finalized PDFs of the document for us to review and approve, and please advise of whether WTRI plans to lodge PMI's general objections or if PMI should plan to lodge separately.

Thanks,
Emily

**Emily Horak**
**Willkie Farr & Gallagher LLP**
2029 Century Park East  | Los Angeles, CA 90067-2905
Direct: +1 310 855 3026 | Fax: +1 310 855 3099
ehorak@willkie.com | vCard | www.willkie.com bio

---

**From:** Worley, Regis <regisworley@eversheds-sutherland.com>
**Sent:** Monday, April 18, 2022 3:46 PM
**To:** Horak, Emily <EHorak@willkie.com>; Bakewell, Eric <EBakewell@willkie.com>; McMeans, Hannah <HMcMeans@willkie.com>; Yu, Benita <BYu@willkie.com>
**Cc:** WTRI-PMI <wtri-pmi@eversheds-sutherland.com>
**Subject:** RE: WTRI v PMI - input and exhibits to the Joint Proposed Pretrial Order

**\*\*\* EXTERNAL EMAIL \*\*\***

Counsel,

Thank you for your email and your observations that the exhibits to the joint proposed order require updated captions.

As an initial observation, PMI's proposed edits to Section I, Statement to Be Read to the Jury of the Nature of the Case and Claims and Defenses, appear acceptable to WTRI, with the following exceptions:

> Page 2, lines 13-14 ("and elements of its intellectual property related to project management training and instruction")
> Page 2, line 26 (deletion of "if so")

If PMI is agreeable to removing its proposed addition to page 2, lines 13-14, as well as keeping the "if so" language at page 2, line 26, then the parties can be in agreement on Section I.

PMI's proposed edits that appear at pages 3-33 also appear acceptable, as do the edits to the "Jury Instructions" section on pages 59-60.

Regarding Section V, Statement of Facts to Which the Parties Stipulate, in addition to reordering a number of paragraphs, PMI deleted a number of paragraphs in which the parties previously agreed.  Given that the parties had worked together for many months to reach as much agreement as possible with these statement of facts, WTRI does not understand why PMI would now make such changes to the statement of facts.  Please let us know whether PMI would agree to either keep the statement of facts that PMI currently marked for deletion.

During the December 17, 2021 hearing, the following exchange occurred:

Mr. Patino: There is one issue I wanted to raise to the Court
today for some guidance that could impact the document that
we're looking at for the final pretrial conference.
And that's -- we have a number of allegations in our
very lengthy complaint that were admitted in the answer by PMI.
And so what we thought to do was we made them stipulations in
the draft of the pretrial order that we submitted to P -- PMI.
PMI objected to using them as stipulations in the pretrial
order.
And so we wanted to ask the Court, is there -- does
the Court have a certain way that it brings to the attention of
the jury admitted allegations in the pleadings? Or should we
work further to try to get those into the pretrial order?
THE COURT: Well, I always think it's good to include
them in the pretrial order, in a separate section of the
pretrial order.

See transcript of 12/17/2021 hearing at 18:6-18.

Given Judge Miller's express guidance on this issue, WTRI maintains that it is proper for the admissions to be included as part of the pretrial order, in a separate section as WTRI had submitted earlier today.  While it is possible that our new judge may strike this section of the proposed order before adopting all, some, or none of the remaining sections, WTRI believes it would be improper for the parties to ignore Judge Miller's request to include the admissions in the joint proposed order.

Given the above, please let us know whether PMI will maintain its position as to the admissions section and whether PMI will agree to the other proposals set forth above by 5 p.m. today.  If PMI will not agree to include the admissions section and the previously agreed-to stipulations, WTRI will proceed accordingly.

Regards,
Regis

Regis Worley | Counsel

Eversheds Sutherland (US) LLP
12255 El Camino Real, Suite 100, San Diego, CA 92130, US
T: +1.858.252.6458

Email
www.eversheds-sutherland.com

**Eversheds Sutherland**
Helping our clients, our people and our communities to thrive

**From:** Horak, Emily <EHorak@willkie.com>
**Sent:** Monday, April 18, 2022 1:05 PM
**To:** Worley, Regis <RegisWorley@eversheds-sutherland.us>; Bakewell, Eric <EBakewell@willkie.com>; McMeans, Hannah <HMcMeans@willkie.com>; Yu, Benita <BYu@willkie.com>
**Cc:** WTRI-PMI <WTRI-PMI@eversheds-sutherland.us>
**Subject:** RE: WTRI v PMI - input and exhibits to the Joint Proposed Pretrial Order


[EXTERNAL]

Counsel,

Thank you for preparing the attached documents.

As for the exhibits, it appears the case number still needs to be updated to JO rather than JM.

Attached are finalized PDFs of the PMI general objections you lodged in November. We made a few non-substantive changes (adding Benita Yu and I to the caption, updating the judge and case number, updating the dates, and reflecting the new docket numbers of PMI's pending motions). Please let us know if you plan to lodge these documents with the revised pretrial order as you did in November or if you prefer for us to lodge them separately.

Also attached is a redline and clean version of PMI's proposed changes to proposed pretrial order. We made a few more substantive changes, particularly:

- It appears that the statement of the case revisions Hannah McMeans sent on March 31 were not incorporated into the proposed order so we implemented those changes in redline.
- We had not yet returned our revisions to the proposed stipulations so our edits are incorporated in redline.
- Lastly, we researched the legal issue of including disputed admissions (rather than stipulations agreed to by both parties) in the proposed pretrial order and reading such admissions to the jury. Our research and examination of the Federal Rules of Civil Procedure and Local Rules suggest that the disputed admissions section is procedurally improper. Moreover, the admissions section will make it difficult for Judge Otah to sign the joint proposed pretrial order if the order is not truly joint and needs more re-working. Instead, let us know if you would like to meet and confer about a proper way to jointly bring this issue before the Court. To be clear, we are not debating whether WTRI can bring the admissions issue before the Court but find the proposed pretrial order is the improper vehicle to raise this issue. We do not plan to sign a proposed pretrial order with an admissions section.

Best,
Emily


**Emily Horak**
**Willkie Farr & Gallagher LLP**
2029 Century Park East  | Los Angeles, CA 90067-2905
Direct: +1 310 855 3026 | Fax: +1 310 855 3099
ehorak@willkie.com | vCard | www.willkie.com bio

**From:** Worley, Regis <regisworley@eversheds-sutherland.com>
**Sent:** Monday, April 18, 2022 10:39 AM
**To:** Bakewell, Eric <EBakewell@willkie.com>; Horak, Emily <EHorak@willkie.com>; McMeans, Hannah <HMcMeans@willkie.com>; Yu, Benita <BYu@willkie.com>
**Cc:** WTRI-PMI <wtri-pmi@eversheds-sutherland.com>
**Subject:** RE: WTRI v PMI - input and exhibits to the Joint Proposed Pretrial Order

**\*\*\* EXTERNAL EMAIL \*\*\***

Counsel,

Pursuant to the scheduling order, attached is a copy of the joint proposed pretrial order in clean and redlined versions, along with the exhibits.   Please let us know whether we have your permission to add your signature to the joint order and, if so, whose signature to add.

Regards,
Regis

Regis Worley | Counsel

Eversheds Sutherland (US) LLP
12255 El Camino Real, Suite 100, San Diego, CA 92130, US
T: +1.858.252.6458

Email
www.eversheds-sutherland.com

**Eversheds Sutherland**
Helping our clients, our people and our communities to thrive

**From:** Worley, Regis
**Sent:** Friday, April 8, 2022 9:08 PM
**To:** Bakewell, Eric <EBakewell@willkie.com>; Horak, Emily <EHorak@willkie.com>; McMeans, Hannah <HMcMeans@willkie.com>; Yu, Benita <BYu@willkie.com>
**Cc:** WTRI-PMI <WTRI-PMI@eversheds-sutherland.us>
**Subject:** WTRI v PMI - input and exhibits to the Joint Proposed Pretrial Order

Counsel,

Attached are revised versions of the exhibits to the Joint Proposed Pretrial Order, to include revised trial dates, as well as WTRI's response to PMI's proposed revisions to the stipulations and admissions/disputed facts.  We will circulate the joint proposed order once we consolidate the revisions into that document.

Regards,
Regis

Regis Worley | Counsel

Eversheds Sutherland (US) LLP
12255 El Camino Real, Suite 100, San Diego, CA 92130, US
T: +1.858.252.6458

Email
www.eversheds-sutherland.com

**Eversheds Sutherland**
Helping our clients, our people and our communities to thrive

Eversheds Sutherland (US) LLP is part of a global legal practice, operating through various separate and distinct legal entities, under Eversheds Sutherland. For a full description of the structure and a list of offices, please visit **www.eversheds-sutherland.com**.

This e-mail message, together with any attachments, is intended only for the above named recipient(s) and may contain privileged and/or confidential information. If you are not an intended recipient, you must not review, copy or show the message and any attachments to anyone. Please reply to this e-mail and highlight the mistaken transmission to the sender, and then immediately delete the message.

**Important Notice:**  This email message is intended to be received only by persons entitled to receive the confidential information it may contain.  Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged.  Please do not

read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:**  This email message is intended to be received only by persons entitled to receive the confidential information it may contain.  Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged.  Please do not read, copy, forward or store this message unless you are an intended recipient of it.  If you have received this message in error, please forward it back.  Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:**  This email message is intended to be received only by persons entitled to receive the confidential information it may contain.  Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged.  Please do not read, copy, forward or store this message unless you are an intended recipient of it.  If you have received this message in error, please forward it back.  Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

JOSE L. PATIÑO, CA Bar No. 149568
    JosePatino@eversheds-sutherland.com
NICOLA A. PISANO, CA Bar No. 151282
    NicolaPisano@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
    ScottPenner@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
    JustinGray@eversheds-sutherland.com
REGIS C. WORLEY, JR., CA Bar No. 234401
    RegisWorley@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:      858.252.6502
FACSIMILE:      858.252.6503

Attorneys for Plaintiff and Counter-Defendant
WORKPLACE TECHNOLOGIES RESEARCH, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORKPLACE TECHNOLOGIES RESEARCH, INC., | Case No. 3:18-cv-01927-JO-MSB |
| Plaintiff, | Honorable Jinsook Ohta |
| v. | Complaint Filed: August 20, 2018 |
| PROJECT MANAGEMENT INSTITUTE, INC. | **JOINT PROPOSED PRETRIAL CONFERENCE ORDER** |
| Defendant. | |
| PROJECT MANAGEMENT INSTITUTE, INC. | |
| Counterclaimant, | |
| v. | |
| WORKPLACE TECHNOLOGIES RESEARCH, INC.; and DOES 1-15 inclusive, | |
| Counterdefendants. | |

18cv1927

47001860.6

Plaintiff and Counter-Defendant Workplace Technologies Research, Inc. ("WTRI") and Defendant and Counter-Claimant Project Management Institute, Inc. ("PMI") jointly lodge this Joint Proposed Pretrial Conference Order.[1]

## I.      Statement to Be Read to the Jury of the Nature of the Case and Claims and Defenses

This case involves a contract and trade secrets dispute between Plaintiff Workplace Technologies Research, Inc., who is frequently referred to as "WTRI," and Defendant Project Management Institute, who is frequently referred to as "PMI."

WTRI initiated this action and alleges PMI breached the parties' contracts. PMI alleges WTRI breached the parties' contracts and misappropriated PMI's trade secrets.

WTRI creates virtual worlds, computer-based simulations that can replicate real-world situations, which enable users to gain experience without the consequences of real-world mistakes. WTRI also performs scientific research on how simulations can develop "accelerated learning," which is the ability for participants to achieve proficiency in a shorter period of time as compared to gaining real world experience.

PMI is a not-for-profit membership organization working in nearly every country around the world to advance careers, strengthen organizational success, and empower project professionals with new skills and ways of working to maximize their impact. PMI offers project management certifications and provides training, education, thought leadership, and academic research.

WTRI and PMI began their business relationship in or around late 2013 and ended the relationship in or around mid-2018. Initially, PMI provided letters of support for WTRI to the National Science Foundation (frequently referred to as "NSF") at WTRI's request in connection with WTRI attempting to secure grant money from NSF.

---

[1] This Joint Proposed Pretrial Conference Order is submitted while the parties' motions *in limine* and *Daubert* motions remain pending. *See* D.I. 248-284. The parties preserve their objections raised in the pending motions. This Joint Proposed Pretrial Conference Order is subject to change based on the Court's rulings on the outstanding motions *in limine* and *Daubert* motions.

18cv1927

Subsequently, the parties attempted to co-develop a virtual world software program aimed at providing project management training through accelerated learning.

The software program the parties attempted to develop would have allowed project management professionals to encounter real-world scenarios in a virtual world.  Project managers would be able to improve their skills in the virtual world without the consequences of real-world mistakes.  The software was supposed to provide a unique experience for each user by providing different scenarios based on the user's project management experience and skills.  The parties contemplated that WTRI would contribute its experience in building virtual worlds and rehearsals, along with its research in "accelerated learning."   PMI would contribute its expertise in the field of project management.  The software program never made it to market.

WTRI developed a software program called "Maxx Virtual World Agile Leadership Rehearsal" after the breakdown of the relationship between WTRI and PMI.

The two contracts at issue in this case are the "Software Technology Development and Purchase Agreement" (which is often referred to as the "Development Agreement") and the "Services Agreement."   The Development Agreement was effective as of September 8, 2015.  The "Services Agreement" was entered into as of December 15, 2016. The parties' dispute in this litigation relates to what happened in connection with the software program the parties attempted to co-develop under the Development Agreement and Services Agreement, whether the parties fulfilled their contractual and legal obligations in connection with the two agreements and related work, whether and to what extent PMI developed any trade secrets and, if so, what happened with PMI's alleged trade secrets after the parties' relationship deteriorated.

WTRI claims that PMI breached the Development Agreement and the Services Agreement.  WTRI also claims that PMI breached the Development Agreement's implied covenant of good faith and fair dealing.  PMI denies those allegations.

PMI claims WTRI breached the Development Agreement and the Services Agreement.  PMI also claims that WTRI breached the implied covenants of good faith and fair dealing in both agreements.    Additionally, PMI claims that WTRI stole and misappropriated PMI's trade secrets.  WTRI denies those allegations.

## II.    List of Causes of Action to be Tried

### 1)    WTRI's Causes of Action[2]

#### a. Breach of the Development Agreement.

*Elements*

---

[2] Prior to the commencement of discovery, the Court granted PMI's motion to dismiss WTRI's claims for breach of the implied covenant of good faith and fair dealing in the Services Agreement, fraud, and tortious interference with prospective business relations. *See* D.I. 42 at 8-9.  The Court expressly stated that "[a]fter discovery commences, however, WTRI is free to request leave to amend its Complaint, as consistent with the Federal Rules of Civil Procedure and Local Rules, based on evidence obtained through discovery." *Id*.  In accordance with Rule 15(a) or 15(b) and this Court's prior order, WTRI intends to raise the issue of amending its Complaint at the pretrial conference.

PMI is surprised that WTRI intends to raise further amendment of the Complaint at this late date and given the Court's prior rulings on PMI's motions to dismiss (D.I. 24, D.I. 32, and D.I. 42) and WTRI's motion for leave to file a Fourth Amended Complaint (D.I. 111).  PMI is further surprised that WTRI first raised this issue in the November 24, 2021 Proposed Pretrial Order lodged with the Court and still has not moved for leave to file an amended complaint in the past five months.  The Court granted PMI's motion to dismiss the Third Amended Complaint (WTRI's fourth bite at the apple) without leave to amend on January 20, 2020 with respect to WTRI's claims for breach of the implied covenant of good faith and fair dealing in the Services Agreement, fraud, and tortious interference with prospective business relations. *See* D.I. 42 at 8-9.  That followed the Court granting PMI's motions to dismiss with leave to amend the same claims in the First Amended Complaint and Second Amended Complaint. *See* D.I. 24 at 22-25; D.I. 32 at 18 (cautioning WTRI that "further unsuccessful attempts to amend the Complaint may demonstrate that the dismissed claims cannot be cured by amendment").  Moreover, the Court already denied WTRI's motion for leave to file a Fourth Amended Complaint after the close of fact discovery in a January 25, 2021 Order. *See* D.I. 111 at 5 (holding that WTRI's "reason for seeking amendment is essentially that discovery has occurred, not that newly uncovered evidence or a new admission by PMI confirms facts that were not previously alleged to support claims that were not previously rejected").  WTRI has neither provided a proposed amended complaint nor discussed further amendment with PMI as of the time of the filing of this pretrial order, but it is difficult to understand how further amendment would: (1) be permissible given the Court's prior rulings and that PMI is not aware of what WTRI could have recently learned that would relate to causes of action based on actions occurring no later than 2018; (2) result in properly pled claims; or (3) lead to anything other than substantial delay in resolving this action as further amendment requires a motion for leave to amend, likely triggers a motion to dismiss in response, and may necessitate additional discovery.

3                                                18cv1927

47001860.6

To recover damages from PMI for breach of the development contract, WTRI must prove all of the following:

1. That WTRI and PMI entered into a contract;

2. That WTRI did all, or substantially all, of the significant things that the development contract required it to do or was excused from having to complete certain obligations due to PMI's failure to satisfy one or more conditions precedent;

3. That PMI failed to do one or more of the obligations that the development contract required it to do;

4. That WTRI was harmed; and

5. That PMI's breach of the development contract was a substantial factor in causing WTRI's harm.

*See, e.g.,* Judicial Council of California Civil Jury Instructions, CACI, No. 303 (2020).

### b. Breach of the Services Agreement.

*Elements*

To recover damages from PMI for breach of the services contract, WTRI must prove all of the following:

1. That WTRI and PMI entered into a contract;

2. That WTRI did all, or substantially all, of the significant things that the services contract required it to do or was excused from having to complete certain obligations due to PMI's failure to satisfy one or more conditions precedent;

3. That PMI failed to do one or more of the obligations that the services contract required it to do;

4. That WTRI was harmed; and

5. That PMI's breach of the services contract was a substantial factor in causing WTRI's harm.

*See, e.g.,* Judicial Council of California Civil Jury Instructions, CACI, No. 303 (2020).

18cv1927

### c. Breach of the Implied Covenant of Good Faith and Fair Dealing of the Development Contract.

*Elements*

WTRI claims that PMI violated the duty to act fairly and in good faith in regard to the development contract. To establish this claim, WTRI must prove all of the following:

1. That WTRI and PMI entered into a contract;

2. That WTRI did all, or substantially all of the significant things that the development contract required it to do or that it was excused from having to do those things;

3. That PMI's conduct prevented WTRI from receiving the benefits under the contract;

4. That by doing so, PMI did not act fairly and in good faith; and

5. That WTRI was harmed by PMI's conduct.

*See, e.g.,* Judicial Council of California Civil Jury Instructions, CACI, No. 325 (2020).

### 2)   PMI's Defenses to WTRI's Causes of Action

PMI has asserted the following defenses to WTRI's claims:

a.   No Injury (Second Affirmative Defense)

b.   Offset And/Or Setoff (Third Affirmative Defense)

c.   Unclean Hands (Fourth Affirmative Defense)

d.   *In Pari Delicto* (Fifth Affirmative Defense)

e.   Unjust Enrichment (Sixth Affirmative Defense)

f.   Consent (Seventh Affirmative Defense)

g.   Waiver (Eighth Affirmative Defense)

h.   Ratification (Ninth Affirmative Defense)

i.   Estoppel (Tenth Affirmative Defense)

j.   Adequate Remedy at Law (Eleventh Affirmative Defense)

k.   Failure To Mitigate Damages (Twelfth Affirmative Defense)

5                                    18cv1927

47001860.6

l.   Failure Of Condition Precedent (Thirteenth Affirmative Defense)

m.   Excuse For Non-Performance (Fourteenth Affirmative Defense)

n.   Frustration Of Purpose (Fifteenth Affirmative Defense)

o.   Novation (Sixteenth Affirmative Defense)

p.   Fraud (Seventeenth Affirmative Defense)

q.   Statute Of Limitations (Eighteenth Affirmative Defense)

r.   Laches (Nineteenth Affirmative Defense)

s.   No Breach (Twentieth Affirmative Defense)

t.   Independent Or Superseding Cause (Twenty-First Affirmative Defense)[3]

**3)   PMI's Causes of Action**

**a.   Breach of the Development Agreement**

_Elements_

To recover damages from WTRI for breach of the Development Agreement, PMI must prove:

1. That PMI and WTRI entered into the Development Agreement;

2. That PMI did all, or substantially all, of the significant things that the Development Agreement required it to do or was excused from having to complete certain obligations due to WTRI's failure to satisfy one or more conditions precedent;

3. That WTRI:

   a. failed to do one or more of the obligations that the Development Agreement required it to do; or

---

[3] PMI asserted affirmative defenses in its Answer for: (1) Failure To State A Claim (First Affirmative Defense); (2) Failure To State A Claim For Attorneys' Fees (Twenty-Third Affirmative Defense); and (3) No Entitlement To Prejudgment Interest (Twenty-Fourth Affirmative Defense).  PMI does not concede or withdraw any of these affirmative defenses.  But, these defenses and the issues relating to these defenses are matters for the Court and not the jury to decide.

18cv1927

b.  did something that the Development Agreement prohibited it from doing;[4]

4.  That PMI was harmed; and

5.  That WTRI's breach of the Development Agreement was a substantial factor in causing PMI's harm.

*See, e.g.*, Judicial Council of California Civil Jury Instructions, CACI, No. 303 (2020).

**b.    Breach of the Services Agreement**

*Elements*

To recover damages from WTRI for breach of the Services Agreement, PMI must prove:

1.  That PMI and WTRI entered into the Services Agreement;

2.  That PMI did all, or substantially all, of the significant things that the Services Agreement required it to do or was excused from having to complete certain obligations due to WTRI's failure to satisfy one or more conditions precedent;

3.  That WTRI

a.  failed to do one or more of the obligations that the Services Agreement required it to do; or

b.  did something that the Services Agreement prohibited it from doing;[5]

4.  That PMI was harmed; and

5.  That WTRI's breach of the Services Agreement was a substantial factor in causing PMI's harm.

*See, e.g.*, Judicial Council of California Civil Jury Instructions, CACI, No. 303 (2020).

---

[4] These alleged breaches include: (1) failing to satisfy the Acceptance Criteria per Section 5.2; (2) failing to provide quality code pursuant to Section 10.2(c); (3) breaching the field of use provision contained in Section 2.4; and (4) breaching the confidentiality provision in Section 13.  *See* D.I. 47.

[5] These alleged breaches include: (1) failing to meet promotional obligations under Section 2.4; (2) failing to make technical and content development contributions pursuant to Sections 2.1 and 2.5; (3) breaching the confidentiality provision in Section 10.3; and (4) violating License Agreement attached as Exhibit A to the Services Agreement.  *See* D.I. 47.

7                                                        18cv1927

### c.   Breach Of Implied Covenant Of Good Faith And Fair Dealing of the Development Agreement

_Elements_

PMI claims that WTRI violated the duty to act fairly and in good faith as to the Development Agreement. To establish this claim, PMI must prove:

1. That PMI and WTRI entered into the Development Agreement;
2. That PMI did all, or substantially all, of the significant things that the Development Agreement required it to do or that PMI was excused from having to do those things;
3. That WTRI's conduct prevented PMI from receiving the benefits under the contract;
4. That by doing so, WTRI did not act fairly and in good faith; and
5. That PMI was harmed by WTRI's conduct.

_See, e.g._, Judicial Council of California Civil Jury Instructions, CACI, No. 325 (2020).

### d.   Breach Of Implied Covenant Of Good Faith And Fair Dealing of the Services Agreement

_Elements_

PMI claims that WTRI violated the duty to act fairly and in good faith as to the Services Agreement. To establish this claim, PMI must prove:

1. That PMI and WTRI entered into the Services Agreement;
2. That PMI did all, or substantially all, of the significant things that the Services Agreement required it to do or that PMI was excused from having to do those things;
3. That WTRI's conduct prevented PMI from receiving the benefits under the contract;
4. That by doing so, WTRI did not act fairly and in good faith; and
5. That PMI was harmed by WTRI's conduct.

47001860.6

*See, e.g.*, Judicial Council of California Civil Jury Instructions, CACI, No. 325 (2020).

### e.     Theft Of Trade Secrets (18 U.S.C. § 1836, et seq.).

<u>Elements</u>

PMI claims that WTRI has misappropriated a trade secret under Federal law.  To succeed on this claim, PMI must prove:

1. That PMI owned its trade secrets related to its Flow activity templates and corresponding spreadsheet designs (the "PMI Technology") that is subject to the misappropriation claim;

2. That the PMI Technology was trade secret at the time of misappropriation;

3. That WTRI improperly acquired, used, or disclosed the trade secrets;

4. That the PMI Technology is related to a product or service used in, or intended for use in, interstate or foreign commerce;

5. That PMI was harmed or WTRI was unjustly enriched; and

6. That WTRI's acquisition, use, or disclosure was a substantial factor in causing PMI's harm or WTRI to be unjustly enriched.

*See, e.g.*, 18 U.S.C. § 1836(b)(1); *Attia v. Google, LLC*, 983 F.3d 420 (9th Cir. 2020); Judicial Council of California Civil Jury Instructions, CACI, No. 4401 (2020); *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (noting that the elements of misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq., are similar to those under the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, et seq.).

### f.     Misappropriation Of Trade Secrets (Cal. Civ. Code § 3426, et seq.).

<u>Elements</u>

PMI claims that WTRI has misappropriated a trade secret under state law.  To succeed on this claim, PMI must prove:

1. That PMI owned its related to its Flow activity templates and corresponding

9                                    18cv1927

spreadsheet designs (the "PMI Technology") that is subject to the misappropriation claim that is subject to the misappropriation claim;

2. That the PMI Technology was trade secret at the time of misappropriation;

3. That WTRI improperly acquired, used, or disclosed the trade secrets;

4. That PMI was harmed or WTRI was unjustly enriched; and

5. That WTRI's acquisition, use, or disclosure was a substantial factor in causing PMI's harm or WTRI to be unjustly enriched.

*See, e.g.*, Judicial Council of California Civil Jury Instructions, CACI, No. 4401 (2020).

### 4)   WTRI's Defenses to PMI's Causes of Action

Plaintiff has asserted the following defenses to PMI's counterclaims:

a.    False Claims (Second Affirmative Defense)

b.    No Damage or Injury (Third Affirmative Defense)

c.    Offset and/or Setoff (Fourth Affirmative Defense)

d.    Unclean Hands (Fifth Affirmative Defense)

e.    In Pari Delicto (Sixth Affirmative Defense)

f.    Unjust Enrichment (Seventh Affirmative Defense)

g.    Consent (Eighth Affirmative Defense)

h.    Waiver (Ninth Affirmative Defense)

i.    Ratification (Tenth Affirmative Defense)

j.    Estoppel (Eleventh Affirmative Defense)

k.    Adequate Remedy at Law (Twelfth Affirmative Defense)

l.    Failure to Mitigate Damages (Thirteenth Affirmative Defense)

m.    Failure of Condition Precedent (Fourteenth Affirmative Defense)

n.    Excuse for Non-Performance (Fifteenth Affirmative Defense)

o.    Frustration of Purpose (Sixteenth Affirmative Defense)

p.    Novation (Seventeenth Affirmative Defense)

q.    Laches (Eighteenth Affirmative Defense)

18cv1927

r.   No Breach by WTRI (Nineteenth Affirmative Defense)

s.   Breach of Contract by PMI (Twentieth Affirmative Defense)

t.   Substantial Performance (Twenty-first Affirmative Defense)

u.   The Information Is Not A Trade Secret (Twenty-second Affirmative Defense)

v.   Independently Developed (Twenty-third Affirmative Defense)

w.   Readily Ascertainable (Twenty-fourth Affirmative Defense)

x.   PMI Failed To Take Prompt Action (Twenty-fifth Affirmative Defense)

y.   Lack Of Improper Acquisition, Disclosure or Use (Twenty-sixth Affirmative Defense)

z.   PMI Has Not Sufficiently Described Its Purported Trade Secrets (Twenty-seventh Affirmative Defense)

aa.  Statute Of Limitations (Twenty-eighth Affirmative Defense)

## III. Witnesses

### a. Witnesses counsel expects to call at trial

### <u>LAY WITNESSES WTRI EXPECTS TO CALL</u>

1.   Sterling Chamberlain               Mr. Chamberlain is WTRI's CTO and is expected to testify regarding WTRI's business, the relationship between PMI and WTRI, including, but not limited to work performed under the parties' agreements, and development of the Maxx virtual environment.  Mr. Chamberlain may also testify regarding his knowledge (or lack thereof) of certain PMI flows alleged to be PMI's trade secrets.  Mr.

11                                                   18cv1927

47001860.6

Chamberlain may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

2.     Lia DiBello

Dr. DiBello is WTRI's CEO and is expected to testify regarding WTRI's business, her research on cognitive science and accelerated learning (which are the cornerstones of the technology involved in this case), WTRI's customers, lost business, WTRI's NSF grants, the relationship between PMI and WTRI, including but not limited to the negotiations she personally conducted relating to the various agreements and work performed under the parties' agreements, WTRI's relationship with CVP, and the development and functionality of the Maxx virtual environment. Dr. DiBello may also testify regarding her knowledge (or lack thereof) of certain PMI flows alleged to be PMI's trade secrets. Dr. DiBello may also testify as to those matters for which she was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

12                                          18cv1927

3.   David Lehmann

Dr. Lehmann is WTRI's CFO and he is expected to testify regarding WTRI's business, financial projections, and the relationship between WTRI and PMI, including, but not limited to, work performed under the parties' agreements.

4.   Chris Mancus

Mr. Mancus, a PMI employee, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to, collection of source code, PMI's lack of knowledge regarding a testing tool called SonarQube that PMI appears to rely on for its allegation that WTRI's code was of "poor quality", which parties were responsible for which portions of the development, and those contractual obligations PMI failed to meet. Mr. Mancus may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

5.   Whitney Missildine

Dr. Missildine, a former WTRI employee who worked on the PMI/WTRI collaboration, is expected to testify regarding his employment at WTRI, his personal use and knowledge of flows prior

13

18cv1927

47001860.6

to PMI and WTRI's collaboration, his recommendation to use Lucid Charts (a software tool PMI alleges was part of the creation of the trade secrets), and work performed under the Development Agreement. Dr. Missildine may also testify regarding his knowledge (or lack thereof) of certain PMI flows alleged to be PMI's trade secrets.

6.   Thom Rossi

Mr. Rossi, a PMI employee, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to, work performed under the parties' respective agreements. Mr. Rossi will also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

7.   Ioana Sfetcu

Ms. Sfetcu, a PMI employee, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to, PMI's expenses for the projects resulting from the parties' agreements. Ms. Sfetcu may also testify as to those matters for which she was designated a corporate designee under Fed.

R. Civ. P. 30(b)(6).

| | | |
|---|---|---|
| 8. | Shelby Smith | Dr. Smith, a former WTRI employee who worked on the PMI/WTRI collaboration, is expected to testify regarding her employment at WTRI and her work performed under the parties' agreements. Dr. Smith may also testify regarding her knowledge (or lack thereof) of certain PMI flows alleged to be PMI's trade secrets. |
| 9. | Joshua West | Mr. West, a former WTRI contractor who worked on the PMI/WTRI collaboration, is expected to testify regarding his employment with WTRI, work performed for WTRI as a contractor, development of the product as part of the parties' respective agreements, including, but not limited to, operation of the source code. Mr. West will also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).[6] |

---

[6] WTRI reserves the right to amend its witness categorizations to the extent they are impacted by: (1) the Court's rulings on pending *Daubert* motions; (2) any future Court rulings (including on motions *in limine*, exhibit objections, or deposition designation objections); (3) any instructions or guidance from the Court regarding whether witnesses can appear remotely; and/or (4) the witnesses PMI calls.

47001860.6

## LAY WITNESSES PMI EXPECTS TO CALL AT TRIAL

1.   Joseph Cahill                 PMI's Chief Customer Officer. Mr. Cahill is expected to testify regarding PMI's organizational and decision making structure, the nature of PMI's business, PMI's business strategy regarding the PAL project, PMI's expectations for the PAL project, and termination of the PAL project and the parties' agreements.[7]

2.   Victor Carter-Bey            Former Director of Certification at PMI. Mr. Carter-Bey is expected to testify regarding the negotiation of the parties' agreements, the parties' communications, PMI's commitment to the PAL project and performance under the parties' agreements, and the termination of the parties' agreements.

3.   Sterling Chamberlain        WTRI's Vice President and Senior Technologist. Mr. Chamberlain is

---

[7] WTRI objects to Mr. Cahill's designation as a witness until PMI makes him available for deposition per the agreement of the parties.

PMI notes in response that it already stated it would make Mr. Cahill available for deposition at a mutually agreeable date and time which moots WTRI's objection. Moreover, WTRI obviously knew of Mr. Cahill's existence long before now given that it noticed his deposition, the parties agreed to a September 29, 2020 date for the deposition, and WTRI opted to take the deposition off calendar the day before it was to occur. Accordingly, there is no legitimate objection to PMI's inclusion of Mr. Cahill though PMI will provide briefing on the issue if the Court requests it.

16                                                          18cv1927

expected to testify regarding the parties' relationship, the parties' work on the PAL project, and PMI's commitment to the PAL project. Mr. Chamberlain may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

4.    Lia DiBello

WTRI's President and Director of Research. Dr. DiBello is expected to testify regarding negotiation of the parties' agreements, the parties' rights and obligations under those agreements, the parties' relationship, the parties' work performed on the PAL project, the development of the PAL project, and PMI's commitment to the PAL project. Dr. DiBello may also testify as to those matters for which she was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

5.    David Garrett

PMI's Chief Strategy & Growth Officer. Mr. Garrett is expected to testify regarding PMI's business strategy and model, the marketability of the PAL product, and PMI's decision not to

commercialize the PAL product.[8]

6.   Karen Holloway

Lead Instructional Designer during the PAL project.  Ms. Holloway is expected to testify regarding the parties' work performed on the PAL project, PMI's relationship with Czarina Games, PMI's commitment to the PAL project, and the development and misappropriation of PMI's trade secrets.  Ms. Holloway may also testify as to those matters for which she was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

7.   Misael (Mitch) Labrador

Vice President of Software Development at Creative Veteran Productions (CVP).  Mr. Labrador is expected to testify regarding CVP's relationship with the parties, CVP's role in the PAL project, CVP's work performed on the PAL project, the software and source code

---

[8] WTRI objects to Mr. Garrett's designation as a witness and intends to raise the issue at the pretrial conference.  Mr. Garrett's designation is also addressed in WTRI's motions *in limine*.

PMI responds that it will oppose WTRI's motion *in limine*.  Moreover, PMI disclosed Garrett as a witness on November 5, 2021.  See D.I. 227-1.  WTRI slept on this purported issue until its April 12, 2022 motion *in limine* – over five months later.  See D.I. 250-1. WTRI could have sought leave to depose Garrett during these five months or taken any other affirmative action – but WTRI did not.  WTRI should not be rewarded for its delay..

development of the PAL project, and CVP's knowledge of PMI's trade secrets.

8.   David Lehmann

WTRI's Vice President and Chief Operating Officer.  Dr. Lehmann is expected to testify regarding the parties' agreements, the parties' rights and obligations under those agreements, the parties' relationship, the parties' work performed on the PAL project, and PMI's commitment to the PAL project.

9.   Christopher Mancus

System Architect at PMI during the PAL project and technical lead on the PAL project.  Mr. Mancus is expected to testify regarding software and source code development of the PAL product, the roles of Neudesic and CVP in software development of the PAL product, the parties' work performed on the PAL project, and PMI's commitment to the PAL project.  Mr. Mancus may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

10.  Timothy Marshall

President and Founder of Neudesic.  Mr. Marshall is expected to testify regarding

19                                    18cv1927

47001860.6

Neudesic's relationship with the parties, Neudesic's role in and work on the PAL project, the software and source code development of the PAL project, and Neudesic's knowledge of PMI's trade secrets.

11.   Betsy Redden

Manager of Online Learning at PMI during the PAL project.  Ms. Redden is expected to testify regarding the parties' agreements, PAL project deadlines and progress, the parties' work performed on the PAL project, PMI's relationship with Czarina Games, the development and misappropriation of PMI's trade secrets, and PMI's commitment to the PAL project.  Ms. Redden may also testify as to those matters for which she was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

12.   Alicia Sanchez

CEO of Czarina Games and serious games designer.  Dr. Sanchez is expected to testify regarding Czarina Games's relationship with the parties, Czarina Games's role on the PAL project, Czarina Games's work completed on the PAL project, the software development

20

18cv1927

of the PAL project, and Czarina Games's knowledge of PMI's trade secrets.

13.   Jesse Sardina

PMI's Project Manager for the PAL project.  Mr. Sardina is expected to testify regarding the parties' agreements, the division of the parties' responsibilities under the agreements, PMI's relationship with Neudesic, PMI's relationship with CVP, communications between the parties, PMI's work performed on the PAL project, the development and confidentiality of PMI's trade secrets, PMI's investment in the PAL project, and PMI's commitment to the PAL project.  Mr. Sardina may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).[9]

b.   **Expert Witnesses counsel expect to call at trial**

**EXPERT WITNESSES WTRI EXPECTS TO CALL AT TRIAL**

**Ryan LaMotta**

ASQ Consulting Group

Mr. LaMotta is expected to provide testimony as to appropriate damages and/or remedies due WTRI as

---

[9] PMI reserves the right to amend its witness categorizations to the extent they are impacted by: (1) the Court's rulings on pending *Daubert* motions; (2) any future Court rulings (including on motions *in limine*, exhibit objections, or deposition designation objections); (3) any instructions or guidance from the Court regarding whether witnesses can appear remotely; and/or (4) the witnesses WTRI calls during its case-in-chief.

720 Rusk, Suite 425

Houston, TX 77002

281-728-8651

a result of the alleged wrongful conduct as well as to assess and comment on the reports of PMI's experts, Ms. Irwin, Mr. Fincher, and Dr. Ferri, relating to PMI's claims for damages. Mr. LaMotta will testify in accordance with and consistent with his expert reports produced previously in this matter and his deposition testimony.

**Dr. Mahesh Raisinghani**

Texas Woman's University

304 Administration Dr.

Denton, TX 76204

940-898-2000

Dr. Raisinghani will testify in accordance with and consistent with his expert reports produced previously in this matter and his deposition testimony, including, but not limited to the scope of project, program, and portfolio management, as compared to product management, whether PMI and WTRI used professional project management techniques for the project under the parties' respective agreements, and the Maxx game and what skills it teaches.

## EXPERT WITNESSES PMI EXPECTS TO CALL AT TRIAL

**Clark Aldrich**

Clark Aldrich Designs LLC

265 Warpas Road

Madison, CT 06443

(203) 245-3743

Expert in developing virtual educational simulations and serious games. Mr. Aldrich is expected to testify: (1) in response to WTRI's analysis of the scope of the field of use provision in the parties' agreements;[10] and (2) in support of

---

[10] WTRI objects to Mr. Clark's designation as a rebuttal witness to Dr. Raisinghani's field of use opinions. PMI bears the burden to show that WTRI breached the field of use provision and therefore was obligated to provide an opening report on the subject matter.

47001860.6

PMI's analysis of the scope of the project and product management industries and the field of use of the Maxx simulation.

**Dr. Mickey Ferri**

Insight Economics

4275 Executive Sq., Suite 200

San Diego, CA 92037

(858) 373-9901

Expert in applied business economics with extensive experience in economic analysis, business strategy, consulting, and data analysis. Dr. Ferri is expected to testify regarding the marketability of the PAL product and the reasonableness of PMI's decision not to commercialize the PAL product.

**Richard Fincher**

Gerson Lehrman Group, Inc.

60 E. 42nd St., 3rd Floor

New York, NY 10165

(212) 984-8500

Global business and engineering executive with expertise in strategic planning, budget development, marketing, and operations. Mr. Fincher is expected to testify regarding the practices of the project management industry, professional project management methodologies and processes, and the reasonableness of PMI's business approach to the PAL project.

**Carlyn Irwin**

Cornerstone Research

555 W. 5th St., 38th Flr.

Los Angeles, CA 90013

(213) 553-2533

Expert in analyzing economic, financial, causation, and accounting issues in context of damages claims, valuing businesses, and conducting financial forensic analysis in commercial disputes. Ms. Irwin is expected to testify: (1) in response to WTRI's damages

---

WTRI intends to raise this issue at the pretrial conference and the issue is part of WTRI's *Daubert* briefing.

analysis; and (2) in support of PMI's damages claim and offset defense.

**Jeremiah Stepan**
Exponent
5401 McConnell Avenue
Los Angeles, CA 90066
(310) 754-2743

Expert in electrical and electronic systems including software design. Mr. Stepan is expected to testify regarding the efficacy of the software developed for the PAL project, source code for the PAL project, and the reasonableness of PMI's decision to terminate the development of the software.

**Dr. Ricardo Valerdi**
University of Arizona
1127 E. James E. Rogers Way
Tucson, AZ 85721
(520) 621-6561

Expert in industrial and systems engineering. Dr. Valerdi is expected to testify regarding PMI's methods of developing its trade secrets, the identification of PMI's trade secrets, and WTRI's misappropriation of PMI's trade secrets.

    c. **Additional Witnesses, including experts, counsel do not expect to call but reserve the right to call**

## ADDITIONAL WITNESSES WTRI RESERVES THE RIGHT TO CALL

1.   Robert Burke

Mr. Burke, a PMI employee, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to, PMI's document collections efforts, PMI's document retention policies, and to what extent those were followed in this case.

24

18cv1927

47001860.6

Mr. Burke may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

2.   Victor Carter-Bey

Dr. Carter-Bey, a former PMI executive, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to his employment with PMI, negotiations relating to the parties' agreements, work performed under the parties' respective agreement, and an offer to sell the product to WTRI when the project was winding down.

3.   Nick Ferrara

Mr. Ferrara will testify in accordance with and consistent with his expert reports produced previously in this matter and his deposition testimony, including, but not limited to his analysis of the source code via visual inspection and through the use of tools, and whether certain acceptance criteria were met and if not, why not.  Mr. Ferrara's testimony is expected to rebut PMI's allegations regarding WTRI's code quality and PMI's allegation that certain acceptance

25                                    18cv1927

criteria were not met.

4.    Dr. Philip Greenspun

Dr. Greenspun will testify in accordance with and consistent with his expert reports produced previously in this matter and his deposition testimony, including, but not limited to his analysis of the source code via visual inspection, scalability of WTRI's code, and whether certain acceptance criteria were met and if not, why not.   Dr. Greenspun's testimony is expected to rebut PMI's allegations regarding whether certain acceptance criteria were met.

5.    Karen Holloway

Ms. Holloway, a PMI employee who worked on the PMI/WTRI collaboration, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to PMI's alleged trade secrets, including their development, value (or lack thereof), damages (or lack thereof), marking (or lack thereof), WTRI's access (or lack thereof) to the alleged trade secrets, and alleged misappropriation, as well as the development of the PAL

26                                      18cv1927

| | | |
|---|---|---|
| | | project, including software development, content creation, subject matter experts, individual roles and responsibilities, and contributions and interactions between individuals involved with the project. Ms. Holloway may also testify as to those matters for which she was designated a corporate designee under Fed. R. Civ. P. 30(b)(6). |
| 6. | Mitch Labrador | Mr. Labrador, the CEO of CVP (a vendor associated with the PMI/WTRI collaboration) is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to work performed by CVP as part of the parties' respective agreements, CVP's prior work with WTRI, and his understanding of any alleged benefits to PMI's alleged trade secrets. |
| 7. | Timothy Marshall | Mr. Marshall, an employee of Neudesic (a third-party vendor associated with the PMI/WTRI collaboration), is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to project |

27                                                      18cv1927

management, risk analysis, and other contributions by Mr. Marshall and Neudesic to the PAL project, interactions with others involved with the project, industry terms and usage, industry customs and norms.

8.   Betsy Redden

Ms. Redden, a PMI employee, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to her work on the projects resulting from the parties' respective agreements.   Ms. Redden may also testify as to those matters for which she was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

9.   Alicia Sanchez

Dr. Sanchez is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to validation and other contributions by Dr. Sanchez and Czarina Games to the PAL project, interactions with others involved with the project, identification of risk, and PMI's risk mitigation (if any).

10.   Jesse Sardina

Mr. Sardina, a PMI employee and the PMI project manager for the PMI/WTRI collaboration, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to PMI's verified interrogatories, his work on the projects resulting from the parties' respective agreements, and how PMI's alleged damages are related to WTRI's alleged breaches.  Mr. Sardina may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

11.   Dr. Rajeev Surati

Dr. Surati will testify in accordance with and consistent with his expert report produced previously in this matter and his deposition testimony, including, but not limited to, his analysis of the Maxx virtual environment, whether PMI's alleged trade secrets qualify as trade secrets, and whether WTRI misappropriated any alleged trade secret. Dr. Surati's testimony is expected to rebut PMI's allegations that WTRI misappropriated PMI's alleged trade secrets.

29                                    18cv1927

47001860.6

12.   Brian Weiss

Mr. Weiss, a former PMI employee, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to the negotiations that resulted in the agreements and work performed under the parties respective agreements.  Mr. Weiss may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

## ADDITIONAL WITNESSES PMI RESERVES THE RIGHT TO CALL

1.   Murat Bicak

Former Chief Strategy & Growth Officer at PMI. Mr. Bicak is expected to testify regarding the parties' relationship, the marketability of the PMI Advanced Learning ("PAL") software, PMI's decision not to commercialize the PAL product, and PMI's good faith commitment to the PAL project.[11]

---

[11] WTRI objects to Mr. Bicak's designation as a witness until PMI makes him available for deposition in the United States per the agreement of the parties.

PMI responds by noting at the outset that WTRI's characterization of the parties' earlier agreement regarding Mr. Bicak is incorrect.  PMI never agreed to make Mr. Bicak available for deposition "at least 21 days prior to the start of trial" or "in the United States."  Instead, PMI agreed to make Mr. Bicak available for deposition prior to trial if it intends to call him to testify in connection with WTRI's earlier failed attempts at serving a deposition subpoena.  Mr. Bicak is a former employee of PMI who PMI understands does not generally reside in the United States.  PMI stated in this order that he "may" be called to testify.  PMI already agreed to make Mr. Bicak available for deposition at a mutually agreeable date and time if he "will" testify which should moot any WTRI

| | | |
|---|---|---|
| 2. | Whitney Missildine | WTRI's Lead Designer for the PAL project.  Dr Missildine is expected to testify regarding the parties' work performed on the PAL project, the development of PMI's trade secrets, and PMI's commitment to the PAL project. |
| 3. | Thom Rossi | Manager of Information Technology for Advanced Learning while at PMI.  Mr. Rossi is expected to testify regarding the parties' responsibilities for technical aspects of the PAL project, the parties' work performed on the PAL project, the development of the software and source code for the PAL project, Neudesic and CVP's roles on the PAL project, and PMI's commitment to the PAL project. |
| 4. | Ioana Sfetcu | Senior Accountant at PMI.  Ms. Sfetcu is expected to testify regarding the preparation and contents of PMI"s expense records relating to the PAL project.  Ms. Sfetcu may also testify as to those matters for which she was designated a corporate designee under Fed. R. Civ. P. 30(b)(6). |
| 5. | Shelby Smith | Product Engineer at WTRI.  Dr. Smith is expected to testify regarding the parties' work |

---

objection.  Additionally, WTRI has not provided any authority (despite PMI's request for authority) showing that PMI has any obligation to do more than it already said it would with respect to making Mr. Bicak available for deposition.  PMI will provide briefing on this issue at the Court's request.

31

18cv1927

performed on the PAL project, the development of PMI's trade secrets, and PMI's commitment to the PAL project.

6.   Steven Townsend

Director of Network Programs at PMI during the PAL project.  Mr. Townsend is expected to testify regarding PMI's business strategy, the purpose of the PAL project, the parties' negotiations of the agreements, the parties' communications, and PMI's expectations for the PAL project.

7.   Brian Weiss

Former Vice President of Practitioner Markets at PMI.  Mr. Weiss is expected to testify regarding the negotiation and execution of the parties' agreements, the terms of the parties' agreements, the parties' relationship, communications between the parties, PMI's investment in the PAL project, termination of the parties' agreements, the parties' work performed on the PAL project, and PMI's commitment to the PAL project.

8.   Joshua West

Software Engineer at WTRI during the PAL project.  Mr. West is expected to testify regarding PMI's work on the PAL project, the software development of the PAL product, and PMI's commitment to the PAL project.

32

18cv1927

## IV.   Exhibits

### a.   Exhibits that counsel actually expect to offer at trial

WTRI's list of exhibits it expects to offer and may offer at trial are attached hereto as **Exhibit A**, which includes PMI's objections.  WTRI further reserves the right to rely upon any exhibit identified by PMI in Exhibit B.

PMI's list of exhibits it expects to offer and may offer at trial are attached hereto as **Exhibit B**, which includes WTRI's objections.  PMI further reserves the right to rely upon any exhibit identified by PMI in Exhibit A.

## V.   Statement of Facts to Which the Parties Stipulate

1.   Plaintiff Workplace Technologies Research, Inc. ("WTRI") is a Delaware corporation with its principal place of business in San Diego, California.

2.   Defendant Project Management Institute, Inc. ("PMI") is a Pennsylvania corporation organized as a not-for-profit membership association, with its principal place of business in Newtown Square, Pennsylvania.

3.   In late 2013, WTRI approached PMI, per the National Science Foundation's ("NSF") recommendation, to request a letter of support in connection with a grant WTRI intended to seek from the NSF.

4.   In early 2014, PMI and WTRI began discussions about a potential commercial partnership to co-develop an immersive accelerated learning technology platform for project management professionals.

5.   The parties entered two agreements relating to the co-development of an immersive accelerated learning technology platform for project management professionals.

6.   The parties' project came to be known as the Project Management Institute Advanced Learning ("PAL") project.

33

18cv1927

47001860.6

7.    The first agreement is called the "Software Technology Development And Purchase Agreement" (which the parties often refer to as the "Development Agreement") and has an effective date of September 8, 2015.

8.    The Development Agreement contemplated a phased software build with three phases named Alpha, Beta, and Charlie.

9.    The parties amended the Development Agreement through the "First Amendment to Software Technology Development and Purchase Agreement" (sometimes referred to as the "First Amendment to the Development Agreement").   The First Amendment to the Development Agreement has an effective date of November 30, 2016.

10.    The First Amendment to the Software Technology Development Agreement provided that the parties would enter into a Services Agreement (with PMI owing no additional payments under the Development Agreement) if PMI rejected the fifth version "Alpha Software" and retained the rejected version.

11.    On December 2, 2016, Dr. Victor Carter-Bey (with PMI) sent an email to Dr. Lia DiBello (with WTRI) stating PMI's election to reject the fifth version "Alpha Software" and retain the rejected software.

12.    The second agreement is called the "Services Agreement" and has an effective date of December 15, 2016.

13.    PMI and WTRI jointly collaborated on two software programs under the Development Agreement and Services Agreement: (a) Proteum ERP rehearsal, which began development under the Development Agreement; and (b) IceBochz rehearsal, which began development under the Services Agreement.

14.    WTRI sent PMI a letter dated June 18, 2018 containing a notice of termination of the Development Agreement and claiming alleged damages.

15.    WTRI developed the Maxx Virtual World Agile Leadership Rehearsal. WTRI advertises Maxx Virtual World Agile Leadership Rehearsal as one of its products.

**VI.    Party Positions**

The parties are unable to reach agreement as to certain issues set forth in this section. Accordingly, each party has set forth its own position with the understanding that joint submission of this document does not reflect any endorsement by either party as to the other party's position.

**a.    WTRI's Position**

During the December 17, 2021, hearing, Judge Miller expressly acknowledged that the Court desired the parties to include a separate section in the Joint Proposed Final Pretrial Conference Order for admissions in the pleadings that the parties did not jointly agree to include in the Statement of Facts to Which the Parties Stipulate section of the document.  See December 17, 2021 hearing transcript at 18:6-18.  Accordingly, WTRI presents the following admissions from PMI for which no agreement was reached for inclusion in the stipulated facts section.  Citations are provided for the convenience of the Court and the parties.

| Item | PMI's Judicial Admission | Source | PMI's Response |
|------|--------------------------|--------|----------------|
| 1 | PMI discussed with WTRI an interest in expanding PMI's product offerings. | D.I. 46, ¶ 9 | <ul><li>Whether PMI discussed an interest in expanding its product offerings is irrelevant to the issues before the jury.</li><li>This item is taken out of context as PMI denied the remaining allegations associated with this item.  Namely, PMI denied WTRI's allegation that "PMI's products were not as attractive as they once were in the past and PMI believed that its involvement with WTRI's proposal to the NSF would enhance PMI's product offerings."  *See* D.I. 37, ¶ 9; D.I. 46, ¶ 9.  WTRI's use of this item to prove its allegations in Paragraph 9 of the Third Amended Complaint is disingenuous given PMI's denial of the associated allegations.</li><li>This item may be confusing to the jury to the extent that it is vague and ambiguous as to "expanding PMI's product offerings" and the jury may be presented with the complete context during PMI's case.</li></ul> |

18cv1927

| 2 | WTRI provided demonstrations of its technology to PMI employees in late 2014 and early 2015. | D.I. 46, ¶ 10 | • Whether WTRI demonstrated the technology to PMI is irrelevant to the issues before the jury.<br>• This item is taken out of context as PMI denied the remaining allegations associated with this item. Namely, PMI denied WTRI's allegations in the same paragraph that "PMI offered to co-develop and integrate WTRI's software into PMI's enterprise system ('Enterprise Architecture') for project management training and education." *See* D.I. 37, ¶ 10; D.I. 46, ¶ 10. WTRI's use of this item to prove its allegations in Paragraph 10 of the Third Amended Complaint is disingenuous given PMI's denial of the associated allegations.<br>• This item is confusing to the extent that it is vague and ambiguous as to what "technology" was demonstrated and to which PMI employees. |

47001860.6

| 3 | WTRI showed PMI its calculations and projections seeking to demonstrate that WTRI's technology could produce hundreds of millions of dollars in revenue for PMI. | D.I. 46, ¶ 11 | • This item is taken out of context as PMI denied the remaining allegations associated with this item.  PMI has always hotly disputed the accuracy of these projections (even at the time WTRI presented them).  This selection out of context is confusing and prejudicial because it ignores PMI's adamant disagreement. *See* D.I. 46, ¶ 11. |
|---|---|---|---|
| 4 | Under the terms of the Development Agreement, PMI was required to make an upfront payment of $1,000,000 to WTRI toward purchase of the technology to be developed and ultimately made this payment to WTRI. | D.I. 46, ¶ 21 | • This item is improper, cumulative, and confusing.  The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 13. |
| 5 | PMI made an initial payment of $1,000,000 to WTRI toward the purchase of the software to be developed in accordance with terms of the Development Agreement. | D.I. 46, ¶ 17 | • This item is improper, cumulative, and confusing.  The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 13.  Moreover, this item is cumulative of Item No. 5 above. |

38

18cv1927

| 6 | A Software Development Plan ("Development Plan") was labeled as Exhibit B and attached as an addendum to the Development Agreement. | D.I. 46, ¶ 27 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.,* Proposed Stipulations No. 11.<br>• This item is not properly contextualized with references to the other exhibits to the Development Agreement. |
| 7 | The Development Agreement incorporated the Software Development Plan. | D.I. 46, ¶ 29; *see also* D.I. 215 at 13 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.,* Proposed Stipulations No. 11.<br>• This item is also not properly contextualized because PMI disputes to what extent the Software Development Plan dictates the parties' obligations. |

47001860.6

| 8 | WTRI pitched the software to be developed as having multi-player and single player capabilities. | D.I. 46, ¶ 71 | • Whether WTRI pitched the software to include multi-player capabilities is irrelevant to the issues before the jury.<br>• This item is not properly contextualized.  First, this item does not explain what "multi-player and single player capabilities" are.  Then, this item does not explain the significance of this fact.  Finally, PMI has always disputed which software was more valuable.  Namely, PMI denied WTRI's allegations in the same paragraph that "PMI had begun to focus almost exclusively on the development of the single-player mode for the software – doing little to advance the far more valuable multi-player environment."  *See* D.I. 37, ¶ 71; D.I. 46, ¶ 71. WTRI's use of this item to prove its allegations in Paragraph 71 of the Third Amended Complaint is disingenuous given PMI's denial of the associated allegations. |

47001860.6

| 9 | The software developed pursuant to the Development Agreement was to be developed in accordance with acceptance criteria mutually agreed to by the parties (the "Acceptance Criteria"). | D.I. 46, ¶ 30 | • This item is improper, cumulative, and confusing.  The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations Nos. 11, 14. |
| 10 | The Acceptance Criteria mutually agreed to by the parties were incorporated into the Development Agreement. | D.I. 47, ¶ 19 | • This item is improper, cumulative, and confusing.  The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations Nos. 11, 14. |

41

18cv1927

| 11 | PMI's employees attended a meeting at WTRI's San Diego office at or around December 14, 2015. | D.I. 46, ¶ 46 | • Whether PMI and WTRI met in San Diego around December 14, 2015 is irrelevant to the issues before the jury.<br>• This item is taken out of context as PMI denied the remaining allegations associated with this item. Namely, PMI denied WTRI's allegations in the next paragraph that "At this meeting, Ms. Holloway was pressed on the PMI content development team's failure to provide content, and she had an emotional episode and confessed that her team could not perform PMI's obligations under the Development Agreement with the resources provided by PMI."  *See* D.I. 37, ¶ 47; D.I. 46, ¶ 47.  WTRI's use of this item to prove its allegations in Paragraph 47 of the Third Amended Complaint is disingenuous given PMI's denial of the associated allegations.<br>• This item may be confusing to the jury to the extent that it is vague and ambiguous as to "PMI's employees" and the jury may be presented with the complete context during PMI's case. |
| 12 | PMI hired Neudesic, LLC ("Neudesic"). | D.I. 46, ¶ 52 | • This item is improper, cumulative, and confusing.  The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 25. |

18cv1927

47001860.6

| 13 | PMI and WTRI executed the First Amendment to Software Technology Development and Purchase Agreement on or about November 30, 2016 (the "Amended Development Agreement"). | D.I. 46, ¶ 79 | • This item is improper, cumulative, and confusing.  The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 4. |
|---|---|---|---|
| 14 | WTRI introduced PMI to Creative Veterans Production ("CVP"). | D.I. 46, ¶ 88 | • This item is improper, cumulative, and confusing.  The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 25. |
| 15 | PMI discussed with Dr. DiBello the development of an Agile product and entering into a Services Agreement with WTRI. | D.I. 46, ¶ 102 | • This item is improper, cumulative, and confusing.  The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 5.<br>• Whether PMI discussed entering into the Services Agreement is irrelevant to the issues before the jury.<br>• Moreover, this item is an example of an item that is cumulative and otherwise confusing.  This item proposes an obvious fact to the extent the parties executed a Services Agreement and stipulated to the agreement. |

47001860.6

| 17 | PMI and WTRI both executed the Services Agreement. | D.I. 46, ¶ 107 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 5. |
|----|---|---|---|
| 18 | The parties contemporaneously executed a license agreement dated December 15, 2016 (the "License Agreement"). | D.I. 47, ¶ 30 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 19. |
| 16 | The Services Agreement incorporated the License Agreement. | D.I. 47, ¶¶ 38, 52, 57 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 19. |
| 17 | The Services Agreement contains an Exhibit C titled "Services Detail and Delivery Schedule." | D.I. 46, ¶ 109 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 19. |
| 18 | WTRI was to be engaged in development under the Services Agreement. | D.I. 46, ¶ 122 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 5.<br>• This item may be confusing to the jury to the extent that it is vague and ambiguous as to "WTRI was to be engaged in development." |

44                                                                    18cv1927

47001860.6

| 19 | Dr. DiBello discussed with PMI her intention to include certain entities to participate in the Proteum pilot program. | D.I. 46, ¶ 115 | • This item may be confusing to the jury and prejudicial to the extent that it is pulled out of context because PMI has always disputed the veracity of Dr. DiBello's statements about participants in pilot programs. *See* D.I. 37, ¶ 115; D.I. 46, ¶ 115. |
|----|---|---|---|
| 20 | WTRI created "IceBochz." | D.I. 46, ¶ 123 | • This item may be confusing to the jury and prejudicial to the extent that it is pulled out of context and is vague and ambiguous as to "created." Namely, "IceBochz" was created pursuant to WTRI's contractual obligations for software to be owned by PMI. *See* D.I. 37, ¶ 123 ("WTRI, nonetheless, as part of its agreement with PMI created, designed, and provided the virtual company to PMI. The name of the virtual company was IceBochz."). |

47001860.6

| 21 | WTRI registered a domain for "IceBochz." | D.I. 46, ¶ 123 | • This item may be confusing to the jury and prejudicial to the extent that it is pulled out of context. Namely, "IceBochz" was created pursuant to WTRI's contractual obligations for software to be owned by PMI. *See* D.I. 37, ¶ 123 ("WTRI, nonetheless, as part of its agreement with PMI created, designed, and provided the virtual company to PMI. The name of the virtual company was IceBochz."). <br> • This item may be confusing to the jury and prejudicial to the extent that there is no context to explain the relevance or significance of this fact. |
| 22 | Mr. Weiss and Dr. DiBello discussed a sale back to WTRI of the technology that PMI had purchased from WTRI. Mr. Weiss told Dr. DiBello that PMI had invested over $10,000,000 in the technology. | D.I. 46, ¶ 129 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 21. |

47001860.6

| 23 | PMI engaged in discussions with WTRI to attempt to resolve issues that had been raised in regard to the Services Agreement. | D.I. 46, ¶ 136 | • This item is taken out of context as PMI denied the remaining allegations associated with this item.  *See* D.I. 46, ¶ 136.  First, the item is vague and ambiguous as to "issues that had been raised."  Second, the item, when placed alongside the following Item Nos. 27-28 is misleading.  PMI alleges that this action was made by WTRI in bad faith.  *See* D.I. 47, ¶¶ 28, 31-38.  The current framing is a skewed selection of cherry picked facts to craft a narrative that is different from what PMI alleges.<br>• This item may be confusing to the jury and prejudicial to the extent that there is no context to explain the relevance or significance of this fact. |

47

18cv1927

| 24 | WTRI prepared a written proposal for further product development. | D.I. 46, ¶ 137 | • This item is taken out of context as PMI denied the remaining allegations associated with this item.  *See* D.I. 46, ¶ 137.  First, the item is vague and ambiguous as to "proposal for further product development."  Second, the item, when placed alongside the Item Nos. 26 and 28 is misleading.  PMI alleges that this action was made by WTRI in bad faith.  *See* D.I. 47, ¶¶ 28, 31-38.  The current framing is a skewed selection of cherry picked facts to craft a narrative that is different from what PMI alleges.<br>• This item may be confusing to the jury and prejudicial to the extent that there is no context to explain the relevance or significance of this fact. |

47001860.6

| 25 | PMI did not accept WTRI's proposal for further product development. | D.I. 46, ¶ 138 | • This item is taken out of context as PMI denied the remaining allegations associated with this item.  *See* D.I. 46, ¶ 138.  First, the item is vague and ambiguous as to "issues that had been raised."  Second, the item, when placed alongside the preceding Item Nos. 26-27 is misleading.  PMI alleges that this action was made by WTRI in bad faith.  *See* D.I. 47, ¶¶ 28, 31-38.  The current framing is a skewed selection of cherry picked facts to craft a narrative that is different from what PMI alleges. <br>• This item may be confusing to the jury and prejudicial to the extent that there is no context to explain the relevance or significance of this fact. |

49

18cv1927

### b. PMI's Position

PMI rejects the basic principle of including a "disputed items" or purported "admissions" section in the proposed pretrial order. First, obviously, there is a dispute relating to these purported "admissions" which contradicts the notion that there is some agreed upon or undisputed "admission" at issue. Second, WTRI's claimed "admissions" by PMI tend to be duplicative of what the parties already agreed to in their Stipulations, inaccurate recitations of what PMI actually stated in various pleadings and discovery responses, and/or misleading and confusing characterizations of PMI's statements that lack sufficient and necessary context. Third, as PMI believes that these are not undisputed and unequivocal "admissions," resolving any disputes necessarily requires this Court to referee discovery disputes or make factual findings neither of which are appropriate at this stage of the proceedings.

Simply put, referring to any of the items WTRI proposes as "admissions" is confusing and misleading because these were not unqualified admissions. A "disputed items" section is: (1) an improper and unnecessary waste of party and judicial resources; (2) an improper attempt to prejudice and confuse the Court and the jury; and (3) an improper attempt to circumvent the process of reaching stipulations mutually agreed upon by both parties.

PMI further finds WTRI's proposed "admissions" improper for at least the following reasons:

- PMI rejects each and every item to the extent the items were stripped of necessary context. For example, a common trope employed by WTRI is cherry picking a statement from PMI's Answer, Counterclaims, or discovery responses while excluding the rest of PMI's response or context. Taking one phrase or sentence out of context is prejudicial and confusing to the jury.

50

18cv1927

•     PMI rejects each and every item below to the extent each item is duplicative and cumulative of other items and stipulations already agreed to by the parties.

•     PMI further rejects each and every item below to the extent the items are irrelevant or provide no value to the trier of fact.  PMI believes it is inappropriate to present disorganized facts that lack appropriate context to the jury before the parties' cases are presented.  This will only confuse the jury.  And, the parties need to present evidence on the items below regardless of whether they are read to the jury, so the "disputed items" section does not save the parties any time.

•     PMI also rejects each and every item below on the basis that WTRI engages in naked and improper gamesmanship with respect to these purported "admissions."  PMI attempted to admit and deny facts in its pleadings and discovery responses in good faith.  In contrast, WTRI only admitted a very limited number of facts in its Answer (approximately 24 facts compared to PMI's approximately 65 admissions in its Answer), denied all of PMI's requests for admission, and refuses to admit basic facts for which there is no legitimate dispute and/or WTRI agreed in its response to PMI's summary judgment motion.  Therefore, WTRI should be prohibited from using its refusal to participate in the pleading and discovery processes in good faith to its advantage at trial.  See, e.g., Counterclaims ¶ 16; Answer to Counterclaims ¶ 16 (denying that PMI made an initial payment to WTRI or $1,000,000 under the Development Agreement).

## VII.  List of all Deposition Transcripts by Page and Line, or Videotape Depositions by Section, that Will be Offered at Trial

WTRI's list of all deposition transcripts by Page and Line, or Videotape Depositions by Section, that will be offered at trial are attached here as **Exhibit C**, which includes PMI's objections and counter-designations and WTRI's objections to PMI's counter-designations.

PMI's list of all deposition transcripts by Page and Line, or Videotape Depositions by Section, that will be offered at trial are attached here as **Exhibit D**, which includes WTRI's objections and counter-designations and PMI's objections to WTRI's counter-designations.

## VIII.  Jury Instructions

Both sides will file proposed jury instructions one week prior to the commencement of trial pursuant to CivLR 16.1(f)(9).  In addition to filing proposed jury instructions in accordance with Fed. R. Civ. P. 51 and CivLR 5.1, the parties will e-mail the proposed instructions to Chambers.  If a party disagrees with a particular instruction, the party must submit an alternate instruction.

## IX.    Jury Trial Demanded

This case will be tried by jury.

## X.     Time Estimated for Trial[12]

WTRI estimates that trial in this matter will take between 8-10 trial days, to be split evenly between the two sides.

PMI estimates that trial in this matter will take between 11-13 trial days.

---

[12] Each party has provided its best estimate of a proposed time for trial based on the currently-available information, but if the Court desires, each party would prepare a revised estimate to account for any *Daubert* motions that may be granted.

18cv1927

Dated:  April 20, 2022

Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

/s/_____
JOSE L. PATIÑO, CA Bar No. 149568
   JosePatino@eversheds-sutherland.com
NICOLA A. PISANO, CA Bar No. 151282
   NicolaPisano@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
   ScottPenner@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
   JustinGray@eversheds-sutherland.com
REGIS C. WORLEY, JR., CA Bar No. 234401
   RegisWorley@eversheds-sutherland.com
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:     858.252.6502
FACSIMILE:     858.252.6503

Attorneys for Plaintiff and Counter-Defendant
WORKPLACE TECHNOLOGIES RESEARCH, INC.

Dated:  April 20, 2022

**WILLKIE FARR & GALLAGHER LLP**

By:  /s/_____
        Eric J. Bakewell
        Hannah L. McMeans
        Benita S. Yu
        Emily Horak

Attorneys for Defendant and Counterclaimant
PROJECT MANAGEMENT INSTITUTE, INC.

53

18cv1927

47001860.6

JOSE L. PATIÑO, CA Bar No. 149568
    JosePatino@eversheds-sutherland.com
NICOLA A. PISANO, CA Bar No. 151282
    NicolaPisano@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
    ScottPenner@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
    JustinGray@eversheds-sutherland.com
REGIS C. WORLEY, JR., CA Bar No. 234401
    RegisWorley@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA 92130
TELEPHONE:    858.252.6502
FACSIMILE:    858.252.6503

Attorneys for Plaintiff and Counter-Defendant
WORKPLACE TECHNOLOGIES RESEARCH, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORKPLACE TECHNOLOGIES RESEARCH, INC., | Case No. 3:18-cv-01927-JO-MSB |
| Plaintiff, | Honorable Jinsook Ohta |
| | Complaint Filed: August 20, 2018 |
| v. | |
| PROJECT MANAGEMENT INSTITUTE, INC. | **JOINT PROPOSED PRETRIAL CONFERENCE ORDER** |
| Defendant. | |
| PROJECT MANAGEMENT INSTITUTE, INC. | |
| Counterclaimant, | |
| v. | |
| WORKPLACE TECHNOLOGIES RESEARCH, INC.; and DOES 1-15 inclusive, | |
| Counterdefendants. | |

18cv1927

47001860.6

1    Plaintiff and Counter-Defendant Workplace Technologies Research, Inc. ("WTRI")

2  and Defendant and Counter-Claimant Project Management Institute, Inc. ("PMI") jointly

3  lodge this Joint Proposed Pretrial Conference Order.[1]

4  **I.    Statement to Be Read to the Jury of the Nature of the Case and Claims and**

5  **Defenses**

6    This case involves a contract and trade secrets dispute between Plaintiff Workplace

7  Technologies Research, Inc., who is frequently referred to as "WTRI," and Defendant

8  Project Management Institute, who is frequently referred to as "PMI."

9    WTRI initiated this action and alleges PMI breached the parties' contracts.  PMI

10  alleges WTRI breached the parties' contracts and misappropriated PMI's trade secrets.

11    WTRI creates virtual worlds, computer-based simulations that can replicate real-

12  world situations, which enable users to gain experience without the consequences of real-

13  world mistakes.  WTRI also performs scientific research on how simulations can develop

14  "accelerated learning," which is the ability for participants to achieve proficiency in a

15  shorter period of time as compared to gaining real world experience.

16    PMI is a not-for-profit membership organization working in nearly every country

17  around the world to advance careers, strengthen organizational success, and empower

18  project professionals with new skills and ways of working to maximize their impact.  PMI

19  offers project management certifications and provides training, education, thought

20  leadership, and academic research.

21    WTRI and PMI began their business relationship in or around late 2013 and ended

22  the relationship in or around mid-2018.  Initially, PMI provided letters of support for

23  WTRI to the National Science Foundation (frequently referred to as "NSF") at WTRI's

24  request in connection with WTRI attempting to secure grant money from NSF.

25

26  _____

[1] This Joint Proposed Pretrial Conference Order is submitted while the parties' motions *in limine* and *Daubert* motions remain pending.  *See* D.I. 248-284.  The parties preserve their objections raised in the pending motions.  This Joint Proposed Pretrial Conference Order is subject to change based on the Court's rulings on the outstanding motions *in limine* and *Daubert* motions.

I                          18cv1927

[Formatted: Font: Italic]

[Formatted: Font: Italic]

1  Subsequently, the parties attempted to co-develop a virtual world software program aimed
2  at providing project management training through accelerated learning.

3       The software program the parties attempted to develop would have allowed project
4  management professionals to encounter real-world scenarios in a virtual world.  Project
5  managers would be able to improve their skills in the virtual world without the
6  consequences of real-world mistakes.  The software was supposed to provide a unique
7  experience for each user by providing different scenarios based on the user's project
8  management experience and skills.  The parties contemplated that WTRI would contribute
9  its experience in building virtual worlds and rehearsals, along with its research in
10 "accelerated learning."  PMI would contribute its expertise in the field of project
11 management, and elements of its intellectual property related to project management
12 training and instruction.  The software program never made it to market.

13      WTRI developed a software program called "Maxx Virtual World Agile Leadership
14 Rehearsal" after the breakdown of the relationship between WTRI and PMI.

15      The two contracts at issue in this case are the "Software Technology Development
16 and Purchase Agreement" (which is often referred to as the "Development Agreement")
17 and the "Services Agreement."  The Development Agreement was effective as of
18 September 8, 2015.  The "Services Agreement" was entered into as of December 15, 2016.
19 The parties' dispute in this litigation relates to what happened in connection with the
20 software program the parties attempted to co-develop under the Development Agreement
21 and Services Agreement, whether the parties fulfilled their contractual and legal
22 obligations in connection with the two agreements and related work, whether and to what
23 extent PMI developed any trade secrets, and, if so, what happened with PMI's alleged
24 trade secrets after the parties' relationship deteriorated.

25      WTRI claims that PMI breached the Development Agreement and the Services
26 Agreement.  WTRI also claims that PMI breached the Development Agreement's implied
27 covenant of good faith and fair dealing.  PMI denies those allegations.

28

2                        18cv1927

47001860.6

1    PMI claims WTRI breached the Development Agreement and the Services

2    Agreement.  PMI also claims that WTRI breached the implied covenants of good faith and

3    fair dealing in both agreements.    Additionally, PMI claims that WTRI stole and

4    misappropriated PMI's trade secrets.  WTRI denies those allegations.

5    **II.    List of Causes of Action to be Tried**

6        **1)    WTRI's Causes of Action[2]**

7            **a. Breach of the Development Agreement.**

8    *Elements*

9

10   [2] Prior to the commencement of discovery, the Court granted PMI's motion to dismiss
     WTRI's claims for breach of the implied covenant of good faith and fair dealing in the
11   Services Agreement, fraud, and tortious interference with prospective business relations.
     *See* D.I. 42 at 8-9.  The Court expressly stated that "[a]fter discovery commences,
12   however, WTRI is free to request leave to amend its Complaint, as consistent with the
     Federal Rules of Civil Procedure and Local Rules, based on evidence obtained through
13   discovery."  *Id.*  In accordance with Rule 15(a) or 15(b) and this Court's prior order,
     WTRI intends to raise the issue of amending its Complaint at the pretrial conference.
14
     PMI is surprised that WTRI intends to raise further amendment of the Complaint at this
15   late date and given the Court's prior rulings on PMI's motions to dismiss (D.I. 24, D.I.
     32, and D.I. 42) and WTRI's motion for leave to file a Fourth Amended Complaint (D.I.
16   111).  PMI is further surprised that WTRI first raised this issue in the November 24, 2021
     Proposed Pretrial Order lodged with the Court and still has not moved for leave to file an
17   amended complaint in the past five months.  The Court granted PMI's motion to dismiss
     the Third Amended Complaint (WTRI's fourth bite at the apple) without leave to amend
18   on January 20, 2020 with respect to WTRI's claims for breach of the implied covenant of
     good faith and fair dealing in the Services Agreement, fraud, and tortious interference
19   with prospective business relations.  *See* D.I. 42 at 8-9.  That followed the Court granting
     PMI's motions to dismiss and dismissing with leave to amend the same claims in the
20   First Amended Complaint and Second Amended Complaint.  *See* D.I. 24 at 22-25; D.I.
     32 at 18 (cautioning WTRI that "further unsuccessful attempts to amend the Complaint
21   may demonstrate that the dismissed claims cannot be cured by amendment").  Moreover,
     the Court already denied WTRI's motion for leave to file a Fourth Amended Complaint
22   after the close of fact discovery in a January 25, 2021 Order.  *See* D.I. 111 at 5 (holding
     that WTRI's "reason for seeking amendment is essentially that discovery has occurred,
23   not that newly uncovered evidence or a new admission by PMI confirms facts that were
     not previously alleged to support claims that were not previously rejected").  WTRI has
24   neither provided a proposed amended complaint nor discussed further amendment with
     PMI as of the time of the filing of this pretrial order, but it is difficult to understand how
25   further amendment would: (1) be permissible given the Court's prior rulings and that
     PMI is not aware of what WTRI could have recently learned that would relate to causes
26   of action based on actions occurring no later than 2018; (2) result in properly pled claims;
     or (3) lead to anything other than substantial delay in resolving this action as further
27   amendment requires a motion for leave to amend, likely triggers a motion to dismiss in
     response, and may necessitate additional discovery.
28                                                    3                            18cv1927

To recover damages from PMI for breach of the development contract, WTRI must prove all of the following:

1. That WTRI and PMI entered into a contract;

2. That WTRI did all, or substantially all, of the significant things that the development contract required it to do or was excused from having to complete certain obligations due to PMI's failure to satisfy one or more conditions precedent;

3. That PMI failed to do one or more of the obligations that the development contract required it to do;

4. That WTRI was harmed; and

5. That PMI's breach of the development contract was a substantial factor in causing WTRI's harm.

*See, e.g.,* Judicial Council of California Civil Jury Instructions, CACI, No. 303 (2020).

**b. Breach of the Services Agreement.**

*Elements*

To recover damages from PMI for breach of the services contract, WTRI must prove all of the following:

1. That WTRI and PMI entered into a contract;

2. That WTRI did all, or substantially all, of the significant things that the services contract required it to do or was excused from having to complete certain obligations due to PMI's failure to satisfy one or more conditions precedent;

3. That PMI failed to do one or more of the obligations that the services contract required it to do;

4. That WTRI was harmed; and

5. That PMI's breach of the services contract was a substantial factor in causing WTRI's harm.

*See, e.g.,* Judicial Council of California Civil Jury Instructions, CACI, No. 303 (2020).

4                                    18cv1927

47001860.6

**c. Breach of the Implied Covenant of Good Faith and Fair Dealing of the Development Contract.**

*Elements*

WTRI claims that PMI violated the duty to act fairly and in good faith in regard to the development contract. To establish this claim, WTRI must prove all of the following:

1. That WTRI and PMI entered into a contract;

2. That WTRI did all, or substantially all of the significant things that the development contract required it to do or that it was excused from having to do those things;

3. That PMI's conduct prevented WTRI from receiving the benefits under the contract;

4. That by doing so, PMI did not act fairly and in good faith; and

5. That WTRI was harmed by PMI's conduct.

*See, e.g.,* Judicial Council of California Civil Jury Instructions, CACI, No. 325 (2020).

**2)     PMI's Defenses to WTRI's Causes of Action**

PMI has asserted the following defenses to WTRI's claims:

    a.     No Injury (Second Affirmative Defense)

    b.     Offset And/Or Setoff (Third Affirmative Defense)

    c.     Unclean Hands (Fourth Affirmative Defense)

    d.     *In Pari Delicto* (Fifth Affirmative Defense)

    e.     Unjust Enrichment (Sixth Affirmative Defense)

    f.     Consent (Seventh Affirmative Defense)

    g.     Waiver (Eighth Affirmative Defense)

    h.     Ratification (Ninth Affirmative Defense)

    i.     Estoppel (Tenth Affirmative Defense)

    j.     Adequate Remedy at Law (Eleventh Affirmative Defense)

    k.     Failure To Mitigate Damages (Twelfth Affirmative Defense)

47001860.6

l. Failure Of Condition Precedent (Thirteenth Affirmative Defense)

m. Excuse For Non-Performance (Fourteenth Affirmative Defense)

n. Frustration Of Purpose (Fifteenth Affirmative Defense)

o. Novation (Sixteenth Affirmative Defense)

p. Fraud (Seventeenth Affirmative Defense)

q. Statute Of Limitations (Eighteenth Affirmative Defense)

r. Laches (Nineteenth Affirmative Defense)

s. No Breach (Twentieth Affirmative Defense)

t. Independent Or Superseding Cause (Twenty-First Affirmative Defense)[3]

**3)   PMI's Causes of Action**

    **a.   Breach of the Development Agreement**

_Elements_

To recover damages from WTRI for breach of the Development Agreement, PMI must prove:

1. That PMI and WTRI entered into the Development Agreement;

2. That PMI did all, or substantially all, of the significant things that the Development Agreement required it to do or was excused from having to complete certain obligations due to WTRI's failure to satisfy one or more conditions precedent;

3. That WTRI:

    a. failed to do one or more of the obligations that the Development Agreement required it to do; or

---

[3] PMI asserted affirmative defenses in its Answer for: (1) Failure To State A Claim (First Affirmative Defense); (2) Failure To State A Claim For Attorneys' Fees (Twenty-Third Affirmative Defense); and (3) No Entitlement To Prejudgment Interest (Twenty-Fourth Affirmative Defense).  PMI does not concede or withdraw any of these affirmative defenses.  But, these defenses and the issues relating to these defenses are matters for the Court and not the jury to decide.

b.  did something that the Development Agreement prohibited it from doing;[4]

4.  That PMI was harmed; and

5.  That WTRI's breach of the Development Agreement was a substantial factor in causing PMI's harm.

*See, e.g.*, Judicial Council of California Civil Jury Instructions, CACI, No. 303 (2020).

**b.      Breach of the Services Agreement**

*Elements*

To recover damages from WTRI for breach of the Services Agreement, PMI must prove:

1.  That PMI and WTRI entered into the Services Agreement;

2.  That PMI did all, or substantially all, of the significant things that the Services Agreement required it to do or was excused from having to complete certain obligations due to WTRI's failure to satisfy one or more conditions precedent;

3.  That WTRI

    a.  failed to do one or more of the obligations that the Services Agreement required it to do; or

    b.  did something that the Services Agreement prohibited it from doing;[5]

4.  That PMI was harmed; and

5.  That WTRI's breach of the Services Agreement was a substantial factor in causing PMI's harm.

*See, e.g.*, Judicial Council of California Civil Jury Instructions, CACI, No. 303 (2020).

_____

[4] These alleged breaches include: (1) failing to satisfy the Acceptance Criteria per Section 5.2; (2) failing to provide quality code pursuant to Section 10.2(c); (3) breaching the field of use provision contained in Section 2.4; and (4) breaching the confidentiality provision in Section 13.  *See* D.I. 47.

[5] These alleged breaches include: (1) failing to meet promotional obligations under Section 2.4; (2) failing to make technical and content development contributions pursuant to Sections 2.1 and 2.5; (3) breaching the confidentiality provision in Section 10.3; and (4) violating License Agreement attached as Exhibit A to the Services Agreement.  *See* D.I. 47.

47001860.6

### c. Breach Of Implied Covenant Of Good Faith And Fair Dealing of the Development Agreement

*Elements*

PMI claims that WTRI violated the duty to act fairly and in good faith as to the Development Agreement. To establish this claim, PMI must prove:

1. That PMI and WTRI entered into the Development Agreement;

2. That PMI did all, or substantially all, of the significant things that the Development Agreement required it to do or that PMI was excused from having to do those things;

3. That WTRI's conduct prevented PMI from receiving the benefits under the contract;

4. That by doing so, WTRI did not act fairly and in good faith; and

5. That PMI was harmed by WTRI's conduct.

*See, e.g.*, Judicial Council of California Civil Jury Instructions, CACI, No. 325 (2020).

### d. Breach Of Implied Covenant Of Good Faith And Fair Dealing of the Services Agreement

*Elements*

PMI claims that WTRI violated the duty to act fairly and in good faith as to the Services Agreement. To establish this claim, PMI must prove:

1. That PMI and WTRI entered into the Services Agreement;

2. That PMI did all, or substantially all, of the significant things that the Services Agreement required it to do or that PMI was excused from having to do those things;

3. That WTRI's conduct prevented PMI from receiving the benefits under the contract;

4. That by doing so, WTRI did not act fairly and in good faith; and

5. That PMI was harmed by WTRI's conduct.

8                                                    18cv1927

47001860.6

1  *See, e.g.*, Judicial Council of California Civil Jury Instructions, CACI, No. 325 (2020).

2       **e.**     **Theft Of Trade Secrets (18 U.S.C. § 1836, et seq.).**

3  <u>Elements</u>

4       PMI claims that WTRI has misappropriated a trade secret under Federal law.  To

5  succeed on this claim, PMI must prove:

6       1.  That PMI owned its trade secrets related to its Flow activity templates and

7           corresponding spreadsheet designs (the "PMI Technology") that is subject to

8           the misappropriation claim;

9       2.  That the PMI Technology was trade secret at the time of misappropriation;

10       3.  That WTRI improperly acquired, used, or disclosed the trade secrets;

11       4.  That the PMI Technology is related to a product or service used in, or intended

12           for use in, interstate or foreign commerce;

13       5.  That PMI was harmed or WTRI was unjustly enriched; and

14       6.  That WTRI's acquisition, use, or disclosure was a substantial factor in causing

15           PMI's harm or WTRI to be unjustly enriched.

16  *See, e.g.*, 18 U.S.C. § 1836(b)(1); *Attia v. Google, LLC*, 983 F.3d 420 (9th Cir. 2020);

17  Judicial Council of California Civil Jury Instructions, CACI, No. 4401 (2020); *Alta*

18  *Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (noting that

19  the elements of misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836,

20  et seq., are similar to those under the California Uniform Trade Secrets Act, Cal. Civ.

21  Code § 3426, et seq.).

22       **f.**     **Misappropriation Of Trade Secrets (Cal. Civ. Code § 3426,**

23            **et seq.).**

24  <u>Elements</u>

25       PMI claims that WTRI has misappropriated a trade secret under state law.  To

26  succeed on this claim, PMI must prove:

27       1.  That PMI owned its related to its Flow activity templates and corresponding

28                              9                      18cv1927

spreadsheet designs (the "PMI Technology") that is subject to the
misappropriation claim that is subject to the misappropriation claim;

2. That the PMI Technology was trade secret at the time of misappropriation;

3. That WTRI improperly acquired, used, or disclosed the trade secrets;

4. That PMI was harmed or WTRI was unjustly enriched; and

5. That WTRI's acquisition, use, or disclosure was a substantial factor in causing
   PMI's harm or WTRI to be unjustly enriched.

*See, e.g.*, Judicial Council of California Civil Jury Instructions, CACI, No. 4401 (2020).

**4)   WTRI's Defenses to PMI's Causes of Action**

Plaintiff has asserted the following defenses to PMI's counterclaims:

a.   False Claims (Second Affirmative Defense)

b.   No Damage or Injury (Third Affirmative Defense)

c.   Offset and/or Setoff (Fourth Affirmative Defense)

d.   Unclean Hands (Fifth Affirmative Defense)

e.   In Pari Delicto (Sixth Affirmative Defense)

f.   Unjust Enrichment (Seventh Affirmative Defense)

g.   Consent (Eighth Affirmative Defense)

h.   Waiver (Ninth Affirmative Defense)

i.   Ratification (Tenth Affirmative Defense)

j.   Estoppel (Eleventh Affirmative Defense)

k.   Adequate Remedy at Law (Twelfth Affirmative Defense)

l.   Failure to Mitigate Damages (Thirteenth Affirmative Defense)

m.   Failure of Condition Precedent (Fourteenth Affirmative Defense)

n.   Excuse for Non-Performance (Fifteenth Affirmative Defense)

o.   Frustration of Purpose (Sixteenth Affirmative Defense)

p.   Novation (Seventeenth Affirmative Defense)

q.   Laches (Eighteenth Affirmative Defense)

47001860.6

1        r.    No Breach by WTRI (Nineteenth Affirmative Defense)

2        s.    Breach of Contract by PMI (Twentieth Affirmative Defense)

3        t.    Substantial Performance (Twenty-first Affirmative Defense)

4        u.    The Information Is Not A Trade Secret (Twenty-second Affirmative

5            Defense)

6        v.    Independently Developed (Twenty-third Affirmative Defense)

7        w.    Readily Ascertainable (Twenty-fourth Affirmative Defense)

8        x.    PMI Failed To Take Prompt Action (Twenty-fifth Affirmative

9            Defense)

10       y.    Lack Of Improper Acquisition, Disclosure or Use (Twenty-sixth

11           Affirmative Defense)

12       z.    PMI Has Not Sufficiently Described Its Purported Trade Secrets

13           (Twenty-seventh Affirmative Defense)

14       aa.    Statute Of Limitations (Twenty-eighth Affirmative Defense)

15   **III.**    **Witnesses**

16       **a.**    **Witnesses counsel expects to call at trial**

17           **<u>LAY WITNESSES WTRI EXPECTS TO CALL</u>**

18   1.    Sterling Chamberlain    Mr. Chamberlain is WTRI's CTO and is

19       expected to testify regarding WTRI's

20       business, the relationship between PMI

21       and WTRI, including, but not limited to

22       work performed under the parties'

23       agreements, and development of the Maxx

24       virtual environment.  Mr. Chamberlain

25       may also testify regarding his knowledge

26       (or lack thereof) of certain PMI flows

27       alleged to be PMI's trade secrets.  Mr.

28           11    18cv1927

47001860.6

Chamberlain may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

2.   Lia DiBello

Dr. DiBello is WTRI's CEO and is expected to testify regarding WTRI's business, her research on cognitive science and accelerated learning (which are the cornerstones of the technology involved in this case), WTRI's customers, lost business, WTRI's NSF grants, the relationship between PMI and WTRI, including but not limited to the negotiations she personally conducted relating to the various agreements and work performed under the parties' agreements, WTRI's relationship with CVP, and the development and functionality of the Maxx virtual environment. Dr. DiBello may also testify regarding her knowledge (or lack thereof) of certain PMI flows alleged to be PMI's trade secrets. Dr. DiBello may also testify as to those matters for which she was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

18cv1927

47001860.6

3.    David Lehmann

Dr. Lehmann is WTRI's CFO and he is expected to testify regarding WTRI's business, financial projections, and the relationship between WTRI and PMI, including, but not limited to, work performed under the parties' agreements.

4.    Chris Mancus

Mr. Mancus, a PMI employee, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to, collection of source code, PMI's lack of knowledge regarding a testing tool called SonarQube that PMI appears to rely on for its allegation that WTRI's code was of "poor quality", which parties were responsible for which portions of the development, and those contractual obligations PMI failed to meet.   Mr. Mancus may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

5.    Whitney Missildine

Dr. Missildine, a former WTRI employee who worked on the PMI/WTRI collaboration, is expected to testify regarding his employment at WTRI, his personal use and knowledge of flows prior

13                                        18cv1927

47001860.6

to PMI and WTRI's collaboration, his recommendation to use Lucid Charts (a software tool PMI alleges was part of the creation of the trade secrets), and work performed under the Development Agreement. Dr. Missildine may also testify regarding his knowledge (or lack thereof) of certain PMI flows alleged to be PMI's trade secrets.

6.   Thom Rossi

Mr. Rossi, a PMI employee, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to, work performed under the parties' respective agreements.  Mr. Rossi will also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

7.   Ioana Sfetcu

Ms. Sfetcu, a PMI employee, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to, PMI's expenses for the projects resulting from the parties' agreements.  Ms. Sfetcu may also testify as to those matters for which she was designated a corporate designee under Fed.

14                                      18cv1927

47001860.6

R. Civ. P. 30(b)(6).

8.    Shelby Smith                    Dr. Smith, a former WTRI employee who
                                      worked on the PMI/WTRI collaboration, is
                                      expected to testify regarding her
                                      employment at WTRI and her work
                                      performed under the parties' agreements.
                                      Dr. Smith may also testify regarding her
                                      knowledge (or lack thereof) of certain PMI
                                      flows alleged to be PMI's trade secrets.

9.    Joshua West                     Mr. West, a former WTRI contractor who
                                      worked on the PMI/WTRI collaboration, is
                                      expected to testify regarding his
                                      employment with WTRI, work performed
                                      for WTRI as a contractor, development of
                                      the product as part of the parties' respective
                                      agreements, including, but not limited to,
                                      operation of the source code. Mr. West will
                                      also testify as to those matters for which he
                                      was designated a corporate designee under
                                      Fed. R. Civ. P. 30(b)(6).[6]

---

[6] WTRI reserves the right to amend its witness categorizations to the extent they are impacted by: (1) the Court's rulings on pending *Daubert* motions; (2) any future Court rulings (including on motions *in limine*, exhibit objections, or deposition designation objections); (3) any instructions or guidance from the Court regarding whether witnesses can appear remotely; and/or (4) the witnesses PMI calls.

15                                18cv1927

## LAY WITNESSES PMI EXPECTS TO CALL AT TRIAL

1.  Joseph Cahill

    PMI's Chief Customer Officer.  Mr. Cahill is expected to testify regarding PMI's organizational and decision making structure, the nature of PMI's business, PMI's business strategy regarding the PAL project, PMI's expectations for the PAL project, and termination of the PAL project and the parties' agreements.[7]

2.  Victor Carter-Bey

    Former Director of Certification at PMI. Mr. Carter-Bey is expected to testify regarding the negotiation of the parties' agreements, the parties' communications, PMI's commitment to the PAL project and performance under the parties' agreements, and the termination of the parties' agreements.

3.  Sterling Chamberlain

    WTRI's Vice President and Senior Technologist.   Mr. Chamberlain is

---

[7] WTRI objects to Mr. Cahill's designation as a witness until PMI makes him available for deposition per the agreement of the parties.

PMI notes in response that it already stated it would make Mr. Cahill available for deposition at a mutually agreeable date and time which moots WTRI's objection. Moreover, WTRI obviously knew of Mr. Cahill's existence long before now given that it noticed his deposition, the parties agreed to a September 29, 2020 date for the deposition, and WTRI opted to take the deposition off calendar the day before it was to occur. Accordingly, there is no legitimate objection to PMI's inclusion of Mr. Cahill though PMI will provide briefing on the issue if the Court requests it.

47001860.6

expected to testify regarding the parties' relationship, the parties' work on the PAL project, and PMI's commitment to the PAL project. Mr. Chamberlain may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

4.   Lia DiBello

WTRI's President and Director of Research. Dr. DiBello is expected to testify regarding negotiation of the parties' agreements, the parties' rights and obligations under those agreements, the parties' relationship, the parties' work performed on the PAL project, the development of the PAL project, and PMI's commitment to the PAL project. Dr. DiBello may also testify as to those matters for which she was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

5.   David Garrett

PMI's Chief Strategy & Growth Officer. Mr. Garrett is expected to testify regarding PMI's business strategy and model, the marketability of the PAL product, and PMI's decision not to

17                    18cv1927

commercialize the PAL product.[8]

6. Karen Holloway

Lead Instructional Designer during the PAL project. Ms. Holloway is expected to testify regarding the parties' work performed on the PAL project, PMI's relationship with Czarina Games, PMI's commitment to the PAL project, and the development and misappropriation of PMI's trade secrets. Ms. Holloway may also testify as to those matters for which she was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

7. Misael (Mitch) Labrador

Vice President of Software Development at Creative Veteran Productions (CVP). Mr. Labrador is expected to testify regarding CVP's relationship with the parties, CVP's role in the PAL project, CVP's work performed on the PAL project, the software and source code

---

[8] WTRI objects to Mr. Garrett's designation as a witness and intends to raise the issue at the pretrial conference. Mr. Garrett's designation is also addressed in WTRI's motions *in limine*.

PMI responds that it will oppose WTRI's motion *in limine*. Moreover, PMI disclosed Garrett as a witness on November 5, 2021. See D.I. 227-1. WTRI slept on this purported issue until its April 12, 2022 motion *in limine* – over five months later. See D.I. 250-1. WTRI could have sought leave to depose Garrett during these five months or taken any other affirmative action – but WTRI did not. WTRI should not be rewarded for its delay.

18                                                      18cv1927

47001860.6

development of the PAL project, and CVP's knowledge of PMI's trade secrets.

8.   David Lehmann

WTRI's Vice President and Chief Operating Officer.  Dr. Lehmann is expected to testify regarding the parties' agreements, the parties' rights and obligations under those agreements, the parties' relationship, the parties' work performed on the PAL project, and PMI's commitment to the PAL project.

9.   Christopher Mancus

System Architect at PMI during the PAL project and technical lead on the PAL project.  Mr. Mancus is expected to testify regarding software and source code development of the PAL product, the roles of Neudesic and CVP in software development of the PAL product, the parties' work performed on the PAL project, and PMI's commitment to the PAL project.  Mr. Mancus may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

10.   Timothy Marshall

President and Founder of Neudesic.  Mr. Marshall is expected to testify regarding

19                                18cv1927

| | | |
|---|---|---|
| | | Neudesic's relationship with the parties, Neudesic's role in and work on the PAL project, the software and source code development of the PAL project, and Neudesic's knowledge of PMI's trade secrets. |
| 11. | Betsy Redden | Manager of Online Learning at PMI during the PAL project.  Ms. Redden is expected to testify regarding the parties' agreements, PAL project deadlines and progress, the parties' work performed on the PAL project, PMI's relationship with Czarina Games, the development and misappropriation of PMI's trade secrets, and PMI's commitment to the PAL project.  Ms. Redden may also testify as to those matters for which she was designated a corporate designee under Fed. R. Civ. P. 30(b)(6). |
| 12. | Alicia Sanchez | CEO of Czarina Games and serious games designer.  Dr. Sanchez is expected to testify regarding Czarina Games's relationship with the parties, Czarina Games's role on the PAL project, Czarina Games's work completed on the PAL project, the software development |

20                                                    18cv1927

of the PAL project, and Czarina Games's knowledge of PMI's trade secrets.

13.   Jesse Sardina                PMI's Project Manager for the PAL project.  Mr. Sardina is expected to testify regarding the parties' agreements, the division of the parties' responsibilities under the agreements, PMI's relationship with Neudesic, PMI's relationship with CVP, communications between the parties, PMI's work performed on the PAL project, the development and confidentiality of PMI's trade secrets, PMI's investment in the PAL project, and PMI's commitment to the PAL project. Mr. Sardina may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).[9]

b.   **Expert Witnesses counsel expect to call at trial**

**EXPERT WITNESSES WTRI EXPECTS TO CALL AT TRIAL**

**Ryan LaMotta**              Mr. LaMotta is expected to provide testimony as to

ASQ Consulting Group          appropriate damages and/or remedies due WTRI as

_____

[9] PMI reserves the right to amend its witness categorizations to the extent they are impacted by: (1) the Court's rulings on pending *Daubert* motions; (2) any future Court rulings (including on motions *in limine*, exhibit objections, or deposition designation objections); (3) any instructions or guidance from the Court regarding whether witnesses can appear remotely; and/or (4) the witnesses WTRI calls during its case-in-chief.

47001860.6

720 Rusk, Suite 425

Houston, TX 77002

281-728-8651

a result of the alleged wrongful conduct as well as to assess and comment on the reports of PMI's experts, Ms. Irwin, Mr. Fincher, and Dr. Ferri, relating to PMI's claims for damages. Mr. LaMotta will testify in accordance with and consistent with his expert reports produced previously in this matter and his deposition testimony.

**Dr. Mahesh Raisinghani**

Texas Woman's University

304 Administration Dr.

Denton, TX 76204

940-898-2000

Dr. Raisinghani will testify in accordance with and consistent with his expert reports produced previously in this matter and his deposition testimony, including, but not limited to the scope of project, program, and portfolio management, as compared to product management, whether PMI and WTRI used professional project management techniques for the project under the parties' respective agreements, and the Maxx game and what skills it teaches.

**EXPERT WITNESSES PMI EXPECTS TO CALL AT TRIAL**

**Clark Aldrich**

Clark Aldrich Designs LLC

265 Warpas Road

Madison, CT 06443

(203) 245-3743

Expert in developing virtual educational simulations and serious games. Mr. Aldrich is expected to testify: (1) in response to WTRI's analysis of the scope of the field of use provision in the parties' agreements;[10] and (2) in support of

---

[10] WTRI objects to Mr. Clark's designation as a rebuttal witness to Dr. Raisinghani's field of use opinions. PMI bears the burden to show that WTRI breached the field of use provision and therefore was obligated to provide an opening report on the subject matter.

18cv1927

47001860.6

| | |
|---|---|
| | PMI's analysis of the scope of the project and product management industries and the field of use of the Maxx simulation. |
| **Dr. Mickey Ferri**<br>Insight Economics<br>4275 Executive Sq., Suite 200<br>San Diego, CA 92037<br>(858) 373-9901 | Expert in applied business economics with extensive experience in economic analysis, business strategy, consulting, and data analysis. Dr. Ferri is expected to testify regarding the marketability of the PAL product and the reasonableness of PMI's decision not to commercialize the PAL product. |
| **Richard Fincher**<br>Gerson Lehrman Group, Inc.<br>60 E. 42nd St., 3rd Floor<br>New York, NY 10165<br>(212) 984-8500 | Global business and engineering executive with expertise in strategic planning, budget development, marketing, and operations.  Mr. Fincher is expected to testify regarding the practices of the project management industry, professional project management methodologies and processes, and the reasonableness of PMI's business approach to the PAL project. |
| **Carlyn Irwin**<br>Cornerstone Research<br>555 W. 5th St., 38th Flr.<br>Los Angeles, CA 90013<br>(213) 553-2533 | Expert in analyzing economic, financial, causation, and accounting issues in context of damages claims, valuing businesses, and conducting financial forensic analysis in commercial disputes.  Ms. Irwin is expected to testify: (1) in response to WTRI's damages |

---

WTRI intends to raise this issue at the pretrial conference and the issue is part of WTRI's *Daubert* briefing.

47001860.6

| | | |
|---|---|---|
| | | analysis; and (2) in support of PMI's damages claim and offset defense. |
| **Jeremiah Stepan** | | Expert in electrical and electronic systems including software design. Mr. Stepan is expected to testify regarding the efficacy of the software developed for the PAL project, source code for the PAL project, and the reasonableness of PMI's decision to terminate the development of the software. |
| Exponent | | |
| 5401 McConnell Avenue | | |
| Los Angeles, CA 90066 | | |
| (310) 754-2743 | | |
| **Dr. Ricardo Valerdi** | | Expert in industrial and systems engineering. Dr. Valerdi is expected to testify regarding PMI's methods of developing its trade secrets, the identification of PMI's trade secrets, and WTRI's misappropriation of PMI's trade secrets. |
| University of Arizona | | |
| 1127 E. James E. Rogers Way | | |
| Tucson, AZ 85721 | | |
| (520) 621-6561 | | |

c.    **Additional Witnesses, including experts, counsel do not expect to call but reserve the right to call**

**ADDITIONAL WITNESSES WTRI RESERVES THE RIGHT TO CALL**

| | | |
|---|---|---|
| 1.    Robert Burke | | Mr. Burke, a PMI employee, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to, PMI's document collections efforts, PMI's document retention policies, and to what extent those were followed in this case. |

18cv1927

47001860.6

Mr. Burke may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

2.    Victor Carter-Bey

Dr. Carter-Bey, a former PMI executive, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to his employment with PMI, negotiations relating to the parties' agreements, work performed under the parties' respective agreement, and an offer to sell the product to WTRI when the project was winding down.

3.    Nick Ferrara

Mr. Ferrara will testify in accordance with and consistent with his expert reports produced previously in this matter and his deposition testimony, including, but not limited to his analysis of the source code via visual inspection and through the use of tools, and whether certain acceptance criteria were met and if not, why not. Mr. Ferrara's testimony is expected to rebut PMI's allegations regarding WTRI's code quality and PMI's allegation that certain acceptance

25                                        18cv1927

criteria were not met.

4.   Dr. Philip Greenspun

Dr. Greenspun will testify in accordance with and consistent with his expert reports produced previously in this matter and his deposition testimony, including, but not limited to his analysis of the source code via visual inspection, scalability of WTRI's code, and whether certain acceptance criteria were met and if not, why not.   Dr. Greenspun's testimony is expected to rebut PMI's allegations regarding whether certain acceptance criteria were met.

5.   Karen Holloway

Ms. Holloway, a PMI employee who worked on the PMI/WTRI collaboration, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to PMI's alleged trade secrets, including their development, value (or lack thereof), damages (or lack thereof), marking (or lack thereof), WTRI's access (or lack thereof) to the alleged trade secrets, and alleged misappropriation, as well as the development of the PAL

26                                                   18cv1927

Formatted: Right:  0.04", No widow/orphan control

project, including software development, content creation, subject matter experts, individual roles and responsibilities, and contributions and interactions between individuals involved with the project. Ms. Holloway may also testify as to those matters for which she was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

6.    Mitch Labrador

Mr. Labrador, the CEO of CVP (a vendor associated with the PMI/WTRI collaboration) is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to work performed by CVP as part of the parties' respective agreements, CVP's prior work with WTRI, and his understanding of any alleged benefits to PMI's alleged trade secrets.

7.    Timothy Marshall

Mr. Marshall, an employee of Neudesic (a third-party vendor associated with the PMI/WTRI collaboration), is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to project

27                                          18cv1927

47001860.6

management, risk analysis, and other contributions by Mr. Marshall and Neudesic to the PAL project, interactions with others involved with the project, industry terms and usage, industry customs and norms.

8.    Betsy Redden

Ms. Redden, a PMI employee, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to her work on the projects resulting from the parties' respective agreements.    Ms. Redden may also testify as to those matters for which she was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

9.    Alicia Sanchez

Dr. Sanchez is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to validation and other contributions by Dr. Sanchez and Czarina Games to the PAL project, interactions with others involved with the project, identification of risk, and PMI's risk mitigation (if any).

28

18cv1927

10.   Jesse Sardina

Mr. Sardina, a PMI employee and the PMI project manager for the PMI/WTRI collaboration, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to PMI's verified interrogatories, his work on the projects resulting from the parties' respective agreements, and how PMI's alleged damages are related to WTRI's alleged breaches.  Mr. Sardina may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

11.   Dr. Rajeev Surati

Dr. Surati will testify in accordance with and consistent with his expert report produced previously in this matter and his deposition testimony, including, but not limited to, his analysis of the Maxx virtual environment, whether PMI's alleged trade secrets qualify as trade secrets, and whether WTRI misappropriated any alleged trade secret. Dr. Surati's testimony is expected to rebut PMI's allegations that WTRI misappropriated PMI's alleged trade secrets.

29                                         18cv1927

47001860.6

12. Brian Weiss

Mr. Weiss, a former PMI employee, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to the negotiations that resulted in the agreements and work performed under the parties respective agreements. Mr. Weiss may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

**ADDITIONAL WITNESSES PMI RESERVES THE RIGHT TO CALL**

1. Murat Bicak

Former Chief Strategy & Growth Officer at PMI. Mr. Bicak is expected to testify regarding the parties' relationship, the marketability of the PMI Advanced Learning ("PAL") software, PMI's decision not to commercialize the PAL product, and PMI's good faith commitment to the PAL project.[11]

---

[11] WTRI objects to Mr. Bicak's designation as a witness until PMI makes him available for deposition in the United States per the agreement of the parties.

PMI responds by noting at the outset that WTRI's characterization of the parties' earlier agreement regarding Mr. Bicak is incorrect. PMI never agreed to make Mr. Bicak available for deposition "at least 21 days prior to the start of trial" or "in the United States." Instead, PMI agreed to make Mr. Bicak available for deposition prior to trial if it intends to call him to testify in connection with WTRI's earlier failed attempts at serving a deposition subpoena. Mr. Bicak is a former employee of PMI who PMI understands does not generally reside in the United States. PMI stated in this order that he "may" be called to testify. PMI already agreed to make Mr. Bicak available for deposition at a mutually agreeable date and time if he "will" testify which should moot any WTRI

30                                      18cv1927

47001860.6

2.  Whitney Missildine

WTRI's Lead Designer for the PAL project.  Dr Missildine is expected to testify regarding the parties' work performed on the PAL project, the development of PMI's trade secrets, and PMI's commitment to the PAL project.

3.  Thom Rossi

Manager of Information Technology for Advanced Learning while at PMI.  Mr. Rossi is expected to testify regarding the parties' responsibilities for technical aspects of the PAL project, the parties' work performed on the PAL project, the development of the software and source code for the PAL project, Neudesic and CVP's roles on the PAL project, and PMI's commitment to the PAL project.

4.  Ioana Sfetcu

4.  ~~Ioana Sfetcu~~

Senior Accountant at PMI.  Ms. Sfetcu is ~~Senior Accountant at PMI.  Ms. Sfetcu is~~ expected to testify regarding the preparation and ~~expected to testify regarding the~~ contents of PMI's expense records relating to ~~preparation and contents of PMI's~~ the PAL project.  Ms. Sfetcu may also testify as ~~expense records relating to the PAL~~ to those matters for which she was designated a ~~project.  Ms. Sfetcu may also testify as to~~ corporate designee under Fed. R. Civ. P. ~~those matters for which she was~~ 30(b)(6). ~~designated a corporate designee under Fed. R. Civ. P. 30(b)(6).~~

_____

objection.  Additionally, WTRI has not provided any authority (despite PMI's request for authority) showing that PMI has any obligation to do more than it already said it would with respect to making Mr. Bicak available for deposition.  PMI will provide briefing on this issue at the Court's request.

31                                                 18cv1927

47001860.6

5. ____

5. 6.   Shelby Smith          Product Engineer at WTRI.  Dr. Smith is expected to testify regarding the parties' work performed on the PAL project, the development of PMI's trade secrets, and PMI's commitment to the PAL project.

6. 7.   Steven Townsend       Director of Network Programs at PMI during the PAL project.  Mr. Townsend is expected to testify regarding PMI's business strategy, the purpose of the PAL project, the parties' negotiations of the agreements, the parties' communications, and PMI's expectations for the PAL project.

7. 8.   Brian Weiss           Former Vice President of Practitioner Markets at PMI.  Mr. Weiss is expected to testify regarding the negotiation and execution of the parties' agreements, the terms of the parties' agreements, the parties' relationship, communications between the parties, PMI's investment in the PAL project, termination of the parties' agreements, the parties' work performed on the PAL project, and PMI's commitment to the PAL project.

8. 9.   Joshua West           Software Engineer at WTRI during the PAL project. Mr. West is expected to testify regarding

32                                    18cv1927

Formatted: Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.06" + Indent at:  0.06"

PMI's work on the PAL project, the software development of the PAL product, and PMI's commitment to the PAL project.

## IV. Exhibits

### a. Exhibits that counsel actually expect to offer at trial

WTRI's list of exhibits it expects to offer and may offer at trial are attached hereto as **Exhibit A**, which includes PMI's objections.  WTRI further reserves the right to rely upon any exhibit identified by PMI in Exhibit B.

PMI's list of exhibits it expects to offer and may offer at trial are attached hereto as **Exhibit B**, which includes WTRI's objections.  PMI further reserves the right to rely upon any exhibit identified by PMI in Exhibit A.

## V. Statement of Facts to Which the Parties Stipulate

1.  Plaintiff Workplace Technologies Research, Inc. ("WTRI") is a Delaware corporation with its principal place of business in San Diego, California.

2.  Defendant Project Management Institute, Inc. ("PMI") is a Pennsylvania corporation organized as a not-for-profit membership association, with its principal place of business in Newtown Square, Pennsylvania.

3.  In late 2013, WTRI approached PMI, per the National Science Foundation's ("NSF") recommendation, to request a letter of support in connection with a grant WTRI intended to seek from the NSF.

4.  In early 2014, PMI and WTRI began discussions about a potential commercial partnership to co-develop an immersive accelerated learning technology platform for project management professionals.

47001860.6

5.     The parties entered two agreements relating to the co-development of an immersive accelerated learning technology platform for project management professionals.

6.     The parties' project came to be known as the Project Management Institute Advanced Learning ("PAL") project.

7.     The first agreement is called the "Software Technology Development And Purchase Agreement" (which the parties often refer to as the "Development Agreement") and has an effective date of September 8, 2015.

8.     The Development Agreement contemplated a phased software build with three phases named Alpha, Beta, and Charlie.

9.     The parties amended the Development Agreement through the "First Amendment to Software Technology Development and Purchase Agreement" (sometimes referred to as the "First Amendment to the Development Agreement").   The First Amendment to the Development Agreement has an effective date of November 30, 2016.

10.    The First Amendment to the Software Technology Development Agreement provided that the parties would enter into a Services Agreement (with PMI owing no additional payments under the Development Agreement) if PMI rejected the fifth version "Alpha Software" and retained the rejected version.

11.    On December 2, 2016, Dr. Victor Carter-Bey (with~~a~~ PMI ~~employee at the time~~) sent an email to Dr. Lia DiBello (with~~a~~ WTRI ~~principal at the time~~) stating PMI's election to reject the fifth version "Alpha Software" and retain the rejected software.

12.    The second agreement is called the "Services Agreement" and has an effective date of December 15, 2016.

13.    PMI and WTRI jointly collaborated on two software programs under the Development Agreement and Services Agreement: (a) Proteum ERP rehearsal, which began development under the Development Agreement; and (b) IceBochz rehearsal, which began development under the Services Agreement.

47001860.6

14.     WTRI sent PMI a letter dated June 18, 2018 containing a notice of termination of the Development Agreement and claiming alleged damages.

15.     WTRI developed the Maxx Virtual World Agile Leadership Rehearsal. WTRI advertises Maxx Virtual World Agile Leadership Rehearsal as one of its products.

47001860.6

## VI.    Party Positions

The parties are unable to reach agreement as to certain issues set forth in this section. Accordingly, each party has set forth its own position with the understanding that joint submission of this document does not reflect any endorsement by either party as to the other party's position.

### a.    WTRI's Position

During the December 17, 2021, hearing, Judge Miller expressly acknowledged that the Court desired the parties to include a separate section in the Joint Proposed Final Pretrial Conference Order for admissions in the pleadings that the parties did not jointly agree to include in the Statement of Facts to Which the Parties Stipulate section of the document. See December 17, 2021 hearing transcript at 18:6-18. Accordingly, WTRI presents the following admissions from PMI for which no agreement was reached for inclusion in the stipulated facts section. Citations are provided for the convenience of the Court and the parties.

36                                    18cv1927

| Item | PMI's Judicial Admission | Source | PMI's Response |
|---|---|---|---|
| 1 | PMI discussed with WTRI an interest in expanding PMI's product offerings. | D.I. 46, ¶ 9 | • Whether PMI discussed an interest in expanding its product offerings is irrelevant to the issues before the jury.<br>• This item is taken out of context as PMI denied the remaining allegations associated with this item.  Namely, PMI denied WTRI's allegation that "PMI's products were not as attractive as they once were in the past and PMI believed that its involvement with WTRI's proposal to the NSF would enhance PMI's product offerings."  *See* D.I. 37, ¶ 9; D.I. 46, ¶ 9.  WTRI's use of this item to prove its allegations in Paragraph 9 of the Third Amended Complaint is disingenuous given PMI's denial of the associated allegations.<br>• This item may be confusing to the jury to the extent that it is vague and ambiguous as to "expanding PMI's product offerings" and the jury may be presented with the complete context during PMI's case. |

37

18cv1927

| 2 | WTRI provided demonstrations of its technology to PMI employees in late 2014 and early 2015. | D.I. 46, ¶ 10 | • Whether WTRI demonstrated the technology to PMI is irrelevant to the issues before the jury.<br>• This item is taken out of context as PMI denied the remaining allegations associated with this item. Namely, PMI denied WTRI's allegations in the same paragraph that "PMI offered to co-develop and integrate WTRI's software into PMI's enterprise system ('Enterprise Architecture') for project management training and education." *See* D.I. 37, ¶ 10; D.I. 46, ¶ 10. WTRI's use of this item to prove its allegations in Paragraph 10 of the Third Amended Complaint is disingenuous given PMI's denial of the associated allegations.<br>• This item is confusing to the extent that it is vague and ambiguous as to what "technology" was demonstrated and to which PMI employees. |

47001860.6

| 3 | WTRI showed PMI its calculations and projections seeking to demonstrate that WTRI's technology could produce hundreds of millions of dollars in revenue for PMI. | D.I. 46, ¶ 11 | • This item is taken out of context as PMI denied the remaining allegations associated with this item.  PMI has always hotly disputed the accuracy of these projections (even at the time WTRI presented them).  This selection out of context is confusing and prejudicial because it ignores PMI's adamant disagreement.  *See* D.I. 46, ¶ 11. |
| 4 | Under the terms of the Development Agreement, PMI was required to make an upfront payment of $1,000,000 to WTRI toward purchase of the technology to be developed and ultimately made this payment to WTRI. | D.I. 46, ¶ 21 | • This item is improper, cumulative, and confusing.  The parties already stipulated to the same basic fact. *See, e.g.,* Proposed Stipulations No. 13. |
| 5 | PMI made an initial payment of $1,000,000 to WTRI toward the purchase of the software to be developed in accordance with terms of the Development Agreement. | D.I. 46, ¶ 17 | • This item is improper, cumulative, and confusing.  The parties already stipulated to the same basic fact. *See, e.g.,* Proposed Stipulations No. 13. Moreover, this item is cumulative of Item No. 5 above. |

39

18cv1927

| 6 | A Software Development Plan ("Development Plan") was labeled as Exhibit B and attached as an addendum to the Development Agreement. | D.I. 46, ¶ 27 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 11.<br>• This item is not properly contextualized with references to the other exhibits to the Development Agreement. |
| 7 | The Development Agreement incorporated the Software Development Plan. | D.I. 46, ¶ 29; *see also* D.I. 215 at 13 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 11.<br>• This item is also not properly contextualized because PMI disputes to what extent the Software Development Plan dictates the parties' obligations. |

40                                          18cv1927

| | | | |
|---|---|---|---|
| 8 | WTRI pitched the software to be developed as having multi-player and single player capabilities. | D.I. 46, ¶ 71 | • Whether WTRI pitched the software to include multi-player capabilities is irrelevant to the issues before the jury.<br>• This item is not properly contextualized.  First, this item does not explain what "multi-player and single player capabilities" are.  Then, this item does not explain the significance of this fact.  Finally, PMI has always disputed which software was more valuable.  Namely, PMI denied WTRI's allegations in the same paragraph that "PMI had begun to focus almost exclusively on the development of the single-player mode for the software – doing little to advance the far more valuable multi-player environment."  *See* D.I. 37, ¶ 71; D.I. 46, ¶ 71.  WTRI's use of this item to prove its allegations in Paragraph 71 of the Third Amended Complaint is disingenuous given PMI's denial of the associated allegations. |

41                                           18cv1927

| | | | |
|---|---|---|---|
| 9 | The software developed pursuant to the Development Agreement was to be developed in accordance with acceptance criteria mutually agreed to by the parties (the "Acceptance Criteria"). | D.I. 46, ¶ 30 | • This item is improper, cumulative, and confusing.  The parties already stipulated to the same basic fact. *See, e.g.,* Proposed Stipulations Nos. 11, 14. |
| 10 | The Acceptance Criteria mutually agreed to by the parties were incorporated into the Development Agreement. | D.I. 47, ¶ 19 | • This item is improper, cumulative, and confusing.  The parties already stipulated to the same basic fact. *See, e.g.,* Proposed Stipulations Nos. 11, 14. |

47001860.6

| 11 | PMI's employees attended a meeting at WTRI's San Diego office at or around December 14, 2015. | D.I. 46, ¶ 46 | • Whether PMI and WTRI met in San Diego around December 14, 2015 is irrelevant to the issues before the jury.<br>• This item is taken out of context as PMI denied the remaining allegations associated with this item. Namely, PMI denied WTRI's allegations in the next paragraph that "At this meeting, Ms. Holloway was pressed on the PMI content development team's failure to provide content, and she had an emotional episode and confessed that her team could not perform PMI's obligations under the Development Agreement with the resources provided by PMI." *See* D.I. 37, ¶ 47; D.I. 46, ¶ 47. WTRI's use of this item to prove its allegations in Paragraph 47 of the Third Amended Complaint is disingenuous given PMI's denial of the associated allegations.<br>• This item may be confusing to the jury to the extent that it is vague and ambiguous as to "PMI's employees" and the jury may be presented with the complete context during PMI's case. |
| 12 | PMI hired Neudesic, LLC ("Neudesic"). | D.I. 46, ¶ 52 | • This item is improper, cumulative, and confusing. The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 25. |

| 13 | PMI and WTRI executed the First Amendment to Software Technology Development and Purchase Agreement on or about November 30, 2016 (the "Amended Development Agreement"). | D.I. 46, ¶ 79 | • This item is improper, cumulative, and confusing.  The parties already stipulated to the same basic fact. *See, e.g.,* Proposed Stipulations No. 4. |
|---|---|---|---|
| 14 | WTRI introduced PMI to Creative Veterans Production ("CVP"). | D.I. 46, ¶ 88 | • This item is improper, cumulative, and confusing.  The parties already stipulated to the same basic fact. *See, e.g.,* Proposed Stipulations No. 25. |
| 15 | PMI discussed with Dr. DiBello the development of an Agile product and entering into a Services Agreement with WTRI. | D.I. 46, ¶ 102 | • This item is improper, cumulative, and confusing.  The parties already stipulated to the same basic fact. *See, e.g.,* Proposed Stipulations No. 5.<br>• Whether PMI discussed entering into the Services Agreement is irrelevant to the issues before the jury.<br>• Moreover, this item is an example of an item that is cumulative and otherwise confusing.  This item proposes an obvious fact to the extent the parties executed a Services Agreement and stipulated to the agreement. |

44

18cv1927

| 17 | PMI and WTRI both executed the Services Agreement. | D.I. 46, ¶ 107 | • This item is improper, cumulative, and confusing.  The parties already stipulated to the same basic fact. *See, e.g.,* Proposed Stipulations No. 5. |
| 18 | The parties contemporaneously executed a license agreement dated December 15, 2016 (the "License Agreement"). | D.I. 47, ¶ 30 | • This item is improper, cumulative, and confusing.  The parties already stipulated to the same basic fact. *See, e.g.,* Proposed Stipulations No. 19. |
| 16 | The Services Agreement incorporated the License Agreement. | D.I. 47, ¶¶ 38, 52, 57 | • This item is improper, cumulative, and confusing.  The parties already stipulated to the same basic fact. *See, e.g.,* Proposed Stipulations No. 19. |
| 17 | The Services Agreement contains an Exhibit C titled "Services Detail and Delivery Schedule." | D.I. 46, ¶ 109 | • This item is improper, cumulative, and confusing.  The parties already stipulated to the same basic fact. *See, e.g.,* Proposed Stipulations No. 19. |
| 18 | WTRI was to be engaged in development under the Services Agreement. | D.I. 46, ¶ 122 | • This item is improper, cumulative, and confusing.  The parties already stipulated to the same basic fact. *See, e.g.,* Proposed Stipulations No. 5.<br>• This item may be confusing to the jury to the extent that it is vague and ambiguous as to "WTRI was to be engaged in development." |

45                                             18cv1927

47001860.6

| | | | |
|---|---|---|---|
| 19 | Dr. DiBello discussed with PMI her intention to include certain entities to participate in the Proteum pilot program. | D.I. 46, ¶ 115 | • This item may be confusing to the jury and prejudicial to the extent that it is pulled out of context because PMI has always disputed the veracity of Dr. DiBello's statements about participants in pilot programs. *See* D.I. 37, ¶ 115; D.I. 46, ¶ 115. |
| 20 | WTRI created "IceBochz." | D.I. 46, ¶ 123 | • This item may be confusing to the jury and prejudicial to the extent that it is pulled out of context and is vague and ambiguous as to "created." Namely, "IceBochz" was created pursuant to WTRI's contractual obligations for software to be owned by PMI. *See* D.I. 37, ¶ 123 ("WTRI, nonetheless, as part of its agreement with PMI created, designed, and provided the virtual company to PMI.  The name of the virtual company was IceBochz."). |

46                                          18cv1927

| 21 | WTRI registered a domain for "IceBochz." | D.I. 46, ¶ 123 | • This item may be confusing to the jury and prejudicial to the extent that it is pulled out of context.  Namely, "IceBochz" was created pursuant to WTRI's contractual obligations for software to be owned by PMI.  *See* D.I. 37, ¶ 123 ("WTRI, nonetheless, as part of its agreement with PMI created, designed, and provided the virtual company to PMI.  The name of the virtual company was IceBochz."). <br>• This item may be confusing to the jury and prejudicial to the extent that there is no context to explain the relevance or significance of this fact. |
| 22 | Mr. Weiss and Dr. DiBello discussed a sale back to WTRI of the technology that PMI had purchased from WTRI. Mr. Weiss told Dr. DiBello that PMI had invested over $10,000,000 in the technology. | D.I. 46, ¶ 129 | • This item is improper, cumulative, and confusing.  The parties already stipulated to the same basic fact. *See, e.g.*, Proposed Stipulations No. 21. |

47

18cv1927

47001860.6

| 23 | PMI engaged in discussions with WTRI to attempt to resolve issues that had been raised in regard to the Services Agreement. | D.I. 46, ¶ 136 | • This item is taken out of context as PMI denied the remaining allegations associated with this item.  *See* D.I. 46, ¶ 136.  First, the item is vague and ambiguous as to "issues that had been raised."  Second, the item, when placed alongside the following Item Nos. 27-28 is misleading.  PMI alleges that this action was made by WTRI in bad faith.  *See* D.I. 47, ¶¶ 28, 31-38.  The current framing is a skewed selection of cherry picked facts to craft a narrative that is different from what PMI alleges.<br>• This item may be confusing to the jury and prejudicial to the extent that there is no context to explain the relevance or significance of this fact. |

48

18cv1927

| 24 | WTRI prepared a written proposal for further product development. | D.I. 46, ¶ 137 | • This item is taken out of context as PMI denied the remaining allegations associated with this item. *See* D.I. 46, ¶ 137. First, the item is vague and ambiguous as to "proposal for further product development." Second, the item, when placed alongside the Item Nos. 26 and 28 is misleading. PMI alleges that this action was made by WTRI in bad faith. *See* D.I. 47, ¶¶ 28, 31-38. The current framing is a skewed selection of cherry picked facts to craft a narrative that is different from what PMI alleges.<br>• This item may be confusing to the jury and prejudicial to the extent that there is no context to explain the relevance or significance of this fact. |
|---|---|---|---|

49

18cv1927

| 25 | PMI did not accept WTRI's proposal for further product development. | D.I. 46, ¶ 138 | • This item is taken out of context as PMI denied the remaining allegations associated with this item.  *See* D.I. 46, ¶ 138.  First, the item is vague and ambiguous as to "issues that had been raised."  Second, the item, when placed alongside the preceding Item Nos. 26-27 is misleading.  PMI alleges that this action was made by WTRI in bad faith.  *See* D.I. 47, ¶¶ 28, 31-38.  The current framing is a skewed selection of cherry picked facts to craft a narrative that is different from what PMI alleges.<br>• This item may be confusing to the jury and prejudicial to the extent that there is no context to explain the relevance or significance of this fact. |

18cv1927

47001860.6

**b.     PMI's Position**

PMI rejects the basic principle of including a "disputed items" or purported "admissions" section in the proposed pretrial order.  First, obviously, there is a dispute relating to these purported "admissions" which contradicts the notion that there is some agreed upon or undisputed "admission" at issue.  Second, WTRI's claimed "admissions" by PMI tend to be duplicative of what the parties already agreed to in their Stipulations, inaccurate recitations of what PMI actually stated in various pleadings and discovery responses, and/or misleading and confusing characterizations of PMI's statements that lack sufficient and necessary context.  Third, as PMI believes that these are not undisputed and unequivocal "admissions," resolving any disputes necessarily requires this Court to referee discovery disputes or make factual findings neither of which are appropriate at this stage of the proceedings.

Simply put, referring to any of the items WTRI proposes as "admissions" is confusing and misleading because these were not unqualified admissions.  A "disputed items" section is: (1) an improper and unnecessary waste of party and judicial resources; (2) an improper attempt to prejudice and confuse the Court and the jury; and (3) an improper attempt to circumvent the process of reaching stipulations mutually agreed upon by both parties.

PMI further finds WTRI's proposed "admissions" improper for at least the following reasons:

• PMI rejects each and every item to the extent the items were stripped of necessary context.  For example, a common trope employed by WTRI is cherry picking a statement from PMI's Answer, Counterclaims, or discovery responses while excluding the rest of PMI's response or context.  Taking one phrase or sentence out of context is prejudicial and confusing to the jury.

47001860.6

- PMI rejects each and every item below to the extent each item is duplicative and cumulative of other items and stipulations already agreed to by the parties.

- PMI further rejects each and every item below to the extent the items are irrelevant or provide no value to the trier of fact. PMI believes it is inappropriate to present disorganized facts that lack appropriate context to the jury before the parties' cases are presented. This will only confuse the jury. And, the parties need to present evidence on the items below regardless of whether they are read to the jury, so the "disputed items" section does not save the parties any time.

- PMI also rejects each and every item below on the basis that WTRI engages in naked and improper gamesmanship with respect to these purported "admissions." PMI attempted to admit and deny facts in its pleadings and discovery responses in good faith. In contrast, WTRI only admitted a very limited number of facts in its Answer (approximately 24 facts compared to PMI's approximately 65 admissions in its Answer), denied all of PMI's requests for admission, and refuses to admit basic facts for which there is no legitimate dispute and/or WTRI agreed in its response to PMI's summary judgment motion. Therefore, WTRI should be prohibited from using its refusal to participate in the pleading and discovery processes in good faith to its advantage at trial. See, e.g., Counterclaims ¶ 16; Answer to Counterclaims ¶ 16 (denying that PMI made an initial payment to WTRI or $1,000,000 under the Development Agreement).

**VI.VII.** **List of all Deposition Transcripts by Page and Line, or Videotape Depositions by Section, that Will be Offered at Trial**

WTRI's list of all deposition transcripts by Page and Line, or Videotape Depositions by Section, that will be offered at trial are attached here as **Exhibit C**, which includes PMI's objections and counter-designations and WTRI's objections to PMI's counter-designations.

47001860.6

**Formatted:** Indent: Left:  0.5", First line:  0.5", Don't add space between paragraphs of the same style, Widow/Orphan control

1  PMI's list of all deposition transcripts by Page and Line, or Videotape Depositions
2  by Section, that will be offered at trial are attached here as **Exhibit D**, which includes
3  WTRI's objections and counter-designations and PMI's objections to WTRI's counter-
4  designations.

5

6  ~~VII.~~VIII.    **Jury Instructions**

7  Both sides will file proposed jury instructions one week prior to the commencement
8  of trial pursuant to CivLR 16.1(f)(9).  In addition to filing proposed jury instructions in
9  accordance with Fed. R. Civ. P. 51 and CivLR 5.1, the parties will e-mail the proposed
10 instructions to Chambers.  If a party disagrees with a particular instruction, the party must
11 submit an alternate instruction.

12

13 ~~VIII.~~IX.    **Jury Trial Demanded**

14 This case will be tried by jury.

15

16 ~~IX.~~X. **Time Estimated for Trial**[12]

17 WTRI estimates that trial in this matter will take between 8-10 trial days, to be split
18 evenly between the two sides.

19 PMI estimates that trial in this matter will take between 11-13 trial days.

20

21

22

23

24

25

26
_____
27 [12] Each party has provided its best estimate of a proposed time for trial based on the
    currently-available information, but if the Court desires, each party would prepare a
28 revised estimate to account for any *Daubert* motions that may be granted.

53                                                        18cv1927

47001860.6

Dated:  April 20̶1̶8̶, 2022          Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

/s/
JOSE L. PATIÑO, CA Bar No. 149568
   JosePatino@eversheds-sutherland.com
NICOLA A. PISANO, CA Bar No. 151282
   NicolaPisano@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
   ScottPenner@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
   JustinGray@eversheds-sutherland.com
REGIS C. WORLEY, JR., CA Bar No. 234401
   RegisWorley@eversheds-sutherland.com
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:      858.252.6502
FACSIMILE:       858.252.6503

Attorneys for Plaintiff and Counter-Defendant
WORKPLACE TECHNOLOGIES RESEARCH, INC.

Dated:  April 20̶1̶8̶, 2022  ____**WILLKIE FARR & GALLAGHER LLP**

̶By:  /s/
         Eric J. Bakewell
         Hannah L. McMeans
         Benita S. Yu
         Emily Horak

̶Attorneys for Defendant and Counterclaimant
PROJECT MANAGEMENT INSTITUTE, INC
P̶R̶O̶J̶E̶C̶T̶ ̶M̶A̶N̶A̶G̶E̶M̶E̶N̶T̶ ̶I̶N̶S̶T̶I̶T̶U̶T̶E̶,̶ ̶I̶N̶C̶,̶

54                              18cv1927

47001860.6