JOSE L. PATIÑO, CA Bar No. 149568
  JosePatino@eversheds-sutherland.com
NICOLA A. PISANO, CA Bar No. 151282
  NicolaPisano@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
  ScottPenner@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
  JustinGray@eversheds-sutherland.com
REGIS C. WORLEY, JR., CA Bar No. 234401
  RegisWorley@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:    858.252.6502
FACSIMILE:    858.252.6503

Attorneys for Plaintiff and Counter-Defendant
WORKPLACE TECHNOLOGIES RESEARCH, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORKPLACE TECHNOLOGIES RESEARCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> PROJECT MANAGEMENT INSTITUTE, INC. <br><br> Defendant. <br><br>――――――――――――――― <br><br> PROJECT MANAGEMENT INSTITUTE, INC. <br><br> Counterclaimant, <br><br> v. <br><br> WORKPLACE TECHNOLOGIES RESEARCH, INC.; and DOES 1-15 inclusive, <br><br> Counterdefendants. | Case No. 3:18-cv-01927-JO-MSB <br><br> **REPLY BRIEF IN SUPPORT OF WORKPLACE TECHNOLOGIES RESEARCH, INC.'S REVISED MOTION TO EXCLUDE PMI'S EXPERTS AND/OR STRIKE PMI'S EXPERTS' TESTIMONY AND REPORTS** <br><br> Judge:  Hon. Jinsook Ohta <br> Date:   May 11, 2022 <br> Time:   9:00 a.m. <br> Place:  Courtroom 4C |

18cv1927

47325866.1

As the proponent of disputed testimony, PMI "has the burden of proving the factual prerequisites necessary to the admissibility of expert testimony by a preponderance of the evidence." *Hubbard v. Rite Aid Corp.*, 433 F. Supp. 2d 1150, 1161 (S.D. Cal. 2006) (emphasis added). In an attempt to shore up its experts' lack of qualifications and absent methodologies, PMI's Opposition Brief (D.I. 301, "Opposition" or "Opp.") relies on expert testimony via new declarations. This *post-hoc* enterprise comes after the close of discovery, misstates law and fact, and contradicts PMI's own expert reports. For these reasons, set forth more fully below, and those documented in WTRI's Motion (D.I. 249-1, "Motion" or "Mot."), PMI failed its burden of proof and its experts should be excluded.

I. **MR. CLARK ALDRICH**

A. **Mr. Aldrich Is Not Qualified to Offer His Opinions.**

PMI offers no record support for Mr. Aldrich's qualifications. Rather, PMI's sole support is his declaration – created *after* expert discovery closed and WTRI's filing of its original *Daubert* motion – offering testimony, untested by cross-examination, that embellishes his background in an attempt to bolster his alleged experience with project, program, product, and portfolio management. *See* Opp. at 16 (relying on D.I. 301-3, Ex. M ("Aldrich Decl.") at ¶ 5). Having failed to establish his qualifications before the close of expert discovery, when WTRI could have deposed him on these new alleged qualifications, PMI cannot now concoct new testimony to shore up his inadequate qualifications. *See Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*, No. 3:17-cv-01118-BEN-BLM, 2019 U.S. Dist. LEXIS 86340, at *23 (S.D. Cal. May 22, 2019) ("Experts cannot testify on matters not disclosed in their expert report or deposition"); *Avila v. California*, No. 1:15-cv-00996-LJO-EPG, 2018 U.S. Dist. LEXIS 23591, at *19 (E.D. Cal. Feb. 13, 2018) ("Defendants will not be permitted to introduce expert testimony" not previously disclosed).

B. **Mr. Aldrich's Opinions Are Unreliable.**

The parties are in general agreement regarding Mr. Aldrich's "methodology": he "played the Maxx simulation," "compared the content material" to other simulations, and

47325866.1

1  "relied on his experience to analyze various sources of data."  Mot. at 3; Opp. at 16-17.  It
2  is not a "methodology" recognized by *Daubert*.  PMI did not identify any objective criteria
3  considered by Mr. Aldrich nor make any required showing "grounded in the methods of
4  science."  *See Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 984 (9th Cir. 2020).
5  Instead, Mr. Aldrich's subjective views reflect an untestable methodology that fails.  *U.S.*
6  *v. Williams*, No. 3:13-cr-00764-WHO-1, 2017 U.S. Dist. LEXIS 129944, at *28 (N.D. Cal.
7  Aug. 15, 2017) (methodology is untestable when expert's "interpretations involved 'very
8  subjective' determinations completely detached from any objective criteria.").

### C. Mr. Aldrich Offers Improper Rebuttal Opinions.

10  Rebuttal reports are limited to opinions "intended solely to contradict or rebut
11  evidence on the same subject matter."  Fed. R. Civ. P. 26(a)(2)(D).  "The phrase 'same
12  subject matter' should be read narrowly because a broad reading that 'encompass[es] any
13  possible topic that relates to the subject matter at issue[] will blur the distinction between
14  'affirmative expert' and 'rebuttal expert.'"  *HM Elecs., Inc. v. R.F. Techs., Inc.*, No. 12-
15  cv-2884 BAS (MDD), 2015 U.S. Dist. LEXIS 51042, at *3 (S.D. Cal. Apr. 17, 2015).
16  PMI's efforts to distinguish flail in the wind and do not change the terms of this decision.

17  The "Scope of Work" in Mr. Aldrich's report explicitly differentiates between "a
18  rebuttal opinion" and other topics that he was "asked to opine on."  D.I. 251-2 at 7.  His
19  deposition articulates this distinction further, as documented in the Motion.  D.I. 251-9 at
20  27:7-32:22.  In arguing that Mr. Aldrich only offers rebuttal opinions (Opp. at 17-18), PMI
21  contradicts Mr. Aldrich's report and deposition testimony.  PMI's attorney arguments
22  attempting to correlate certain of Mr. Aldrich's opinions to Dr. Raisinghani's report cannot
23  trump Mr. Aldrich's express statements and testimony differentiating his opinions.

24  PMI cannot dispute that one of the topics Mr. Aldrich was "asked to opine on" is
25  "the field of use that the Maxx simulation is in."  D.I. 251-2 at 7.  PMI bears the burden of
26  proof on this topic and should have provided an opening report.  *See* Mot. at 5-6 (collecting
27  cases).  PMI's Opposition contradicts Mr. Aldrich's report and testimony, and then argues
28  WTRI suffered no harm.  Opp. at 18-19.  PMI fails to show "substantial justification" for

47325866.1

its belated disclosure; this testimony must be struck.  *See* D.I. 57 (Scheduling Order) at 3.

## II. DR. MICKEY A. FERRI

As WTRI explained, Dr. Ferri's expert opinion is not relevant.  Mot. at 6-7.  PMI purports to rely on Dr. Ferri for a "business justification" defense.  However, this Court held on Summary Judgment that "California's business judgment rule has no application here." D.I. 215 at 49.  Undeterred, PMI baldly asserts "[t]hat ruling has nothing to do with whether PMI's business rationale and decisions related to the PAL project are relevant." Opp. at 14.  But PMI fails to explain ***how*** its business rationale and decisions are relevant now that its business justification defense is precluded as a matter of law from this case.

PMI now argues that Dr. Ferri's opinions are also relevant to damages.  But, PMI has a damages expert, Ms. Carlyn Irwin, and she does not rely on Dr. Ferri.  *See generally*, D.I. 251-5; D.I. 185-3 at Ex. 29.  PMI claims that Dr. Ferri will provide opinions relevant to WTRI's lost profits claim, but his report focused not on whether WTRI could sell the PAL product to its customers, but instead on whether PMI could sell it to PMI's customers. *See generally* D.I. 251-3.  Dr. Ferri has nothing to say on damages.

## III. MR. RICHARD FINCHER

### A. Mr. Fincher Is Not Qualified to Offer His Opinions.

PMI made no attempt to explain what qualifications Mr. Fincher has that enable him to testify regarding "accelerated expertise" or any comparison between it and "accelerated learning."  He had never heard of "accelerated expertise" before this case, has no personal experience with "accelerated expertise," and everything he now knows about "accelerated expertise" he learned in under 50 hours working on this case.  Mot. at 8.

PMI ignores Mr. Fincher's undisputed lack of experience[1] and instead tries to create a smoke screen, arguing that: (i) Mr. Fincher could form *opinions* without regard to *experience* while working on this case; (ii) Mr. Fincher's report cites documents he briefly perused to understand "accelerated expertise"; and (iii) notwithstanding contrary case law,

---

[1] PMI asserts that Mr. Fincher is "a qualified project management industry expert," but fails to show why that allows him to opine on "accelerated expertise."  Opp. at 19.

Wikipedia articles can form opinions without regard to Mr. Fincher's "expertise." Opp. at 19-20.  No, never, at least not in this Court.  *See* Mot. at 8:4-9:9.

### B. Mr. Fincher's Report Failed to Comply with Rule 26(a).

Mr. Fincher testified that his report did ***not*** include all the facts and data he considered – and relied on – in forming his opinions.  *Id.* at 9.  His deposition did not cure his Rule 26(a) violation because he could not recall the omitted material.  *Id.* at 9-10.  So, PMI now argues his report cannot be excluded because it includes a list of exhibits, though PMI does not contest that the list is incomplete.  *See* Opp. at 21.  PMI's cited authority is easily dismissed.  In *Bona Fide Conglomerate, Inc. v. SourceAmerica*, the expert "reviewed but ***did not rely on***," the omitted information and the Court found "while prejudice might lie in the ordinary case" it was not found "in light of the factual particulars of *this* case."  No. 3:14-cv-00751-GPC-AGS, 2019 U.S. Dist. LEXIS 50949, at *58 (S.D. Cal. Mar. 26, 2019) (second emphasis in original).  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* in fact, excluded the expert after finding exclusion "an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)."  259 F.3d 1101, 1106 (9th Cir. 2001).  Exclusion of Mr. Fincher for violating Rule 26(a) is warranted.

### C. Mr. Fincher Offers Improper (and Wrong) Legal Opinions.

PMI's pleadings admit that the Development Agreement incorporates its attached Exhibits A and B.  D.I. 47 at ¶ 19 (Exhibit A); D.I. 46 at ¶ 29 (Exhibit B); *see also Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (admissions in pleadings are binding).  Disagreeing with PMI and this Court's Order (*see* D.I. 215 at 15), Mr. Fincher seeks to explain ***his*** view of the contract.

Mr. Fincher's opinion that the Development Agreement does not incorporate the exhibits is "legally incorrect and would only confuse the jury" (Mot. at 10-12), because PMI's admission that they were incorporated means this is not "a fact in issue." *See* Fed. R. Evid. 702 (expert testimony must help the trier of fact determine a fact in issue); *United States v. Lukashov*, 694 F.3d 1107, 1116 (9th Cir. 2012) (expert testimony concerning an improper subject should be excluded).  PMI fails to address its admission or the

47325866.1

consequences of Mr. Fincher's testimony; instead PMI discusses a different topic: the basis and alleged corroboration of his testimony. Opp. at 22-24. PMI thus "effectively waived the issue." *See Michajlun v. Bausch & Lomb, Inc.*, No. 14-cv-1365 JM (JMA), 2015 U.S. Dist. LEXIS 30024, at *27 (S.D. Cal. Mar. 11, 2015); *see also Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. Aug. 9, 2011).

### D. Mr. Fincher's Testimony Is Not Reliable.

In the Ninth Circuit, "where the expert opinion is not a product of independent research unrelated to the current lawsuit, 'the party proffering it must come forward with other *objective*, verifiable evidence that the testimony,' is reliable." *AT&T Wireless Servs. of Cal. LLC v. City of Carlsbad*, 308 F. Supp. 2d 1148, 1156 (S.D. Cal. 2003) (emphasis added); *see also* Mot. at 14. PMI fails to come forward with any such evidence.

Rather than establish Mr. Fincher's testimony is reliable using objective, verifiable evidence, PMI offers a *new* declaration from Mr. Fincher, prepared after the close of fact and expert discovery, in which he offers the self-serving assertion that "[a]ll of the opinions that I proffered in my Expert Report are based on my analysis and verification of facts contained in documents produced in discovery." D.I. 301-3, Ex. O ("Fincher Decl.") at ¶ 4. But it is improper to offer new testimony after the close of discovery. *See Avila*, 2018 U.S. Dist. LEXIS 23591, at *19. And Mr. Fincher's self-serving assurances relating to "methodology" are not *objective*. *See Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315-16 (9th Cir. 1995) ("something doesn't become 'scientific knowledge' just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were 'derived by the scientific method' be deemed conclusive"); *Hannah v. United States*, No. 2:17-cv-01248-JAM-EFB, 2019 U.S. Dist. LEXIS 27092, at *6-7 (E.D. Cal. Feb. 19, 2019) ("An expert's mere assurances of reliability are insufficient under *Daubert*."). Likewise, Mr. Fincher's claim that all of his opinions were based on "verification of facts" contradict his testimony. *Compare* Fincher Decl. at ¶ 4 *with* D.I. 251-11 at 311:25-315:19 (adopting Neudesic document); *see also* Mot. at 15-16.

PMI relies on *Johnson v. Gen. Mills, Inc.* to argue that Mr. Fincher's methodological

47325866.1

flaws do not go to admissibility; but *Johnson* states that if an expert report is found reliable, any remaining "alleged flaws or shortcomings" go to the weight. No. SACV 10-00061-CJC(ANx), 2012 U.S. Dist. LEXIS 199926, at *3 (C.D. Cal. May 7, 2012). In reality "[a]n expert opinion is properly excluded where it relies on an assumption that is unsupported by evidence in the record and is not sufficiently founded on facts." *Nuveen Quality Income Mun. Fund, Inc. v. Prudential Equity Grp., LLC*, 262 F. App'x 822, 824 (9th Cir. 2008).

## IV. MR. JEREMIAH STEPAN

### A. Mr. Stepan Is Not Qualified to Offer His Opinions.

Mr. Stepan intends to offer testimony regarding a third-party-conducted SonarQube analysis. But he admits he has never run SonarQube and may not have even heard of it prior to this case. *See* Mot. at 16-17. PMI does not deny that he lacks any familiarity with SonarQube, that his understanding of SonarQube is based on "a little bit" of material he looked up, could not recall, and failed to identify in his report, and yet, PMI asks the Court to allow Mr. Stepan to offer opinions regarding technical aspects of SonarQube. PMI asserts, for example, that "he has significant experience," but his report reveals that he, at best, "worked on various projects involving the analysis of software, assembly code, microcode, and computer systems architecture." Opp. at 10 (citing D.I. 301-3, Ex. C). His report offers no details as to how any of his work qualifies him to provide expert opinions on the technical operation of a specialized "tool used by developers" he had never heard of. *Id.* In fact, PMI fails to demonstrate that Mr. Stepan has any education or experience that qualifies him to opine on a "tool used by developers," let alone to opine on how the specific SonarQube tool evaluates software deficiencies and the letter grades it assigns. *Id.*; *see also* Mot. at 16-17.

### B. Mr. Stepan's Opinions Are Unreliable.

Mr. Stepan applied no articulable methodology, and PMI failed to show "objective, verifiable evidence that the testimony is based on 'scientifically valid principles.'" *See Daubert*, 43 F.3d at 1317-18. Rather than addressing his "methodology" – which lacks scientific basis – PMI focused on the materials he considered. Opp. at 10-13. PMI abjectly

47325866.1

fails to rebut WTRI's documentation that Mr. Stepan's "methodology" is conclusory, lacking any basis in scientifically valid principles.  PMI claims Mr. Stepan "repeatedly shared the analytic support underlying his opinions," by citing two deposition quotes: (i) "I would say that the acceptance criteria were not met, and…I can point to what the [contract] says for those particular sections," and (ii) "I determined which acceptance criteria weren't met and based on my experience…determined that it was seriously deficient." *Id.* at 11-12 (emphasis added).  But these quotes confirm Mr. Stepan's entire "analysis" consisted of looking at part of the contract, mulling it over based on his "experience" (which is inadequate), and reaching a pre-ordained conclusion.  Mr. Stepan's "take my word for it" approach is worse than it sounds, as PMI does not dispute, *see id.* at 12, that he conceded at deposition his source code memories were "wrong," Mot. at 19.

PMI has failed to identify *any* analysis, let alone an analysis "based on 'scientifically valid principles.'"  *See Daubert*, 43 F.3d at 1317-18.  And it is appropriate to exclude a putative expert who claims to rely on "knowledge and experience" rather than explaining a methodology or empirical data.  *United States v. Sayre*, 434 F. App'x 622, 624 (9th Cir. 2011); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

In its effort at damage control given that Mr. Stepan claims to have conducted a review of WTRI's source code but failed to identify any specific code, PMI points to Appendix C of Mr. Stepan's report which lists two source code items.  Mot. at 19; Opp. at 12.  Each of those items has tens of thousands of files and Mr. Stepan never identified a single source code file.  PMI's argument is the same as saying "he relied on every document in the case."  That is insufficient to show what facts Mr. Stepan relied on for what opinions.

Finally, PMI fails to respond to WTRI's argument that Mr. Stepan should not be allowed to offer testimony to support PMI's business justification defense.  *See* Mot. at 20.  PMI has thus waived this issue.  *Michajlun*, 2015 U.S. Dist. LEXIS 30024, at *27.

## V.      MS. CARLYN IRWIN

Ms. Irwin performs no expert analysis in her December 11, 2020 report.  Her report contains three damages numbers:  (1) $10.1M, which is pulled straight from a PMI

47325866.1

spreadsheet summing up all of PMI's expenses on the PAL project; (2) $5.7M, which is calculated by taking the $10.1M number and subtracting a $4.5M number pulled straight from a PMI memorandum; and (3) $1.8M, which is calculated from tabulating costs in the PMI spreadsheet, based on Ms. Holloway's instruction regarding which costs within that spreadsheet to include.  Mot. at 20-21.

While PMI asserts Ms. Irwin "applied reliable principles and methods to reach her opinions," neither PMI nor Ms. Irwin disclose what those reliable principles and methods are.  There are none to be found.  Additionally, whether Ms. Irwin attempted to verify the accuracy of the numbers spoon-fed to her by PMI misses the point.  Ms. Irwin only serves as a human calculator here, and her opinions are therefore inadmissible.  *See* Mot. at 20-21.  PMI does not even attempt to distinguish WTRI's cited case law.  *See* Opp. at 2-3.

PMI's cited cases are, moreover, inapposite.  In *Airhawk Int'l, LLC v. Ontel Prods. Corp.*, the damages expert relied on written discovery, deposition transcripts, and internal financial records, also conducting "independent research to assess search trends, interest rates, and industry trends."  No. 18cv73-MMA (AGS), 2020 U.S. Dist. LEXIS 256977, at *24 (S.D. Cal. Jan. 2, 2020).  Here, Ms. Irwin performs no such analysis and instead regurgitates numbers PMI provided to her.  And in *United States ex rel. Jordan v. Northrop Grumman Corp.*, the damages expert "used her experience in determining which data was relevant for the purposes of her damages calculations."  No. CV 95-2985 ABC (Ex), 2003 U.S. Dist. LEXIS 29067, at *16 (C.D. Cal. Jan. 6, 2003).  Here, Ms. Irwin makes no such determination.  Instead she parrots the $10.1M total costs number from a PMI spreadsheet as her "opinion" and repeats a PMI employee's direction of which costs in that spreadsheet should be summed to reach $1.8M –without any assessment, examination, or inquiry.

## VI. DR. RICARDO VALERDI

### A. Dr. Valerdi Is Not Qualified to Offer His Opinions.

PMI fails to support Dr. Valerdi's qualifications to opine whether PMI's alleged trade secrets fall within the contractual Field of Use restricted to project management.  As established by WTRI's Motion, Dr. Valerdi "lacks any project management education

47325866.1

expertise, and does not even have a PMP certification."[2]  Mot. at 21-22.  Devoid of evidence supporting Dr. Valerdi's experience on the relevant issue, PMI tries an inadmissible declaration (created *after* expert discovery's close) to include, for the first time, project management.  See Opp. at 5 (citing D.I. 301-3, Ex. N ("Valerdi Decl.")).  But this new testimony is barred.  See *Whitewater*, 2019 U.S. Dist. LEXIS 86340, at *23; *Avila*, 2018 U.S. Dist. LEXIS 23591, at *19.  It is axiomatic that an expert's ***report*** "must contain … the witness's qualifications." Fed. R. Civ. P. 26(a)(2)(B)(iv).  Because PMI's arguments for Dr. Valerdi's admissibility rely on his newly-offered testimony, which has not been subject to cross-examination, and is not contained in his expert report upon which his deposition was taken, *see* Opp. at 5:2-11, it is too late under the Rules for PMI to salvage Dr. Valerdi's lack of pertinent credentials.

**B.  Dr. Valerdi's Opinions Are Unreliable and Lack Relevance.**

What is more, Dr. Valerdi's predicates his definitions of the alleged trade secrets by way of his own invention.  *See* Mot. at 23-24 (citing D.I. 251-14 at 100-102).  Dr. Valerdi conceded "the trade secrets that [he] identified in [his] report are [his] definitions, not PMI's" and that "there's a difference between PMI's initial disclosure and [his] definition of the trade secrets." *Id.*  Dr. Valerdi also confesses his trade secrets definition is a "subset" of PMI's disclosure, but that is also demonstrably false.  *See id.*  As documented by WTRI, Dr. Valerdi's trade secrets definition "cannot possibly be a subset of PMI's § 2019.210 disclosure because he relies on documents not included in PMI's disclosure."  *Id.* at 24.  PMI does not respond, because it cannot as a matter of law.  *Michajlun*, 2015 U.S. Dist. LEXIS 30024, at *27.  Because Dr. Valerdi's trade secrets opinions relate to trade secrets broader in scope from those PMI identified, his testimony must be excluded.[3]  *See also*

---

[2] Contrary to PMI's protestations, Dr. Valerdi is unqualified "because he lacks education and experience in [the project management] field."  Mot. at 22.  That he lacks a PMP certificate provides further support given that, in contrast, WTRI's expert does.

[3] PMI fails to support its claim regarding what "Courts recognize."  PMI does not rely on a court ruling, but on a Joint Case Management Statement featuring an argument by one party rebutted by the other.  *See Uniram Tech., Inc. v. Monolithic Sys. Tech., Inc.*, No. C-04-1268 VRW, 2006 WL 5616443, at * 1 (N.D. Cal. Jul. 26, 2006).  PMI previously cited this same document, and WTRI pointed out that PMI was improperly citing the document

*Nat'l-Arnold Magnetics Co. v. Wood*, 46 F. App'x 416, 420 (9th Cir. 2002); *Founder Starcoin, Inc. v. Launch Labs, Inc.*, No. 18-CV-972 JLS (MDD), 2018 U.S. Dist. LEXIS 113737, at *14-15 (S.D. Cal. July 9, 2018) (purported trade secret lacks "sufficient particularity" when the trade secrets are inconsistently defined); *Next Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, No. 17 C 8829, 2019 U.S. Dist. LEXIS 31415, at *35-36 (N.D. Ill. Feb. 27, 2019) ("while Valerdi offers his opinion identifying Plaintiff's trade secrets," the court refused to rely on them).

The remainder of his opinions must also be excluded because they rely on his faulty trade secret definition. PMI claims that Dr. Valerdi "detailed each of PMI's trade secrets as defined in [PMI's] First Supplemental Response to Interrogatories." Opp. at 7. Not true. Dr. Valerdi admitted that he used his own trade secret definition, which differed from PMI's disclosure that controls. D.I. 251-14 at 100:1-24. Because his analysis addresses different subject matter than what is in suit, his opinions lack relevance. This is all the more stark when one considers PMI defined its purported trade secrets as "flow activity templates and corresponding spreadsheet designs" in summary judgment briefing (D.I. 158-1, at 28 n.7), but to salvage Dr. Valerdi's trade secret reimagination, PMI now contends its expert need *not* consider flow charts and spreadsheets. *See* Opp. at 8-9.

---

as a court holding, D.I. 200 at 10 n.8. PMI was on notice but foisted the same again.

47325866.1

| | | |
|---|---|---|
| 1 | Dated: April 26, 2022 | Respectfully submitted, |
| 2 | | **EVERSHEDS SUTHERLAND (US) LLP** |

*/s/ Jose L. Patiño*
JOSE L. PATIÑO, CA Bar No. 149568
　JosePatino@eversheds-sutherland.com
NICOLA A. PISANO, CA Bar No. 151282
　NicolaPisano@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
　ScottPenner@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
　JustinGray@eversheds-sutherland.com
REGIS C. WORLEY, JR., CA Bar No. 234401
　RegisWorley@eversheds-sutherland.com
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:　858.252.6502
FACSIMILE:　858.252.6503

Attorneys for Plaintiff and Counter-Defendant WORKPLACE TECHNOLOGIES RESEARCH, INC.

47325866.1