JOSE L. PATIÑO, CA Bar No. 149568
  JosePatino@eversheds-sutherland.com
NICOLA A. PISANO, CA Bar No. 151282
  NicolaPisano@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
  ScottPenner@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
  JustinGray@eversheds-sutherland.com
REGIS C. WORLEY, JR., CA Bar No. 234401
  RegisWorley@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:    858.252.6502
FACSIMILE:    858.252.6503

Attorneys for Plaintiff and Counter-Defendant
WORKPLACE TECHNOLOGIES RESEARCH, INC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORKPLACE TECHNOLOGIES RESEARCH, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PROJECT MANAGEMENT INSTITUTE, INC.<br><br>Defendant.<br><hr>PROJECT MANAGEMENT INSTITUTE, INC.<br><br>Counterclaimant,<br><br>v.<br><br>WORKPLACE TECHNOLOGIES RESEARCH, INC.; and DOES 1-15 inclusive,<br><br>Counterdefendants. | Case No. 3:18-cv-01927-JO-MSB<br><br>**WORKPLACE TECHNOLOGIES RESEARCH, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT OF PROJECT MANAGEMENT INSTITUTE INC.'S OPPOSITION TO WORKPLACE TECHNOLOGIES RESEARCH INC.'S REVISED MOTION TO EXCLUDE PMI'S EXPERTS AND/OR STRIKE PMI'S EXPERTS' TESTIMONY AND REPORTS**<br><br>Judge:   Hon. Jinsook Ohta<br>Date:    May 11, 2022<br>Time:    9:00 a.m.<br>Place:   Courtroom 4C |

47325818.1

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................1

II.   THE ALDRICH DECLARATION (D.I. 301-3, EX. M) ......................................1

    A.    PARAGRAPH 5 ........................................................................................1

    B.    PARAGRAPH 6 ........................................................................................3

III.  THE VALERDI DECLARATION (D.I. 301-2, EX. N) ......................................4

    A.    PARAGRAPHS 6-11 ...............................................................................4

    B.    PARAGRAPH 14 ......................................................................................6

    C.    PARAGRAPH 15 ......................................................................................7

IV.  THE FINCHER DECLARATION (D.I. 301-2, EX. O) ........................................7

    A.    PARAGRAPH 4 ........................................................................................9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Elvira v. City of Escondido*,
 No. 14-cv-00081-BAS(NLS), 2016 U.S. Dist. LEXIS 136215
 (S.D. Cal. Sept. 30, 2016) ..........................................................................................8

*FTC v. Publ'g Clearing House, Inc.*,
 104 F.3d 1168 (9th Cir. 1997) ................................................................................3, 9

*Kennedy v. Allied Mut. Ins. Co.*,
 952 F.2d 262 (9th Cir. 1991) ...................................................................................2, 9

*Mendoza v. Doe*,
 No. 16CV2184 WQH (BGS), 2019 U.S. Dist. LEXIS 21025
 (S.D. Cal. Feb. 7, 2019) ..........................................................................................4, 9

*Single Chip Sys. Corp. v. Intermec IP Corp.*,
 495 F. Supp. 2d 1066 (S.D. Cal. 2007) ............................................................*passim*

*West v. Reliant Fin. Corp.*,
 No. 20cv678-JAH-JLB, 2021 U.S. Dist. LEXIS 85346
 (S.D. Cal. May 4, 2021) ...............................................................................................7

*Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*,
 No. 3:17-cv-01118-BEN-BLM, 2019 U.S. Dist. LEXIS 86340
 (S.D. Cal. May 22, 2019) ...................................................................................*passim*

**Statutes**

28 U.S.C. § 1746..............................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 26............................................................................................................2

Fed. R. Civ. P. 26(a) .......................................................................................................2

Fed. R. Civ. P. 26(a)(2)(B).......................................................................................*passim*

Fed. R. Civ. P. 37(c)(1)...................................................................................................2

## I. INTRODUCTION

Plaintiff and Counter-Defendant Workplace Technologies Research, Inc. ("WTRI") hereby objects to the following evidence submitted by Defendant and Counter-Claimant Project Management Institute Inc. ("PMI") in support of PMI's Opposition to WTRI's Revised Motion to Exclude PMI's Experts and/or Strike PMI's Experts' Testimony and Reports ("Opposition" or "Opp.") D.I. 301. Each of the declarations contain portions that should be struck because they are improper evidence.

## II. THE ALDRICH DECLARATION (D.I. 301-3, EX. M)

The below paragraphs of the Declaration of Clark Aldrich in Support of Defendant and Counterclaimant Project Management Institute, Inc.'s Opposition to Workplace Technologies Research, Inc.'s Motion to Exclude Project Management Institute's Experts and/or Strike Experts' Testimony and Reports, D.I. 301-3, Ex. M ("Aldrich Declaration" or "Aldrich Decl.")[1] are improper evidence and should be struck.

### A. PARAGRAPH 5

In paragraph 5, Mr. Aldrich states "I based all of the opinions in my Expert Rebuttal Report on my significant education, skills, and experience, including ***researching and developing over one hundred custom simulations for professional skills relating to project, program and portfolio management***; and researching and simulating all aspects of product management including pricing, market share, and segmentation. Attached hereto as **Exhibit 2** is a true and correct copy of my Curriculum Vitae referencing my education, skills, and experience." Aldrich Decl. at ¶ 5 (emphasis added).

PMI states in its Opposition that "Aldrich researched and developed ***more than one hundred custom simulations for professional skills in project, program and portfolio management***." Opp. at 16 (emphasis added). The only support PMI offers for this statement comes from paragraph 5 of the Aldrich Declaration. *See id.* PMI does not cite to Mr. Aldrich's Expert Rebuttal Report, D.I. 251-2 ("Aldrich Report") nor his deposition

---

[1] While PMI filed the Aldrich Declaration under seal, PMI previously filed the Aldrich Declaration publicly. *See* D.I. 184-11 to 184-14.

because this information is entirely absent from either. Indeed, this testimony is entirely new, untested by cross examination and because it is submitted beyond the close of expert reports, this paragraph should be struck.

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires that an expert report must contain "(i) a complete statement of all opinions the witness will express and the basis and reasons for them" as well as "(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years." Failure to disclose information required by Rule 26(a) generally results in exclusion of use of that evidence at trial. Fed. R. Civ. P. 37(c)(1). *Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*, No. 3:17-cv-01118-BEN-BLM, 2019 U.S. Dist. LEXIS 86340, at *23 (S.D. Cal. May 22, 2019) ("Experts cannot testify on matters not disclosed in their expert report or deposition."); *Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1066, 1075 (S.D. Cal. 2007) ("a court would be within its discretionary authority to omit either portions of or the entire expert opinion if a party breaches the disclosure requirements under Rule 26.").

In addition, Mr. Aldrich's declaration is an improper attempt to rewrite his sworn testimony[2]. *See generally Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."). During his deposition, Mr. Aldrich testified that, although he has experience in simulations in "tangential areas and other overlapping areas", he had no experience building any simulations related to project, program, or portfolio management. D.I. 251-9 ("Aldrich Deposition") at 35:15-36:14 ("I never did a project management simulation. I never built a program management simulation. I did not build a portfolio management simulation."). Moreover, when asked to provide an estimate of how many of the educational simulations he built for clients were "in the field of project, program, and portfolio management," Mr. Aldrich testified: "I have not done any with the labels that we've talked about, but I've done many with components of all of those simulations. And

---

[2] Mr. Aldrich did not submit any errata to his deposition. The transcript remains the operative sworn testimony in this matter.

47325818.1

I think most importantly for the context of this report, because ***I have deep experience not with the -- well, not with, say, project management in particular,*** but in the process of going from -- from nothing to a working simulation, the life cycle of a simulation, I am exceptionally experienced at creating simulations." *Id.* at 33:22-35-5 (emphasis added).

And Mr. Aldrich's declaration is also an improper attempt to rewrite his expert report. In the Summary of Qualifications section of his report, Mr. Aldrich states "I have authored hundreds of articles, publications, and five books on online learning and educational simulations" and "I have designed and delivered around a hundred educational simulations ranging from very complicated to very simple which have been translated around the globe." Aldrich Report at 6. Neither of these statements provide support for his newfound claim that his experience related to project, program, and portfolio management. In fact, the term "project management" does not appear once in his Summary of Qualifications.[3] *Id.* at 6-7.

Accordingly, paragraph 5 of Mr. Aldrich's report should be struck.

### B.     PARAGRAPH 6

In paragraph 6, Mr. Aldrich states "I also based all of the opinions in my Expert Rebuttal Report on my review, analysis, and ***verification of facts*** contained in deposition testimony…." Aldrich Decl. at ¶ 6 (emphasis added).

As explained above, Mr. Aldrich cannot submit evidence beyond his expert report. *See* Rule 26(a)(2)(B); *Whitewater*, 2019 U.S. Dist. LEXIS 86340, at *23; *Single Chip*, 495 F. Supp. 2d at 1075. Here Mr. Aldrich is trying to bolster his opinions in his expert report by stating that, in addition to reviewing and analyzing the facts, he also performed some type of independent ***verification*** of the facts. But Mr. Aldrich's report is devoid of any such confirmation. The Aldrich Report does not identify any methodology or supplemental citations showing how Mr. Aldrich ***verified*** the facts. Moreover, his declaration is devoid of any information identifying ***which*** facts he allegedly ***verified***. The Aldrich Declaration

---

[3] The term only appears *once* in his entire CV and in a manner unrelated to his newly professed expertise. *See* Aldrich Report at Attachment A.

47325818.1

is devoid of any evidence that would support Mr. Aldrich's newly formed opinion. *See FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.") (citations omitted); *see also Mendoza v. Doe*, No. 16CV2184 WQH (BGS), 2019 U.S. Dist. LEXIS 21025, at *20-21 (S.D. Cal. Feb. 7, 2019) (finding declaration did not establish a genuine issue for trial because it was self-serving, uncorroborated, conclusory, and lacking factual details).

### III.   THE VALERDI DECLARATION (D.I. 301-2, EX. N)

The below paragraphs of the Declaration of Ricardo Valerdi in Support of Defendant and Counterclaimant Project Management Institute, Inc.'s Opposition to Workplace Technologies Research, Inc.'s Motion to Exclude Project Management Institute's Experts and/or Strike Experts' Testimony and Reports, D.I. 301-2, Ex. N ("Valerdi Declaration" or "Valerdi Decl.")[4] are improper evidence and should be struck.

#### A.   PARAGRAPHS 6-11

In paragraph 6, Dr. Valerdi provides a list of "peer-reviewed publications which demonstrate my expertise in the field of project and program management." Valerdi Decl. at ¶ 6. While each publication was disclosed in Dr. Valerdi's Expert Report, D.I. 251-7 ("Valerdi Report"), Dr. Valerdi is now trying to inflate his background by providing additional testimony regarding each publication in the list of publications. For example, for the publication "Evolving Toolbox for Complex Project Management," Valerdi now supplements his disclosure and states "[f]or this publication, I authored a chapter that describes how project managers can apply state of the art cost estimation methods to support their projects." *Id*.

In paragraph 7, Dr. Valerdi provides a list of research projects that developed his alleged expertise in project management and again tries to inflate his background by providing additional testimony regarding what each project involved. *Id.* at ¶ 7.

---

[4] While PMI filed the Valerdi Declaration under seal, PMI previously filed the Valerdi Declaration publicly. *See* D.I. 184-15 to 184-18.

47325818.1

1          In paragraph 8, Dr. Valerdi states "I took a graduate course in Project Management
2   as part of my doctoral studies at the University of Southern California." *Id.* at ¶ 8.  Dr.
3   Valerdi did not disclose this experience in the Valerdi Report.
4          In paragraph 9, Dr. Valerdi states "I developed expertise in project management by
5   working as a doctoral student in the Center for Software Engineering at the University of
6   Southern California. In this position, I practiced project management by developing a
7   model for estimating the cost of large military projects.  I also wrote a doctoral dissertation
8   describing how to better employ cost modeling – one of the main practices of a project
9   manager – in the aerospace and defense industry." *Id.* at ¶ 9.  Dr. Valerdi again did not
10  disclose this experience in the Valerdi Report.
11         In paragraph 10, Dr. Valerdi states "I engaged in project management at my prior
12  employment at Motorola and SpaceX. My roles at these companies involved the
13  implementation of project management duties such as integration, scope, time, cost,
14  quality, procurement, and risk management which are standard project management
15  functions as defined by the Project Management Institute." *Id.* at ¶ 10.  Dr. Valerdi did not
16  disclose this experience in the Valerdi Report.
17         In paragraph 11, Dr. Valerdi states "[t]here were employees working as project
18  managers during my time working at Motorola and SpaceX that did not possess the Project
19  Management Professional certification because they were not required to do so." *Id.* at ¶
20  11. Dr. Valerdi did not disclose this fact in the Valerdi Report.  In addition, this statement
21  is not relevant to any issue in this case.
22         PMI relies on these statements to support their assertion that Dr. Valerdi is qualified
23  to offer opinions related to project management.  Opp. at 5.  However, PMI cannot cite to
24  the Valerdi Report, which is where PMI was required to disclose his credentials months
25  ago – because it is not there; it can be of no legal moment at this point.  Presumably, bearing
26  the burden of showing Dr. Valerdi has the requisite credentials, PMI would have pointed
27  this Court to this information from the existing record if it existed; instead PMI is relegated
28  to supporting its proposition through the Valerdi Declaration.  Indeed, this testimony is

47325818.1

entirely new, untested by cross examination and because PMI submitted it beyond the close of expert discovery, these paragraphs should be struck. *See* Rule 26(a)(2)(B); *Whitewater*, 2019 U.S. Dist. LEXIS 86340, at *23; *Single Chip*, 495 F. Supp. 2d at 1075.

### B. PARAGRAPH 14

In paragraph 14, Dr. Valerdi states "[t]he methodology I used to assess PMI's trade secrets and whether there were any similarities between WTRI's Maxx simulation and PMI's trade secrets (as described in my Opening Expert Report) included the following: (a) identifying PMI's trade secrets; (b) documenting how PMI's trade secrets are implemented for purposes of project management training via simulations, flows, stories, and spreadsheets; (c) documenting the game flow and player experience of the Maxx simulation; and (d) determining whether PMI's trade secrets and the game flow and player experience in the Maxx simulation were substantially similar. I also analyzed the key events and story beats in the Maxx simulation." Valerdi Decl. at ¶ 14 (emphasis added).

The only time the Valerdi Report addresses methodology is when discussing how Dr. Valerdi identified the trade secrets. Valerdi Report at ¶ 24. The Valerdi Report is devoid of the methodology Dr. Valerdi used to determine any similarities between WTRI's Maxx simulation and the alleged trade secrets. As explained above, PMI cannot submit new evidence from Dr. Valerdi after the close of expert discovery and this testimony should be struck. *See* Rule 26(a)(2)(B); *Whitewater*, 2019 U.S. Dist. LEXIS 86340, at *23; *Single Chip*, 495 F. Supp. 2d at 1075.

Further, PMI states in its Opposition that "Valerdi examined the Maxx simulation's game design documents and played the simulation. *See* Bakewell Decl. Ex. N, Ex. 1 at 38; *id.*, Ex. 3 at 53:3-4, 11-16, 2023. This method allowed him to deduce that the Maxx simulation contained PMI's trade secrets because ***he analyzed the key events and story beats in the simulation that were created by PMI's Flows***. *See* Bakewell Decl. Ex. N. ¶ 16; *id.*, Ex. 1 ¶¶ 59-70." Opp. at 8-9 (emphasis added). PMI cites to both Exhibit 1 of the Valerdi Declaration, which is excerpts from the Valerdi Report, and to the Valerdi Declaration. *See id.* However, none of this information is contained in the Valerdi Report.

47325818.1

Accordingly, this testimony is entirely new, untested by cross examination and because it is submitted beyond the close of expert reports, this paragraph should be struck.

### C.  PARAGRAPH 15

In paragraph 15, Dr. Valerdi states "***[t]hrough the foregoing methodology***, I identified thirteen trade secrets that were a subset of the broader set of trade secrets that PMI discloses to WTRI in PMI's First Supplemental Response to Interrogatories dated August 10, 2020. I also concluded that there were multiple obvious similarities between WTRI's Maxx simulation and PMI's trade secrets." Valerdi Decl. at ¶ 15 (emphasis added).

For the same reasons as set forth above with respect to the statement regarding the methodology Dr. Valerdi used to determine any similarities between WTRI's Maxx simulation and the alleged trade secrets, Dr. Valerdi's proffered testimony in paragraph 15 is inadmissible.  *See,* Section III.B, *supra*.

## IV.  THE FINCHER DECLARATION (D.I. 301-2, EX. O)

The Declaration of Richard Fincher in Support of Defendant and Counterclaimant Project Management Institute, Inc.'s Opposition to Workplace Technologies Research, Inc.'s Motion to Exclude Project Management Institute's Experts and/or Strike Experts' Testimony and Reports, D.I. 301-2, Ex. O ("Fincher Declaration" or "Fincher Decl.")[5] should be struck in its entirety.

"To be adequate, [a] declaration must comply with the requirements of 28 U.S.C. § 1746, and must conclude with a valid signature." *West v. Reliant Fin. Corp.*, No. 20cv678-JAH-JLB, 2021 U.S. Dist. LEXIS 85346, at *8 n.1 (S.D. Cal. May 4, 2021) (citations omitted).  The Fincher Declaration does not contain a valid signature and it is therefore inadmissible.  As can be seen below, the "signature" claims to be "digitally signed" but the actual PDF does not contain any indication that the digital signature was attached (see red highlighting showing where the digital signature should be stored in an

---

[5] While PMI filed the Fincher Declaration under seal, PMI previously filed the Fincher Declaration publicly.  *See* D.I. 184-19 to 184-22.

47325818.1

1  Adobe PDF).  And to be clear for the Court, unlike an original handwritten signature, which
2  could be used to uniquely identify the person who signed the document, here, the
3  "signature" could have been signed by anyone.



Fincher Declaration at 2

18  Thus, the Fincher Declaration does not contain the individual signature of the purported
19  declarant as required by law.  That is to say that PMI did not use the required wet signature
20  to authenticate this declaration.
21      In this District, declarations e-filed must comply with Section 2(f) of this Court's
22  Electronic Case Filing Administrative Policies and Procedures Manual, which provides
23  "[i]f the original document requires the signature of a non-registered signatory, the filing
24  party must scan and electronically file the original document."  Electronic Case Filing
25  Administrative Policies and Procedures Manual, United States District Court for the Southern
26  District of California, § 2.f.2 (Apr. 12, 2022) *available at* https://www.casd.uscourts.gov/
27  _assets/pdf/attorney/Electronic%20Case%20Filing%20Procedures%20Manual.pdf   (last
28  accessed Apr. 20, 2022).   *See also Elvira v. City of Escondido*, No. 14-cv-00081-

47325818.1

BAS(NLS), 2016 U.S. Dist. LEXIS 136215, at *23 n.3 (S.D. Cal. Sept. 30, 2016) (sustaining objections and noting the declaration "does not comply with 28 U.S.C. § 1746 because it is not signed, and it also does not comply with this Court's rule regarding electronic signatures—Section 2(f) of the Court's Electronic Case Filing Administrative Policies and Procedures Manual.").

The Fincher Declaration is not properly signed and is therefore inadmissible and should be struck in its entirety.

### A. PARAGRAPH 4

In paragraph 4, Mr. Fincher states "[a]ll of the opinions that I proffered in my Expert Report are based on my analysis and ***verification of facts*** contained in documents produced in discovery for this case, including prior studies and deposition testimony, along with my extensive experience in software development and advanced education in computer science and business management. I did not attempt to offer, or actually offer any legal opinions in my Expert Report. Attached hereto as **Exhibit 2** is a true and correct copy of my Curriculum Vitae referencing my experience." Fincher Decl. at ¶ 4.

As explained above, Mr. Fincher cannot submit evidence beyond his expert report. *See* Rule 26(a)(2)(B); *Whitewater*, 2019 U.S. Dist. LEXIS 86340, at *23; *Single Chip*, 495 F. Supp. 2d at 1075. Here Mr. Fincher is trying to bolster his opinions in his expert report by stating that, in addition to reviewing and analyzing the facts, he also performed some type of independent ***verification*** of the facts. But Mr. Fincher's Expert Report, D.I. 251-4 ("Fincher Report") is devoid of any such confirmation. Further, neither the Fincher Report nor the Fincher Declaration provides any methodology or supplemental citations showing how Mr. Fincher ***verified*** the facts. Moreover, the declaration is devoid of any information identifying ***which*** facts he allegedly ***verified***. The Fincher Declaration is devoid of any evidence that would support Mr. Fincher's newly formed opinion. *See FTC*, 104 F.3d at 1171; *see Mendoza*, 2019 U.S. Dist. LEXIS 21025, at *20-21.

47325818.1

In addition, Mr. Fincher's declaration is an improper attempt to rewrite his sworn testimony.[6] *See generally Kennedy*, 952 F.2d at 266. For example, during his deposition, D.I. 251-11 ("Fincher Deposition"), Mr. Fincher testified to the following:

- **Reliance on Dr. Sanchez's testimony:** When asked whether he performed any analysis to determine whether Dr. Sanchez was correct when he quotes her, Mr. Fincher stated "I read her report and used that for the basis for my opinion" and later stated simply that he "reviewed the information that was available" to him. Fincher Deposition at 234:13-235:23. In other words, Mr. Fincher did ***not*** verify those facts.

- **Reliance on Neudesic's report:** When asked whether he performed an analysis to determine whether or not the code was terribly inefficient, Mr. Fincher stated "I did not perform direct analysis. I relied on the analysis that was performed by Neudesic, who was outside expert in this area." *Id.* at 256:15-20. In response to another question, Mr. Fincher stated "I performed an analysis by relying on the Neudesic reports which addressed that specific section or specific piece of information." *Id.* at 256:21-257:1. Later, when asked if he attempted to get a second opinion to determine if the time estimates to repair the allegedly deficient product were accurate and correct, Mr. Fincher responded "No, I did not. I relied on the professionalism of Neudesic and the fact that PMI had used them to provide this level of information" and later stated "[s]o here I rely and trust that Neudesic did the correct analysis, yes." *Id.* at 313:12-315:15. In other words, Mr. Fincher did ***not*** verify those facts.

Clearly, Mr. Fincher did not verify the facts referred to above and cannot now state he did. Accordingly, paragraph 4 of Mr. Fincher's report should be struck.

---

[6] Mr. Fincher did not submit any errata to his deposition. The transcript remains the operative sworn testimony in this matter.

47325818.1

| | | |
|---|---|---|
| 1 | Dated: April 26, 2022 | Respectfully submitted, |
| 2 | | **EVERSHEDS SUTHERLAND (US) LLP** |

*/s/ Jose L. Patiño*
JOSE L. PATIÑO, CA Bar No. 149568
    JosePatino@eversheds-sutherland.com
NICOLA A. PISANO, CA Bar No. 151282
    NicolaPisano@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
    ScottPenner@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
    JustinGray@eversheds-sutherland.com
REGIS C. WORLEY, JR., CA Bar No. 234401
    RegisWorley@eversheds-sutherland.com
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:     858.252.6502
FACSIMILE:      858.252.6503

Attorneys for Plaintiff and Counter-Defendant
WORKPLACE TECHNOLOGIES RESEARCH, INC.

47325818.1