JOSE L. PATIÑO, CA Bar No. 149568
  JosePatino@eversheds-sutherland.com
NICOLA A. PISANO, CA Bar No. 151282
  NicolaPisano@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
  ScottPenner@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
  JustinGray@eversheds-sutherland.com
REGIS C. WORLEY, JR., CA Bar No. 234401
  RegisWorley@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:   858.252.6502
FACSIMILE:   858.252.6503

Attorneys for Plaintiff and Counter-Defendant
WORKPLACE TECHNOLOGIES RESEARCH, INC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORKPLACE TECHNOLOGIES RESEARCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> PROJECT MANAGEMENT INSTITUTE, INC. <br><br> Defendant. <br><br> ———————————————— <br><br> PROJECT MANAGEMENT INSTITUTE, INC. <br><br> Counterclaimant, <br><br> v. <br><br> WORKPLACE TECHNOLOGIES RESEARCH, INC.; and DOES 1-15 inclusive, <br><br> Counterdefendants. | Case No. 3:18-cv-01927-JO-MSB <br><br> **WORKPLACE TECHNOLOGIES RESEARCH, INC.'S RESPONSE TO PROJECT MANAGEMENT INSTITUTE, INC.'S EVIDENTIARY OBJECTIONS TO THE PATIÑO DECLARATION** <br><br> Judge: Hon. Jinsook Ohta <br> Date: May 11, 2022 <br> Time: 9:00 a.m. <br> Place: Courtroom 4C |

47325756.1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................1

II. OBJECTION NOS. 1-6 (EXHIBIT 7) SHOULD BE OVERRULED. .................1

III. OBJECTION NO. 7 (EXHIBIT 8) SHOULD BE OVERRULED. ......................3

IV. OBJECTION NO. 8 (EXHIBIT 10) SHOULD BE OVERRULED. ....................5

V. OBJECTION NO. 9 (EXHIBIT 12) SHOULD BE OVERRULED. ....................9

VI. OBJECTION NO. 10 (EXHIBIT 13) SHOULD BE OVERRULED. .................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allegro Ventures, Inc. v. Almquist*,
  No. 11-cv-2009-L (WVG), 2014 U.S. Dist. LEXIS 64008
  (S.D. Cal. May 8, 2014) .............................................................................. 2

*Hangarter v. Provident Life & Accident Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004) ....................................................................... 2

*Maxwell v. Cate*,
  No. 10cv1697-MMA (RBB), 2012 U.S. Dist. LEXIS 55896
  (S.D. Cal. Apr. 20, 2012), ............................................................................ 4

*SEC v. Retail Pro, Inc.*,
  No. 08cv1620-WQH-RBB, 2011 U.S. Dist. LEXIS 13095
  (S.D. Cal. Feb. 10, 2011) ............................................................................. 6

*United States v. Asiru*,
  222 F. App'x 584 (9th Cir. 2007) ................................................................ 5

**Other Authorities**

CACI No. 220 ...................................................................................................... 6

Fed. R. Civ. P. 26(a)(2)(B) ............................................................................. 3, 5

Fed. R. Evid. 403 ........................................................................................ 3, 7, 11

Fed. R. Evid. 702 ............................................................................................ 1, 3

I. **INTRODUCTION**

Plaintiff and Counter-Defendant Workplace Technologies Research, Inc. ("WTRI") hereby responds to Defendant and Counter-Claimant Project Management Institute Inc.'s ("PMI") Evidentiary Objections to Declaration of Jose L. Patiño in Support of Workplace Technologies Research, Inc.'s Motion to Exclude PMI's Experts And/Or Strike PMI's Experts' Testimony and Reports ("Objections"). D.I. 301-4.

None of PMI's ten objections have merit. This Court should deny them all.

II. **OBJECTION NOS. 1-6 (EXHIBIT 7) SHOULD BE OVERRULED.**

The first six objections that PMI raises relate to paragraphs 127-132 of Dr. Raisinghani's Opening Report. Objections at 1-6 (citing D.I. 251-8 ("Raisinghani Report")). According to PMI, these paragraphs violate Federal Rule of Evidence 702 and are improper opinion because the evidence "contains improper expert opinion because it needlessly restates the Development Agreement's terms." *See, e.g.,* Objections at 2. PMI then objects under Federal Rules of Evidence 402 and 403 for the same reason as it objects under Federal Rule of Evidence 702. *See, e.g., id.* PMI also objects to paragraphs 127-129 of Dr. Raisinghani's Opening Report as violating the Best Evidence rule. *See, e.g., id.* at 2-3.

As an initial matter, it is unclear why PMI seeks to exclude paragraphs 127-132 of Dr. Raisinghani's report. WTRI only cites to these paragraphs to show that Dr. Raisinghani, in performing an analysis of whether Maxx was used within the Field of Use, provided background information on the Field of Use clause from the contract itself. *See* WTRI's Revised Motion to Exclude PMI's Experts And/Or Strike PMI's Experts' Testimony and Reports, D.I. 249-1 at 22 ("Moreover, any analysis about the field in which Maxx operates necessarily would include an analysis of the project management field (as Dr. Raisinghani explains, Ex. 7 at ¶¶ 126-132)."). WTRI's Motion merely explained that for an expert (like Dr. Valerdi) to opine on whether something (like Maxx) meets a contractual limitation (like the Field of Use), it behooves that expert to at least reference and address the contractual limitation. Dr. Valerdi did not; Dr. Raisinghani did. The

47325756.1

purpose of WTRI citing to those paragraphs of Dr. Raisinghani's expert report was to support the proposition that Dr. Raisinghani reviewed the specific contractual limitations at issue. *See* Raisinghani Report at ¶¶ 127-132.

In any event, Dr. Raisinghani's citation to the contract terms and explanation of how he reached his opinions are still permissible. The Ninth Circuit has made clear that "a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible. Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (internal citation omitted); *see also Allegro Ventures, Inc. v. Almquist*, No. 11-cv-2009-L (WVG), 2014 U.S. Dist. LEXIS 64008, at *11 (S.D. Cal. May 8, 2014) (expert "opinion based on the application of facts in this case to the appropriate law does not invade the province of the jury"). Here, paragraphs 127 and 129 of Dr. Raisinghani's report are nothing more than quotations from the Development Agreement. Certainly at trial, there would be no objection to Dr. Raisinghani showing the jury the sections of the contract he relied upon as part of his analysis and there is likewise no basis for their exclusion here. There is no "Best Evidence Rule" issue here (or for paragraph 128) because the testimony is not being used to prove the contents of a writing, but instead to show what Dr. Raisinghani reviewed. Paragraphs 128 and 130 set forth the methodology that Dr. Raisinghani used in performing his analysis. Again, there is simply nothing objectionable to an expert explaining the methodology he used. Certainly PMI is free to challenge his methodology but exclusion of those paragraphs would be inappropriate. Paragraph 131 contains quotes from interrelated portions of the contract pulled together into a single coherent framework. Paragraph 131 is therefore a combination of the document itself and Dr. Raisinghani's methodology showing how he pulled together the disparate contractual clauses to form the foundation for his analysis. Finally, paragraph 132 merely explains Dr. Raisinghani's methodology whereby he opines "to determine whether any WTRI product violates the Exclusivity Clause it is necessary to first determine the scope of the Field of

47325756.1

Use." Raisinghani Report at ¶ 132. Dr. Raisinghani then applies the principles, facts, and his identified methodology in the subsequent paragraphs to reach his ultimate conclusions.

Put simply, paragraphs 127-132 of Dr. Raisinghani's report provide the factual background and methodological approach that Dr. Raisinghani used when forming his opinions related to the Field of Use clause. This is the precise type of testimony that demonstrates reliability under Federal Rule of Evidence 702 and fully complies with Fed. R. Civ. P. 26(a)(2)(B) ("requiring a complete statement of all opinions the witness will express *and the basis and reasons for them*" including "*the facts or data* considered by the witness in forming them." (emphasis added)). As PMI's objection under Federal Rule of Evidence 702 fails, PMI's objection under Federal Rules of Evidence 402 and 403 similarly fails. PMI's Objections 1-6 should be overruled.

### III.   **OBJECTION NO. 7 (EXHIBIT 8) SHOULD BE OVERRULED.**

PMI alleges that four questions from Mr. Aldrich's deposition, D.I. 251-9 ("Aldrich Deposition"), should be excluded as irrelevant, confusing, and a waste of time under Federal Rule of Evidence 403. Objections at 9-10. In addition, PMI claims that WTRI mischaracterizes Mr. Aldrich's testimony and oddly criticizes WTRI's counsel for questions that were not asked (though PMI's counsel did not follow up by asking those same questions). *Id.*

To provide context for WTRI's questions, it is helpful to include an excerpt from the exhibit that was the subject of Mr. Aldrich's testimony:

> **B. Scope of Work**
>
> I have been asked by Project Management Institute, Inc. ("PMI") to provide a rebuttal opinion to the Opening Expert Report of Dr. Mahesh Raisinghani Regarding Field of Use Restriction, proffered by Workplace Technologies Research, Inc. ("WTRI").
>
> I have also been asked to opine on: (1) the development of virtual worlds and game design; (2) the scope of the field of use under the contractual agreements between the parties, and the resulting project management, program management, and portfolio management; (3) WTRI's product, the Maxx simulation, and whether that product duplicates or is substantially similar to the PAL project; (4) the field of use that the Maxx simulation is in; and (5) the development and usage history of WTRI's event generator and scenario files.

D.I. 251-2 at 7 (highlighting added).  Additionally, Mr. Aldrich testified that the first sentence in the scope of work indicated he was issuing a rebuttal opinion to Dr. Raisinghani's opening expert report, whereas the second paragraph identified "additional items" he was asked to opine on.  D.I. 251-9 at 25:22-26:9.

In PMI's objections to the four questions, PMI complains that WTRI's counsel "did not actually ask if Aldrich was responding to Raisinghani's Opening Expert Report for the sections referenced."  Objections at 9.  In light of Mr. Aldrich's prior testimony that the second sentence of the Scope of Work identified "additional items" he was asked to opine on (D.I. 251-9 at 25:22-26:9), and that those items were the subject of WTRI's questions, the record appears clear on this issue.  To the extent PMI's counsel believed otherwise, it could have asked clarifying questions during its own examination.  It is telling that PMI did not do so.  It is also telling that PMI does not even attempt to offer a declaration from Mr. Aldrich explaining that Mr. Aldrich believed these items were rebuttal to Dr. Raisinghani.  In fact, Mr. Aldrich's declaration confirms that he was retained by PMI "to provide a Rebuttal Report to the Opening Expert Report of Dr. Mahesh Raisinghani Regarding Field of Use Restriction" and secondarily that "he was also asked by PMI to opine on" five different areas.  *See* Declaration of Clark Aldrich (D.I. 301-3 at Ex. M) at ¶¶ 2-3.

PMI also objects on the basis that WTRI's questions are vague and/or misstate the witness's testimony and the document at issue.  PMI's objection is puzzling, as further review reveals no such issues.  For the first question (D.I. 251-9 at 28:21-22), the witness did not provide an answer and instead asked for the question to be repeated, so it is unclear what testimony PMI is objecting to.  *Maxwell v. Cate*, No. 10cv1697-MMA (RBB), 2012 U.S. Dist. LEXIS 55896, at *5 (S.D. Cal. Apr. 20, 2012) ("counsel's questions are not evidence and … unanswered questions were insignificant").  The second question (D.I. 251-9 at 29:5-8) references the second paragraph in the scope of work and asks about the witness's prior testimony.  D.I. 251-9 at 29:5-18.  In the event that question misstated the document or prior testimony (it did not), the witness was being provided an opportunity to

47325756.1

offer corrections, but instead the witness confirmed that he "was asked to consider these issues" by counsel. *Id.* It is therefore difficult to understand what portion of the witness's prior testimony PMI believes was misstated.

Likewise, the third question (D.I. 251-9 at 29:21-24) did include a quote from Mr. Aldrich's report, but a comparison of the question to that report again fails to identify any misstatement. *Compare* D.I. 251-9 at 29:21-24 ("And number 4 says, 'the field of use' – well, actually, number 3, '***WTRI's product, the Maxx simulation, and whether that product duplicates or is substantially similar to the PAL project***.' That is something that counsel asked you to consider?") *with* D.I. 251-2 at 7 ("(3) ***WTRI's product, the Maxx simulation, and whether that product duplicates or is substantially similar to the PAL project***"). The fourth question (D.I. 251-9 at 31:11-12, 20) did not include any characterizations of testimony or documents, so it is unclear the basis of PMI's argument that this question misstates the record.

Each of PMI's objections to Mr. Aldrich's deposition testimony should be overruled.

## IV. <u>OBJECTION NO. 8 (EXHIBIT 10) SHOULD BE OVERRULED.</u>

PMI alleges that twenty-four questions from Mr. Fincher's deposition, D.I. 251-11 ("Fincher Deposition"), should be excluded as irrelevant, confusing, and a waste of time under Federal Rule of Evidence 403. Objections at 10-13. In addition, PMI claims, somewhat puzzlingly, that the questions are objectionable because they include "hypotheticals that call for speculation" and they are "outside the scope of Fincher's experience and designation as an expert." *Id.* at 11. Moreover, PMI provides no explanation as to why any of the questions would have been vague or ambiguous.

To begin, PMI asserts that Mr. Fincher's failure to cite the materials he relied upon "go to an expert opinion's credibility – not admissibility." Objections at 10. Not true. An expert's compliance with Rule 26(a)(2) goes to the expert's admissibility. *See United States v. Asiru*, 222 F. App'x 584, 587 (9th Cir. 2007); Fed. R. Civ. P. 26(a)(2)(B)(ii) (requiring the expert's report contain "the facts or data considered by the witness" in reaching the opinions).

47325756.1

PMI does not explain which of the twenty-four questions constitute improper hypotheticals or which are outside the scope of Mr. Fincher's expertise in its Objections. Nevertheless, as an overarching matter, experts are allowed to be asked hypothetical questions. *See SEC v. Retail Pro, Inc.*, No. 08cv1620-WQH-RBB, 2011 U.S. Dist. LEXIS 13095, at *7-8 (S.D. Cal. Feb. 10, 2011) ("Provided any hypothetical posed to an expert witness is supported by evidence admitted at trial and is otherwise proper, the expert's opinion testimony is admissible. To the extent Plaintiff challenges the correctness or one-sided nature of the underlying facts (and the evidence supporting them), Plaintiff's 'recourse is not exclusion of the testimony, but, rather, refutation of it by cross-examination and by the testimony of [his] own expert witnesses.' *Humetrix v. Gemplus*, 268 F.3d 910, 919 (9th Cir. 2001)."); *see also* CACI No. 220, *available at* https://www.justia.com/trials-litigation/docs/caci/200/220/ (last accessed Apr. 20, 2022) ("The law allows expert witnesses to be asked questions that are based on assumed facts. These are sometimes called 'hypothetical questions.' In determining the weight to give to the expert's opinion that is based on the assumed facts, you should consider whether the assumed facts are true.") As PMI does not explain how any of the hypotheticals are improper, any of its objections relying on that basis should be overruled.

Moreover, some of PMI's objections are hard to understand given that they go to the heart of determining what Mr. Fincher did and did not rely upon to reach his opinions. PMI's first set of objections relate to the testimony regarding Mr. Fincher's failure to provide the factual basis for his opinions by failing to cite the various depositions that he allegedly relied on. Fincher Deposition 51:19-55:14; Objections at 10-11. PMI objects to a handful of questions in this range though the testimony makes clear that Mr. Fincher clearly understood the questions. A review of these questions and answers confirm they were not misstatements of any prior testimony (to the contrary they were an effort to understand what Mr. Fincher did and did not rely on), and were not irrelevant or prejudicial because they go to what Mr. Fincher relied on for his expert opinions. Each of the questions in PMI's Objections in this range should therefore be overruled.

47325756.1

The next set of questions PMI objects to relate to Mr. Fincher's opinions relating to Section 2.3 of the Development Agreement. Fincher Deposition at 319:6-328:4. During this portion of Mr. Fincher's deposition, he testifies that his opinions were based on the first few sentences of Section 2.3 but that he did not read the rest of the section when forming his opinion. *Id.*; Objections at 11. PMI objects to the question at 326:9-10, but that question was withdrawn. PMI then objects to the question at 325:8, which merely inquiries: "How did that [the third sentence of section 2.3] impact your opinion?" Fincher Deposition at 324:23-325:8. There is nothing objectionable about asking an expert witness the role the factual record played in the opinions the expert reached. Mr. Fincher had previously testified that he based his opinion on the first two sentences of Section 2.3. *Id.* at 321:22-324:22. Thus, it is perfectly reasonable testimony to ask if he also considered the third sentence of the same section in forming his opinion. While PMI may not like the response, the question is perfectly permissible. The same is true of the question at 322:17-20 where Mr. Fincher is asked "[w]hat about any part of the rest of section 2.3; did that form any basis of your opinion." *Id.* at 322:17-20. Mr. Fincher is not being asked for a ***legal opinion*** as PMI's counsel stated on the record. He is not being asked to interpret the contract, instead the question asks him to explain the basis for his opinions and to what extent ***he relied on*** the language in the contract. Each of the questions PMI objects to in this section are properly framed to elicit the scope of the facts Mr. Fincher relied upon in forming his opinion; testimony that is undoubtedly proper.

The next set of questions to which PMI objects relate to Mr. Fincher's opinion regarding a third-party document that purported to identify how much time it would take to fix coding issues the third-party allegedly identified in the PAL code. Fincher Deposition at 293:2-316:8. PMI objects to seven questions in this range. Objections at 11-12. But PMI's objections are meritless. For example, the first question is "If, for example, hypothetically, 95 percent of all of this remediation effort had nothing to do with WTRI's code, wouldn't that be something you should have considered?" Fincher Deposition at 307:5-8. PMI objects to this question as "vague and an improper hypothetical." *Id.* at

47325756.1

307:11-13. As discussed above, it is perfectly permissible to ask an expert a hypothetical. Here, there is sufficient evidence in the record that nearly all the remediation work for the web portal code was PMI's responsibility. Mr. Mancus, PMI's corporate representative, testified that it was PMI and Neudesic that were nearly entirely responsible for the web portal. D.I. 251-17 at 74:5-76:2, 99:6-102:22. Thus, the hypothetical is grounded in record facts and permissible.

PMI's objection to the range of questions and answers on page 310 of the deposition transcript are also inappropriate. Mr. Fincher offers opinions that PMI was right to cancel the contract because the code was of poor quality. Thus, it is perfectly reasonable to ask if Mr. Fincher performed an analysis to determine of who was at fault for the allegedly bad code. If PMI was at fault then it would not be an adequate basis for PMI to cancel the contract. Thus, Mr. Fincher is asked whether it mattered to his opinion "who was responsible for the poor quality of the code" and to confirm that the document he relied on had "nothing to do with who was at fault for the code being poor quality." Fincher Deposition at 310:1-3, 310:11-13. Because understanding the scope of Mr. Fincher's expert analysis is a proper topic of cross examination, asking him "did you perform any analysis to determine how much of the allegedly bad code was written by WTRI?" was also perfectly permissible.

PMI's objection to the question on page 312 is equally puzzling. Mr. Fincher relies on a third-party created document to determine his estimate of how many hours it would take to fix certain code deficiencies. To do so, he simply adds up the numbers that were in the document created by Neudesic. Thus, it is perfectly reasonable to ask him "did you do anything to confirm that that was the correct amount of hours, or did you simply take Neudesic's word for it." *Id*. at 312:11-15. Mr. Fincher justifies relying on Neudesic's numbers because he considered Neudesic to be experts. *Id.* at 312:19-313:8. Therefore, it was also permissible to ask Mr. Fincher whether he "even knew who put together this analysis [the Neudesic document]?" In other words, if Mr. Fincher intended to rely on the fact that the authors were apparently "experts," it was appropriate to test the foundational

47325756.1

basis for his opinion. That he did not know the names of the authors or whether they would in fact qualify as "experts" is relevant information. PMI's objections to the questions on 315 and 316 of the deposition transcript are permissible for the same reason. *See* Objections at 12.

PMI then objects to a series of questions relating to Neudesic. Objections at 12-13. PMI includes in this list some of the objections already discussed above (including the objection at page 307 of the deposition transcript relating to the hypothetical regarding 95% of the web portal code being written by Neudesic). Each of the questions seeks Mr. Fincher's understanding of the evidence on which his opinions were based. For example, Mr. Fincher was asked "Is it possible that Neudesic was hired to work on the portal, which was PMI's responsibility, not WTRI's?" Fincher Deposition at 93:10-12. This question attempts to elicit from Mr. Fincher his understanding of the relationship of the parties and who was responsible for what work. Because Mr. Fincher opines that the code was of poor quality, having his understanding of who was responsible for what code is obviously relevant. The question does not call for speculation, it calls for his understanding of the relationship of the parties and is perfectly admissible. Finally, the hypothetical question asking Mr. Fincher whether he should have considered the cost to PMI of breaching the agreement when determining if it made good business sense to cancel the contract is also permissible. *Id.* at 101:13-20. While the question presented an extreme situation, it was designed to show that Mr. Fincher failed to consider critical information as part of his analysis rendering his methodology and opinion unsound.

Each of PMI's objections to Mr. Fincher's deposition testimony should be overruled.

## V.     **OBJECTION NO. 9 (EXHIBIT 12) SHOULD BE OVERRULED.**

PMI alleges that seventeen citation ranges from Mr. Stepan's deposition, D.I. 251-13 ("Stepan Deposition"), should be excluded as irrelevant, confusing, and a waste of time under Federal Rule of Evidence 403. Objections at 13-16. In addition, PMI claims that the questions are objectionable because they include "hypotheticals that call for speculation" and they are "outside the scope of Stepan's experience and designation as an

47325756.1

expert." *Id.* at 14.  Finally, PMI claims the questions are objectionable on the basis of the Best Evidence Rule.  PMI does not indicate which of the seventeen deposition questions are improper hypotheticals, which are outside the scope of Mr. Stepan's experience and designation as an expert, or which violate the Best Evidence Rule.  Moreover, PMI provides no explanation as to why any of the questions would have been vague or ambiguous.  Nevertheless, as discussed below, each of the objections should be overruled.

The first set of questions, Objections at 14, that PMI objects to relate to Mr. Stepan's opinion that WTRI's deliverable was "seriously deficient."  Stepan Deposition at 65:14-23.  To reach that opinion, Mr. Stepan explained that his methodology included "look[ing] through the -- I determined which acceptance criterias weren't met, and based on my -- *my experience* determined that it was seriously deficient *based on the number and the type of acceptance criteria that were not met*."  *Id.* at 66:8-12 (emphasis added).  Thus, to understand how he used his "experience" and the "type of acceptance" criteria, Mr. Stepan was asked a series of question to determine his methodological approach including asking if he used "some type of formula," whether any of the "acceptance criteria are more or less important than any other acceptance criteria," and if his "report ascribed any level of importance to the acceptance criteria that *were* met."  *Id.* at 66:13-16, 66:20-21, 67:22-25, 69:5-7.  Each of these questions goes straight to the heart of the approach, or more accurately the lack thereof, Mr. Stepan took to reach his conclusion that WTRI's deliverable was "seriously deficient."  As such, each question is relevant, not misleading, did not call for any hypothetical analysis or relate to testimony outside the scope of his experiences or report.  PMI's objections to these questions should be overruled.

The next set of questions relates to Mr. Stepan's opinion that PMI was justified in cancelling the project because the project was "significantly behind schedule."  *Id.* at 69:19-23.  Thus, to understand what metrics Mr. Stepan used to determine that the project was "significantly behind schedule," Mr. Stepan was asked whether he had looked to see if there were any change requests that would have changed the dates.  *Id.* at 72:14-17.  Moreover, Mr. Stepan opined that it was WTRI's fault that the schedule had been missed.

47325756.1

*See* D.I. 251-6 ("Stepan Report") at 23 (heading claiming "WTRI failed to deliver a functionally compliant PAL product within the timelines agreed…."). Thus, it was perfectly permissible to ask Mr. Stepan if he performed any analysis as to "who was at fault for any of the alleged slippage" or whether he performed "any analysis to determine what percentage of the schedule slip was due to WTRI." Stepan Deposition at 72:8-14, 78:11-13. PMI seems to object to these questions because they are beyond the scope of Mr. Stepan's report. But these questions are designed to determine the contours of his analysis and report. Mr. Stepan wants to tell the jury that it was WTRI that failed to deliver the product on time; the jury is entitled to hear that his methodology for reaching such a conclusion did not even look to see who was at fault for the schedule slippage or how much of the delay was due to WTRI. These questions go directly to Mr. Stepan's methodology, or more precisely again the lack thereof, in reaching his conclusion. The questions are well within the scope of Mr. Stepan's report, are relevant, do not engage in any hypotheticals, and are not prejudicial or vague in any way. PMI's objections to these questions should also be overruled.

The next set of questions relate to Mr. Stepan's opinion that WTRI "failed to deliver a PAL product that met the mandatory acceptance criteria…" Stepan Report at 19. Because Mr. Stepan offers an opinion that it was WTRI that failed to deliver a product that met the acceptance criteria by the end of Alpha-5, it was reasonable to ask Mr. Stepan whether he had considered that some of the acceptance criteria were not supposed to have been met until the later Beta or Charlie phases. Stepan Deposition at 223:9-224:23. For example, if Mr. Stepan were to claim that the project was incomplete at the end of Alpha-5 because it did not meet ten of the acceptance criteria, it would be important to know if those ten acceptance criteria were even contemplated as being completed by the end of Alpha-5. Similarly, it would be important to know who was responsible for each of the allegedly missing acceptance criteria. For example, if the acceptance criteria that Mr. Stepan alleges are missing were the responsibility of PMI, then it would certainly cut against his opinion that "WTRI failed to deliver a PAL product that met the mandatory

acceptance criteria…" The question at 261:16-17[1] goes directly to this point. The same rationale applies to the question at 126:9-11, *see* Objections at 15, which asks if Mr. Stepan "perform[ed] an analysis to determine if the acceptance criteria required that scaling be met at the end of the Alpha phase." These question address Mr. Stepan's methodology in reaching his overall conclusion and what facts he considered. Again, these questions are relevant, not vague, do not pose hypotheticals and are within the scope of Mr. Stepan's opinions. PMI's objection should be overruled.

The next set of questions PMI objects to relate to Mr. Stepan's purported analysis of the source code in this case. For example, Mr. Stepan is asked to confirm that he "did not identify any files to be printed out from either the WTRI source code computer or the PMI source code computer." Stepan Deposition at 58:1-8. While PMI objected to this question as vague, Mr. Stepan plainly understood the question and confirmed that despite any review he performed on any source code computer, he did not identify any files to be printed and therefore produced in this litigation. He was also asked to confirm that he did not cite to any specific files throughout his report. *Id.* at 55:6-10. Again, neither of these questions is objectionable and PMI's objections should be overruled.

PMI next objects to a series of questions relating to the KMS Report. Objections at 14-15. *See* Stepan Report at 9, 10, 12, 14, 15, 22 (each citing to PMI00017273 ("KMS Report")). Mr. Stepan relies on the KMS Report to explain that the source code was of poor quality. *See id.* The KMS Report was dated June 2016. Stepan Deposition at 88:22-89:2. But PMI rejected Alpha-5 in December 2016. Therefore, it was reasonable, and relevant, to ask Mr. Stepan whether he attempted to confirm if the alleged problematic code that KMS identified in the June 2016 report was still in the code as of December 2016 or whether the problems had been fixed. Obviously, if the problems had been fixed, then the problems would not form the basis for alleging the code was of poor quality in December 2016 when PMI cancelled the project. Thus, it was reasonable to ask Mr. Stepan "if any

---

[1] PMI's Objections list this as 161:16-17 but the quote comes from 261:16-17. Objections at 14.

47325756.1

of the alleged issues that KMS identified were still present in the code in December when PMI rejected" the Alpha code. Stepan Deposition at 90:10-12. It was also permissible to ask Mr. Stepan to review the source code and confirm that the code on the computer "doesn't match the code in the KMS report." *Id.* at 199:7-8, 13-14. PMI's objections to these questions is that it "misstates the document." *See id.* at 199:9-10, 16. But Mr. Stepan is asked to confirm whether the code on the source code computer matches the problematic code identified in the KMS report. There is no "Best Evidence Rule" issue because the testimony is not being used to prove the contents of a writing, but to show that in Mr. Stepan's expert source code analytic opinion, the source code on the source code computer was different than what was in the KMS Report he relied upon. The same is true of the testimony at 310:21-24, which asks "So again, this is another example that we are looking at where the issue has been resolved that was identified in the KMS report correct?" These types of questions are plainly proper and PMI's objection should be overruled.

PMI objects to the question at 125:18-21 as seeking improper legal opinion. The question asks Mr. Stepan if he "saw anything in the development agreement that indicated that Alpha code had to able to scale." *See* Objections at 15-16. But this question is not calling for a legal opinion. Mr. Stepan repeatedly testified that the 79 acceptance criteria from the Development Agreement were mandatory and opines that the failure to have all 79 completed by the end of the Alpha phase was a basis for PMI to reject the code. Thus, asking Mr. Stepan's understanding of why the criteria had to be completed by the end of Alpha is relevant, and has nothing to do with a legal conclusion. Instead it seeks the factual basis on which Mr. Stepan based his opinions.

The Court should overrule each of PMI's objections to Mr. Stepan's testimony in support of WTRI's *Daubert* motion.

## VI.  OBJECTION NO. 10 (EXHIBIT 13) SHOULD BE OVERRULED.

PMI alleges that eight citation ranges from Dr. Valerdi's deposition, D.I. 251-14 ("Valerdi Deposition")), should be excluded as irrelevant, confusing, and a waste of time under Federal Rule of Evidence 403. Objections at 16-17. In addition, PMI claims that

the questions are objectionable because they include "hypotheticals that call for speculation." *Id.* at 17. Finally, PMI claims that "WTRI sought to illicit testimony outside the scope of Valerdi's experience and designation as an expert. Such testimony is irrelevant." *Id.* PMI does not indicate which of the deposition questions are improper hypotheticals, which are outside the scope of Dr. Valerdi's experience and designation as an expert, or which are irrelevant, confusing, or prejudicial. Moreover, PMI provides no explanation as to why any of the questions would have been vague or ambiguous. Nevertheless, as discussed below, each of the objections should be overruled.

The first objection PMI raises is as to the question at 244:19-21. According to the transcript, PMI thought the question was "vague." Valerdi Deposition at 244:22. But Dr. Valerdi provided a 23 line answer to the question including specifically responding in part "And later in the report, I provide some specific snapshot examples. It's not exhaustive, but I provide some snapshot examples of where either content from spreadsheets or flows are apparent in the Maxx simulation." *Id.* at 244:23-245:20. Dr. Valerdi's response demonstrates he understood the question and that it was not vague. The same is true of the second question PMI identifies at 245:22-25. *See id.* at 245:22-246:7. PMI also objected as "vague" to the question in PMI's fourth citation at 93:24-25, which Dr. Valerdi also answered. *See id.* at 93:24-94:3. Dr. Valerdi was asked "Did you cite any Excel documents from WTRI that would work in tandem with a flow?" and Dr. Valerdi responded "I don't remember anything along those lines." *Id.* at 93:24-94:3. Again, it is clear that Dr. Valerdi understood the question. And PMI also objected to the question at 108:13-18 as "vague and ambiguous" but Dr. Valerdi responded to that as well. *See id.* at 108:13-109:22. Dr. Valerdi was asked, "Does [the trade secret] require both a spreadsheet and a flow in order for it to qualify as a trade secret of PMI's?" and Dr. Valerdi responded: "I think it's an excellent question, question. I hadn't considered that." *Id.* at 108:13-22. Far from being "vague and ambiguous," Dr. Valerdi actually commented that it was "an excellent question" and confirmed that he had not even considered it as part of his analysis. In light of Dr. Valerdi's responses to these questions, the common sense predicate to the scope and

foundation of Dr. Valerdi's report, and PMI's failure to explain why the questions were vague or ambiguous, PMI's objections should be overruled.

The next set of objections PMI raises relates to the questions on page 101. In the transcript, PMI objects to the questions as misstating the prior testimony. *See id.* at 101:8-102:2. PMI raised the same objection during Dr. Valerdi's deposition to the question at page 107:5-7. But Dr. Valerdi again answered each of these questions and PMI provides no explanation in its brief about how any of those questions misstated the previous testimony. Dr. Valerdi had just testified: "I think what's important is that the trade secrets and Trade Secret 12, which is what we're seeing here, is a great example … that it includes both a spreadsheet and a flow." *Id.* at 106:23-107:4. The follow up question did not misstate his testimony, it sought clarification: "So the trade secret has to include a spreadsheet and a flow; is that correct? At least for Number 12?" *Id.* at 107:5-7. And Dr. Valerdi did indeed confirm that the question accurately reflected his opinion by responding: "Basically 12 is -- is a good example of something that has complementary information in the spreadsheets and the flow." *Id.* at 107:10-12. Far from misstating the previous testimony, the question accurately reflected Dr. Valerdi's previous testimony and sought further clarification, which Dr. Valerdi provided. PMI's objections to these questions should be overruled for the same reason.

PMI also objects to the question at 186:4-9 where Dr. Valerdi is asked his opinion on whether it would violate the trade secret if the spreadsheet was not used in tandem with the flows as described in PMI's § 2019.210 disclosure. On the record, PMI objected to the question as vague, ambiguous, misstating prior testimony, and assuming facts not in evidence and an improper hypothetical. But none of these objections is warranted. PMI's § 2019.210 disclosure was clear that the alleged trade secrets was the use of flows and spreadsheets in tandem. *See* D.I. 251-15 at 5. Moreover, there is evidence in the record that WTRI had previously used spreadsheets and flows charts that were not linked together. *See, e.g.,* D.I. 192-2 ¶¶ 168, 171-172. Thus, the question is not an improper hypothetical as there is sufficient evidence to support the question. PMI's objections are meritless and

47325756.1

should be overruled.

PMI's final objection relates to the question at 186:23-24 where Dr. Valerdi, PMI's expert on whether WTRI misappropriated PMI's alleged trade secrets, is asked a hypothetical to which PMI did not object, and is then asked "And would that still violate PMI's alleged trade secret?" PMI objected to the question as calling for a legal conclusion, but Dr. Valerdi was plainly not asked to provide a "legal conclusion." He was asked to apply his methodology to a hypothetical and determine whether under those facts, his previous opinion would change. *See* Valerdi Deposition at 186:20-187:8. That Dr. Valerdi's answer was not to PMI's liking is no grounds to strike the evidence. PMI's objection to this final question should be overruled as well.

Dated:  April 26, 2022

Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

*/s/ Jose L. Patiño*
JOSE L. PATIÑO, CA Bar No. 149568
  JosePatino@eversheds-sutherland.com
NICOLA A. PISANO, CA Bar No. 151282
  NicolaPisano@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
  ScottPenner@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
  JustinGray@eversheds-sutherland.com
REGIS C. WORLEY, JR., CA Bar No. 234401
  RegisWorley@eversheds-sutherland.com
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:    858.252.6502
FACSIMILE:    858.252.6503

Attorneys for Plaintiff and Counter-Defendant
WORKPLACE TECHNOLOGIES RESEARCH, INC.

47325756.1