JOSE L. PATIÑO, CA Bar No. 149568
   JosePatino@eversheds-sutherland.com
NICOLA A. PISANO, CA Bar No. 151282
   NicolaPisano@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
   ScottPenner@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
   JustinGray@eversheds-sutherland.com
REGIS WORLEY, Jr., CA Bar No. 234401
   RegisWorley@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA 92130
TELEPHONE: 858.252.6502
FACSIMILE: 858.252.6503

Attorneys for Plaintiff and Counter-Defendant
WORKPLACE TECHNOLOGIES RESEARCH, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORKPLACE TECHNOLOGIES RESEARCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> PROJECT MANAGEMENT INSTITUTE, INC. <br><br> Defendant. | Case No. 3:18-cv-01927-JO-MSB <br><br> **REPLY BRIEF IN SUPPORT OF WORKPLACE TECHNOLOGIES RESEARCH, INC.'S MOTIONS *IN LIMINE*** <br><br> Judge: Hon. Jinsook Ohta <br> Date: May 11, 2022 <br> Time: 9:00 a.m. <br> Place: Courtroom 4C |
| PROJECT MANAGEMENT INSTITUTE, INC. <br><br> Counterclaimant, <br><br> v. <br><br> WORKPLACE TECHNOLOGIES RESEARCH, INC.; and DOES 1-15 inclusive, <br><br> Counterdefendants. | |

18cv1927

47333374.5

PMI's Opposition to WTRI's Motions *in Limine* (D.I. 298, "Opposition" or "Opp.") shows that PMI feels unconstrained by its judicial admissions, the Court's Summary Judgment Order, or any other rule of law. The Court must limit what PMI may present to the jury in order to prevent PMI from turning the trial into a circus.

## I.    MIL #1 (INCORPORATING SOFTWARE DEVELOPMENT PLAN)

PMI's Opposition demonstrates it intends to improperly re-litigate the issue of whether the Development Agreement incorporates the Software Development Plan. The Court already addressed this on summary judgment, holding there was no factual dispute and that "PMI's resistance to the incorporation of the Software Development Plan into the Development Agreement strains logic, common sense, and basic contractual principles." D.I. 215 at 11:20-15:15. This issue is thus conclusively resolved.[1]

Even if this Court were inclined to revisit what is now the law of the case, PMI's reliance on *Lawshe v. AmerUs Life Ins. Co.* is not helpful. *See* 19 F. App'x 692, 694 (9th Cir. 2001). Because neither party raised the issue of judicial admissions before the District Court, the Ninth Circuit found that issue waived in *Lawshe* as raised for the first time on appeal.[2] *Id.* In addition, *Lawshe* involved an amended pleading altering an "initial admission," *id.* at 695, and PMI never amended its Answer. PMI's judicial admissions thus "[have] the effect of withdrawing [this] fact from issue and dispensing wholly with the need for proof of the fact." *Am. Title*, 861 F.2d at 226 (internal quotations omitted).

PMI should be precluded from introducing evidence to the jury to nullify a Court ruling. That is improper and would greatly confuse the jury.

---

[1] PMI's citation to *Hewlett-Packard Co. v. Mustek Sys., Inc.* is unavailing as it stands for the unremarkable position that the Court will instruct the jury "without reference to whether a party 'does not contest infringement' or whether 'the Court has found' infringement." No. 99-CV-351-RHW, 2001 U.S. Dist. LEXIS 26331, at *11 (S.D. Cal. June 8, 2001).

[2] PMI confuses judicial admissions and evidentiary admissions. "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (internal quotations omitted). "Evidentiary admissions … are mere evidence, are not conclusive, and may be contradicted by other evidence." *Colburn v. Fremont Gen. Corp. (In re Fremont Gen. Corp.)*, No. SA CV 14-01016-AB, 2015 U.S. Dist. LEXIS 35372, at *36 (C.D. Cal. Mar. 20, 2015).

## II. <u>MIL #2 (INCORPORATING ACCEPTANCE CRITERIA)</u>

PMI's Opposition does not address the issue raised: whether PMI can argue the Acceptance Criteria are ***NOT*** incorporated into the Development Agreement. WTRI does not seek to preclude discussion of the criteria, only any implication or inference that the criteria are not obligations of the parties pursuant to the Development Agreement. Nevertheless, PMI again improperly states its judicial admissions "should not be forever binding" even though PMI never amended or withdrew its pleadings. PMI's judicial admissions are therefore binding. *Am. Title*, 861 F.2d at 226; *Lawshe*, 19 F. App'x at 694.

## III. <u>MIL #3 (INCORPORATING SERVICES AGREEMENT)</u>

PMI repeats its argument that its judicial admissions need not be binding – which as discussed above is incorrect. PMI's Opposition is, again, silent as to why it is proper for PMI to argue or present evidence directly contradicting this Court's Summary Judgment Order. Such arguments and evidence would be highly confusing to the jury, improperly seek nullification of this Court's Order, and should be precluded at trial.

## IV. <u>MIL #4 (OTHER JUDICIAL ADMISSIONS)</u>

As discussed above, Ninth Circuit authority establishes that a pleading, unless withdrawn or amended, conclusively binds a party to its judicial admissions made therein. *Am. Title*, 861 F.2d at 226; *Perez-Mejia v. Holder*, 641 F.3d 1143, 1151 (9th Cir. 2011); *Atencio v. TuneCore, Inc.*, 843 F. App'x 42, 44 (9th Cir. 2021). Against the established law of this Circuit, PMI offers an inapt out-of-circuit district court opinion where a party attempted to assert as a judicial admission an *argument* made in a *brief*. Opp. at 6-7; *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, No. 95-1231 (RCL), 2007 U.S. Dist. LEXIS 17659, at *4 (D.D.C. Mar. 14, 2007).[3] *Miller* is plainly inapplicable to PMI's admissions in PMI's Answer and Counterclaims.

PMI also offers no support for its claim WTRI is "cherry-pick[ing] qualified

---

[3] PMI also incorrectly cites to this case to argue "[j]udicial admissions are binding ***only*** if the admissions are 'unequivocal.'" *Compare* Opp. at 7 (emphasis added) *with Miller*, 2007 U.S. Dist. LEXIS 17659, at *5 ("Courts ***generally*** limit the invocation of 'judicial admissions' to affirmative, unequivocal factual admissions.") (emphasis added).

admissions." Opp. at 7. WTRI seeks to introduce PMI's *exact* admissions to prevent PMI from offering evidence or argument to counter those specific admissions.

PMI cites another out-of-circuit opinion, *Hartman Bros. Heating & Air Conditioning, Inc. v. NLRB*, to argue it was unnecessary for PMI to revise its pleadings once it concluded its judicial admissions were problematic. Even if this case law could overrule controlling Ninth Circuit authority, PMI has not articulated the lack of prejudice to WTRI required by *Hartman Bros*. *See* 280 F.3d 1110, 1114 (7th Cir. 2002). WTRI is prejudiced if PMI is allowed to take back its judicial admissions. WTRI reasonably relied on the judicial admissions to take issues "off the table" and did not develop the record required had the allegations not been admitted under the Federal Rules. It is also prejudicial for WTRI to spend part of its limited trial time addressing previously admitted matter.

Notably, PMI takes specific issue only with respect to its admissions regarding incorporation of exhibits into the contracts in suit. Opp. at 8. That fails for the reasons above. *See* §§ I-III. PMI's briefing silence on the panoply of other admissions of record acknowledges they qualify as judicial admissions that can be presented to the jury.

### V.    MIL #5 (PMI'S EXPERTS AND BUSINESS JUSTIFICATION)

WTRI's motion seeks to preclude PMI's experts from providing evidence or argument concerning business justification for PMI's breaches of contract because the Court granted summary judgment on this PMI defense to WTRI. PMI's "response" is to change the topic, and focus on the PricewaterhouseCoopers ("PwC") report PMI expert Dr. Ferri discussed in his report and deposition. This too fails. PMI contends the PwC report is relevant to the breach of the Services Agreement. Opp. at 9. But the PwC report is dated September 13, 2016, *see* D.I. 250-1 at 8, and the parties did not enter into the Services Agreement until December 15, 2016, *see* D.I. 37-5 at 1. The PwC report cannot provide "context and reasoning for PMI's alleged breach" occurring months later. Opp. at 9.

PMI cites *Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC*, No. 14-cv-03953-BLF, 2015 U.S. Dist. LEXIS 100551 (N.D. Cal. July 30, 2015), to its detriment.[4]

---

[4] PMI's sole other citation is distinguishable because there, unlike here, granting *in limine*

In *Monterey Bay*, Defendant sought to exclude evidence the Army consented to Plaintiffs' actions which Plaintiffs asserted was relevant to rebut Defendants' assertions of breach of the covenant of good faith and fair dealing and also to provide context to a particular statement. *Id*. at *30-31. But because such evidence was not probative of any of Plaintiffs' claims, Defendants' motion to exclude was *granted*, allowing only use "[t]o a very limited extent" to provide some context for the particular statement made in rebuttal. *Id*. at *31-32. Likewise, PMI's opening experts should be precluded from discussing the business justification defense (and consequently the PwC report). This is precisely what WTRI's motion sought.

PMI should thus be barred from offering evidence in support of the business justification defense lost on summary judgment, and expert testimony regarding the PwC report, should be held appropriate only in rebuttal, if relevant to issues presented by WTRI and only if within the scope of any of PMI's *rebuttal* expert reports.

## VI.    MIL #6 (CONTRACT INTERPRETATION)

There appears to be no dispute between the parties that an expert may not opine on contract interpretation. Yet, PMI asks the Court for leave to do just that to, purportedly, "explain norms." Opp. at 10-11. Because those "norms" interpret the contractual terms, and contradict them, WTRI's motion should be granted.

In this regard, both parties focus on Mr. Fincher's testimony. *Compare* Br. at 9:20-22 *with* Opp. at 10:23-26 ("WTRI's own quote from Fincher's report shows that Fincher offers opinions on industry custom and not contract interpretation."). However, PMI already lost this issue. PMI relied on this same quote from Mr. Fincher in its summary judgment briefing, claiming opinions on industry custom comprised "descriptions of the tasks or components to be delivered by the parties and not a list of binding obligations." D.I. 158-1 at 10:14-25. The Court rejected PMI's argument, holding "the problem with [Mr. Fincher's] extrinsic evidence is that '*it does not explain the contract language, it*

---

relief would be tantamount to summary judgment on a disputed fact. *See Miranda v. United States Sec. Assocs., Inc.*, No. 18-CV-00734-LHK, 2019 U.S. Dist. LEXIS 112907, at *13 (N.D. Cal. July 8, 2019).

*contradicts it*. Under the parol evidence rule, extrinsic evidence is not admissible to contradict express terms in a written contract[.]'" D.I. 215 at 14 (emphasis added). Because it is now the law of the case that the offered evidence from Mr. Fincher contradicts the contract language in suit, he should be precluded from so testifying.

## VII.   MIL #7 (CHOICE OF LAW)

The Court has twice held California law controls this contractual dispute, and both parties rely on California law for their causes of action. D.I. 24 at 16-18; D.I. 215 at 9-10; Joint Proposed Pretrial Conference Order lodged November 24, 2021 ("November PTO"). Discussing New York law or suggesting it controls the contract interpretation would impermissibly confuse the issues and mislead the jury. Fed. R. Evid. 403; Br. at 11. Indeed, PMI offers no relevance of New York law to any issue. *See* Opp. at 11-12. Since neither party identified any fact of consequence for the jury to decide that is more or less probable based on New York law, such evidence and arguments should be precluded.

## VIII.   MIL #8 (BREACHES LIMITED TO COMPLAINT)

The Court held "PMI's attempt to expand the scope of its counterclaims with respect to WTRI's alleged breach of the Development Agreement" is unavailing, and limited to PMI's two theories pled in PMI's counterclaims. D.I. 215 at 33-34; Br. at 11. PMI did not seek reconsideration and now fails to respond to WTRI's arguments. *Compare* Br. at 11 *with* Opp. at 12-14. "Where the non-moving party fails to address an argument raised by the moving party in the opposition brief, the Court may consider any arguments unaddressed by the non-moving party as waived." *Best Fresh LLC v. Vantaggio Farming Corp.*, No. 3:21-cv-00131-BEN-WVG, 2021 U.S. Dist. LEXIS 226716, at *13 (S.D. Cal. Sept. 20, 2021) (citing *Franchise Tax Bd. of Cal. v. Hyatt*, 139 S. Ct. 1485, 1491, n.1, 203 L. Ed. 2d 768 (2019)). Motion *in Limine* #8 should be granted for this reason alone.

PMI also argues that it should not "be precluded from identifying WTRI's failure to meet acceptance criteria and deliver working code as breaches of contract." Opp. at 12. But PMI's argument rehashes its earlier failed argument to the Court. *Compare* D.I. 185 at 18-19 (arguing that in addition to the two breach of contract theories discussed above,

1  "WTRI breached the Development Agreement in myriad other ways including by failing
2  to provide source code technology that worked to PMI's satisfaction and met the
3  acceptance criteria …") *with* D.I. 215 at 33 (holding PMI's argument that WTRI breached
4  the Development Agreement in "'many other ways'" fails).  WTRI's motion to preclude
5  PMI from relitigating an issue it already lost should be granted.

6  **IX.    MIL #9 (TRADE SECRET LIMITATION)**

7       PMI misapprehends this motion, which seeks to preclude PMI from expanding the
8  scope of its alleged trade secrets beyond what PMI identified in its interrogatory responses.
9  *See Franklin v. Smalls*, No. 09cv1067 MMA(RBB), 2012 U.S. Dist. LEXIS 150312, at *18
10  (S.D. Cal. Oct. 18, 2012); D.I. 215 at 33-34 (limiting PMI to breach theories disclosed in
11  interrogatories).  This Circuit's treatment of Section 2019.210 further supports that PMI
12  should be precluded from such expansion.  *Inteliclear, LLC v. ETC Glob. Holdings, Inc.*,
13  978 F.3d 653, 658 (9th Cir. 2020).  As PMI fails to respond, the motion should be granted.[5]

14  **X.     MIL #10 (CODE QUALITY)**

15       The Court previously limited PMI to the two theories pled in PMI's counterclaims,
16  neither of which involves purported code quality issues.  *See* D.I. 215 at 33-34; Br. at 16.
17  PMI sought no reconsideration and fails to articulate how code quality relates to either
18  breach theory pled by PMI.  PMI's silence constitutes a waiver.  *Best Fresh*, 2021 U.S.
19  Dist. LEXIS 226716, at *13.  Motion *in Limine* #10 should be granted for this reason alone.

20       PMI does try to assert the coding quality goes to alleged breaches of §§ 5.1, 5.2, and
21  10.2 of the Development Agreement.  *See* Opp. at 15-16.  But these sections were not the
22  bases of PMI's two alleged breaches it is limited to.  *See* D.I. 215 at 33-34.  It is also
23  irrelevant whether the "coding deficiencies is clear and has been made available to
24  WTRI…"  *See* Opp. at 16.  That does not speak to the Court's ruling restricting relevance
25  to the two alleged theories that have nothing to do with code quality.  Indeed, we also have

---

[5] While off point, PMI is also wrong in its contention WTRI failed to describe how Dr. Valerdi expanded the alleged trade secrets.  But WTRI did:  Dr. Valerdi's trade secrets 3-12 expanded PMI's "alleged trade secret to include not just 'story-writing tools,' but also subject matter from the different chapters of the stories themselves."  Br. at 13:7-13.

the clear admission "PMI does not include [the coding] deficiencies within the causes of action section of its Counterclaims." Opp. at 15. Evidence regarding code quality deficiencies should be excluded under Rules 401 and 403.

### XI.  MIL #11 (UNAUTHENTICATED AND HEARSAY KMS REPORT)

The KMS Report is an unsigned, one-off, non-final, stand-alone assessment. Br. at 18. Mr. Sardina's declaration, in light of his prior testimony, falls woefully short of the hurdle to authenticate that document. It is undisputed Mr. Sardina does not work for KMS, did not directly receive the report from KMS, and has no personal knowledge of who created the document, how it was created, or when it was created. The document remains unauthenticated, inadmissible hearsay.[6]

Moreover, Mr. Sardina's deposition testimony further establishes the hearsay nature of the KMS Report. Mr. Sardina testified the report was a one-off project separate from KMS's daily testing reports and created by a different group at KMS. *See* Patiño Decl., Ex. A at 250:21-23 ("We had KMS Technology as well perform an assessment, not through the quality assurance department that we were engaging for testing."). Moreover, he testified the KMS Report was not part of PMI's ordinary course of business. *Id.* at Ex. B at 29:15-31:2. There is no indication in the record KMS ever finalized the first assessment, conducted a second assessment report, or even that KMS performed such assessments as a regular part of KMS's business. Mr. Sardina's sworn deposition testimony cannot be reconciled with his declaration that KMS prepared the assessment report "as part of its regular technical assessment work on the PAL project." *Compare id. with* Sardina Decl. at ¶ 10. PMI cannot use a self-serving declaration to introduce new testimony that contradicts former deposition testimony. *Cf. Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."). As a stand-alone assessment that Mr. Sardina testified was attributable to WTRI's breach, the KMS assessment was not prepared as a regular

---

[6] Mr. Sardina's declaration should be struck and not considered by this Court as set forth in WTRI's concurrently filed Objections to PMI's Evidence.

practice of PMI's business (nor is there evidence it was a regular part of KMS's business either).  *See* Fed. R. Evid. 803(6).

Mr. Sardina's belated declaration is insufficient to authenticate the KMS Report or to overcome the hearsay exception.[7]  The time for PMI to prove authentication has passed, and the KMS Report should be excluded.  *Shepard v. Quillen*, No. 1:09-cv-00809-BAM (PC), 2013 U.S. Dist. LEXIS 34331, at *15 (E.D. Cal. Mar. 12, 2013) (motion *in limine* granted to preclude documents when party was "unable to produce a witness to authenticate these documents or to provide … testimony regarding their meaning").

## XII. MIL #12 (DR. SANCHEZ'S IMPROPER EXPERT OPINION TESTIMONY)

Dr. Sanchez testified that she used her *expertise* when answering some deposition questions.  *See* Br. at 20.  PMI does not deny this, contending without support and counterfactually that expertise is proper lay testimony.  *See* Opp. at 19-20.  PMI is incorrect.  Lay opinion testimony "must be predicated upon concrete facts within their own observation and recollection … as distinguished from their opinions or conclusions drawn from such facts."  *United States v. Durham*, 464 F.3d 976, 982 (9th Cir. 2006).  PMI's case law is not to the contrary.  *See Lucido v. Nestle Purina Petcare Co.*, 217 F. Supp. 3d 1098, 1104 (N.D. Cal. 2016) (witness only allowed to offer lay testimony and "might" testify based on her experience of what features her clients indicated to her are important in dog food); *Durham*, 464 F.3d at 982-83 (testimony regarding narcotics of which a lay witness has personal familiarity "is not based on specialized knowledge within the scope of Rule 702").  Because Dr. Sanchez's "proffered testimony is not the type of opinion that results from 'a process of reasoning familiar in everyday life,'" it should be excluded.  *See Slaughter-Payne v. Shinseki*, 522 F. App'x 409, 411 (9th Cir. 2013).[8]

---

[7] PMI's cases are distinguishable.  *See, e.g., Farmasino, Inc. v. Farmasino Pharms. Co.*, No. 5:15-cv-01877-SVW-DTB, 2016 U.S. Dist. LEXIS 194703, at *11 n.8 (C.D. Cal. June 20, 2016) (overcoming objection because defendant authored the documents); *Cejas v. Brown*, No. 18-cv-543-WQH-JLB, 2021 U.S. Dist. LEXIS 39002, at *5 n.2 (S.D. Cal. Mar. 1, 2021) (documents appeared genuine based on "their distinctive characteristics").

[8] PMI argues that if Dr. Sanchez's testimony is excluded, then Dr. DiBello's testimony should be "trimmed and/or excluded entirely."  Opp. at 20, nn. 5, 6. PMI cites to Dr. DiBello's testimony that *PMI* identified for its affirmative deposition designations.  *See*

## XIII. MIL #13 (THE WORD "FLOWS" IS CONFUSING)

PMI demonstrates the confusion surrounding PMI's use of its litigation-inspired term "Flow" to refer to its "story-writing tools" that PMI purports are its trade secrets. Despite WTRI's express clarification that its motion only addresses the use of the word "Flow" to refer to purported trade secrets and does not seek to exclude any evidence regarding those "Flows" (*see* Br. at 22), PMI argues "WTRI's motion claims that PMI does not have sufficient evidence that it created *flows*." Opp. at 21 (emphasis added). PMI itself confuses its alleged trade secret "Flows" with the well-known "flows" pre-dating the parties' collaboration. It is not disputed that PMI's term "Flow" has no meaning outside of this action. If PMI – alleged owner of the purported trade secret "Flows" – cannot differentiate in its briefing its "Flow" from a long-used "flow," it is a certainty the jury will be confused and mislead. PMI should not be allowed to refer to its purported trade secrets as "Flows" at trial when another phrase, such as "story-writing tools," would convey the same concept while avoiding the Rule 403 issues.

## XIV. MIL #14 (THIRD PARTY ONIRIK DOCUMENTS)

PMI concedes documents are not self-authenticated by Rule 901(b)(4). PMI instead contends via attorney argument and without supporting declarations that WTRI produced similar documents. *See* Opp. at 22. PMI, of course, fails to offer any case law supporting this proposition. Even if PMI had filed an attorney declaration regarding the similarity of the documents, it still would not have satisfied the authentication requirements of Rule 901(b)(4). *See Cohan v. Provident Life & Accident Ins. Co.*, 140 F. Supp. 3d 1063, 1075 (D. Nev. 2015) (finding counsel's declaration insufficient for authentication).

PMI's efforts to overcome hearsay also fail. PMI attempts to use a copyright mark as "proof" that statements in the disputed document are not hearsay. Opp. at 22.[9] This is improper under Rule 802 and PMI offers no authority to support its novel theory. Moreover, PMI's argument turns on the contention that Onirik was WTRI's agent so as to

---

Exhibit D to the Joint Proposed Pretrial Conference Order.
[9] Each document includes copyright marks from multiple entities, and PMI offers no procedure for allocating the document's hearsay statements between those entities.

benefit from the Onirik copyright.  But PMI fails to offer any support for such purported agency.  Instead, PMI's citations show Onirik was WTRI's distribution partner, not an "agent." *Id*. (citing Dr. DiBello).  PMI then argues in citation-free fashion that a party adopts every statement in every document hosted on its website.  This is absurd. *See*, *e.g.*, https://www.casd.uscourts.gov/_assets/pdf/civic-contest/2021/Winning%20Essays-online%20version.pdf (hosting essays created by third party students).  Finally, PMI rests on conjecture that the documents are relevant to the "story-writing tools" at issue here. *See* Opp. at 23 (discussing "features of the product" not at issue and stating PMI "may" use the document in other contexts).  This Motion should be granted.

## XV.  MIL #15 (FAILURE TO IDENTIFY WITNESSES)

PMI indisputably failed to include Mr. Garrett in its initial disclosures.  Nevertheless PMI believes Mr. Garrett can testify because it claims WTRI learned about him during discovery and WTRI improperly delayed raising the issue.  Opp. at 23-25.  Neither of argument justifies PMI's failure under the Rules. *See* Fed. R. Civ. P. 26(a), 26(e), 37(c).

PMI represents "WTRI asked about Garrett during a deposition."  Opp. at 25.  Not true.  WTRI asked a witness about the contents of an email, for which Mr. Garrett happened to be one of the recipients. *See* D.I. 298-14 at 321:20-25.  But in this Court, "[t]he mere mention of a witness name in a deposition or document is generally not sufficient to put the other party on notice that the individual is being disclosed as a trial witness." *Airhawk Int'l LLC v. Ontel Prods. Corp.*, No. 18cv73-MMA (AGS), 2020 U.S. Dist. LEXIS 256977, at *30-31 (S.D. Cal. Jan. 2, 2020) (noting Rule 26 requires disclosure of "details such as phone numbers or addresses") (internal quotes omitted).

PMI's suggestion that WTRI delayed in raising its objections is also not well-taken.  PMI only raised the prospect of calling Mr. Garrett as a witness on November 5, 2021 as part of compiling the pretrial order.  WTRI promptly notified the Court of its objection to Mr. Garrett on November 24, 2021. *See* November PTO at 16, n.5.  WTRI did not "delay" raising the issue.  This Motion should be granted.

Dated: April 26, 2022

Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

*/s/ Jose L. Patiño*
JOSE L. PATIÑO, CA Bar No. 149568
  JosePatino@eversheds-sutherland.com
NICOLA A. PISANO, CA Bar No. 151282
  NicolaPisano@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
  ScottPenner@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
  JustinGray@eversheds-sutherland.com
REGIS WORLEY, Jr., CA Bar No. 234401
  RegisWorley@eversheds-sutherland.com
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:    858.252.6502
FACSIMILE:    858.252.6503

Attorneys for Plaintiff and Counter-Defendant
WORKPLACE TECHNOLOGIES RESEARCH, INC.