# EXHIBIT A



# Transcript of Jesse Sardina, Corporate Designee

**Date:** October 2, 2020

**Case:** Workplace Technologies Research, Inc. -v- Project Management Institute, Inc.

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

Transcript of Jesse Sardina, Corporate Designee
Conducted on October 2, 2020

---

**Page 1**

```
 1          UNITED STATES DISTRICT COURT
 2         SOUTHERN DISTRICT OF CALIFORNIA
 3    ----------------------------x
 4   WORKPLACE TECHNOLOGIES        :
 5   RESEARCH, INC.,               :
 6              Plaintiff,    : Case No.:
 7   vs.                     : 3:18-CV-01927-JM-MSB
 8   PROJECT MANAGEMENT INSTITUTE, :
 9   INC.,                         :
10              Defendant.    :
11    ----------------------------x
12   AND RELATED COUNTER-CLAIM     :
13    ----------------------------x
14
15          Videotaped Deposition of
16      PROJECT MANAGEMENT INSTITUTE, INC.
17      by and through its Corporate Designee
18             JESSE SARDINA
19           (Conducted Virtually)
20         Friday, October 2, 2020
21              7:31 a.m. PST
22
23
24   Job No.:  325133
25   Reported by:  BRENDA MATZOV, CSR NO. 9243
```

**Page 2**

```
 1        Videotaped/videoconference deposition
 2   of JESSE SARDINA, taken remotely/virtually in
 3   the above-entitled cause pending in the United
 4   States District Court, Southern District of
 5   California, before BRENDA MATZOV, CSR NO. 9243,
 6   and simultaneously in the participants' remote
 7   locations, on Friday, the 2nd day of October,
 8   2020, at 7:31 a.m. PST.
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 3**

```
 1   APPEARANCES:
 2   FOR PLAINTIFF and COUNTER-DEFENDANT WORKPLACE
 3   TECHNOLOGIES RESEARCH, INC.:
 4         EVERSHEDS SUTHERLAND (US), LLP
 5         By:  NICOLA A. PISANO, ESQ.
 6         12255 El Camino Real
 7         Suite 100
 8         San Diego, California 92130
 9         (858) 252-6502
10         nicolapisano@eversheds-sutherland.com
11
12   FOR DEFENDANT and COUNTER-CLAIMANT PROJECT
13   MANAGEMENT INSTITUTE, INC.:
14         VENABLE, LLP
15         By:  ERIC J. BAKEWELL, ESQ.
16         2049 Century Park East
17         Suite 2300
18         Los Angeles, California 90067
19         (310) 229-9900
20         ejbakewell@venable.com
21
22   ALSO PRESENT:
23         CHESTER WONG, Videographer
24         LEYHBERT SHARP, A/V Technician
25
```

**Page 4**

```
 1              I N D E X
 2   WITNESS
 3   Jesse Sardina
 4   (Witness Location:  Pennsylvania)
 5
 6   EXAMINATION                        PAGE
 7   By Mr. Pisano                       10
 8
 9
10           E X H I B I T S
11   NUMBER       DESCRIPTION           MARKED
12   Exhibit 1    Document Entitled "Plaintiff
13                and Counter-Defendant
14                Workplace Technologies
15                Research, Inc.'s Notice
16                of Deposition of Defendant
17                and Counter-Claimant Project
18                Management Institute, Inc.
19                Pursuant to Federal Rule of
20                Civil Procedure 30(b)(6),"
21                Dated September 8, 2020
22                (No Bates Number)        21
23
24
25
```

Transcript of Jesse Sardina, Corporate Designee
Conducted on October 2, 2020

63 (249 to 252)

249

1  BY MR. PISANO:
2      Q.  So is it PMI's position that WTRI
3  misrepresented its capabilities to collaborate
4  in achieving the objectives of the 2015
5  development agreement?
6          MR. BAKEWELL:  Objection.  Form.
7  Foundation.  Calls for a legal conclusion.
8  May call for privileged information.
9          THE WITNESS:  I -- I would say that,
10 yes, that there was a misrepresentation of
11 the technologies, the extent to the -- to
12 which those technologies had been developed
13 by WTRI, and as they were represented in the
14 agreement in reference to the event generator,
15 the metrics engine, and other -- other components
16 that had been identified in the agreement, as
17 well as the ability to deliver this product at
18 scale to our customers, given the way that it
19 was written.
20 BY MR. PISANO:
21     Q.  Now, what do you mean "the ability
22 to deliver the project at scale"?
23     A.  The product -- so the -- the code --
24 my understanding from the tactical assessments
25 that were conducted during the project and the

250

1  amount of remediation that would -- would have
2  been required is that, under -- under load or --
3  or with a significant number of users trying
4  to work the rehearsals or execute the rehearsals,
5  the software would not have performed as designed,
6  as intended.
7      Q.  Now, is -- is that your -- are you
8  stating that based on knowledge from the fact
9  that actually happened?  Or is that someone
10 suggested to you that that might be the case?
11     A.  A suggestion based on technical
12 assessments that were performed on the software.
13     Q.  Do you know who did those technical
14 assessments that led you to conclude that the
15 software was incapable of handling a large
16 number of users?
17     A.  So we had a number of assessments
18 performed by -- or -- by different organizations.
19 So Neudesic, as our development partner, was
20 doing ongoing assessment of the code as it was
21 delivered.  We had KMS Technology as well perform
22 an assessment, not through the quality assurance
23 department that we were engaging for testing.
24 And I want to say at least one other vendor that
25 looked at the -- that reviewed the software and

251

1      provided their assessment that it would have to
2      be completely re-built in order to be usable in
3      the market.
4          Q.  Now, when the software exited the alpha
5      phase, is it your understanding that it was to
6      be usable in a -- in a large-scale environment
7      at that point?  I mean, wasn't, in fact, there
8      to be some further development in the beta and
9      Charlie phases?
10         A.  There was -- there was to be further
11     develop -- sorry, Eric.
12             MR. BAKEWELL:  Object to form.
13             THE WITNESS:  So there was to be further
14     development in the beta and Charlie phases.  The --
15     there had been a number of discussions during the
16     alpha phase as to remediation plans that were --
17     I wasn't directly involved in.  But they were
18     addressed by Victor Carter-Bey, Betsy Redden,
19     Brian Weiss, with Lia DiBello directly.  And
20     a plan had been arrived at for WTRI to bear
21     the burden of remediation, given that the --
22     what needed to be remediated was the software
23     delivered by WTRI.
24             There was a plan set forth for
25     remediation.  WTRI, I believe, at that point

252

1      brought in an additional developer whose primary
2      focus was intended to be on remediation activities.
3      But the remediation was never performed.
4          Given that, during the beta and Charlie
5      phases, we were going to have to develop eight
6      additional projects within eight additional
7      industries, the -- I think it was an expectation
8      that the alpha phase, which produced the one
9      ERP project rehearsal, would meet those --
10     those expectations for quality.
11 BY MR. PISANO:
12     Q.  You mentioned that WTRI brought in --
13 in an additional developer.
14     Who -- who was that?
15     A.  I do not remember the name.  They had
16 Matt Lehman as the lead developer.  Josh West
17 was actually an employee of CVP that WTRI brought
18 on to help with the virtual world development.
19 And then there was one additional developer
20 brought in after the remediation assessments
21 resulted in the discussion between Lia, Victor,
22 Brian, and Betsy to -- and I don't -- I just --
23 I don't recall the name.  But it's -- it's --
24 it's in our documents somewhere, in Jira, I'm
25 sure the -- the person would have been assigned

257

1      MR. BAKEWELL:  Thank you very --
2      MR. PISANO:  Now --
3      MR. BAKEWELL:  -- much.  I appreciate it.
4      MR. PISANO:  -- Ms. Court Reporter, can
5   we get a -- "we" being PMI, we'd like a rough of
6   the transcript at your earliest convenience.
7      THE VIDEOGRAPHER:  Okay.  We are going
8   off the record.  The time is 2:43 [sic] p.m.
9      (The deposition concluded at 2:49 p.m.
10 PST)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

258

1         CERTIFICATE OF REPORTER
2
3      I, BRENDA MATZOV, CSR NO. 9243, do
4   hereby certify:
5      That, prior to being examined, the
6   witness named in the foregoing deposition was
7   remotely duly sworn by me to testify the truth,
8   the whole truth, and nothing but the truth;
9      That the foregoing deposition was taken
10 remotely/virtually before me, at which time the
11 aforesaid proceedings were stenographically recorded
12 by me and thereafter transcribed by me;
13      That the foregoing transcript, as typed,
14 is a true record of the said proceedings;
15      And I further certify that I am not
16 interested in the action.
17
18 Dated this 20th day of October, 2020.
19
20 *Brenda Matzov*
   BRENDA MATZOV, CSR NO. 9243
21
22
23
24
25

259

1         CERTIFICATE OF WITNESS
2
3      I, JESSE SARDINA, witness herein,
4   do hereby certify and declare the within and
5   foregoing transcription to be my examination
6   under oath in said action taken on October 2,
7   2020, with the exception of the changes listed
8   on the errata sheet, if any;
9      That I have read, corrected, and
10 do hereby affix my signature under penalty
11 of perjury to said examination under oath.
12
13
14
15
16 _____   _____
      JESSE SARDINA, Witness          Date
17
18
19
20
21
22
23
24
25

No. 325133

Re:    Deposition of **Jesse Sardina, Corporate Designee**
       Date: 10/2/2020
       Case: Workplace Technologies Research, Inc. -v- Project Management Institute, Inc.
       Return to: transcripts@planetdepos.com

| Page | Line | Correction/Change and Reason |
|------|------|------------------------------|
| 249 | 24 | Change "tactical" to "technical" |
| 253 | 15 | Change "Craig" to "Greg" |
| 147 | 20 | Change "Lehman" to "Lehmann" |
| 197 | 7 | Change "Lehman" to "Lehmann" |
| 252 | 16 | Change "Lehman" to "Lehmann" |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

11/20/20
(Date)

(Signature)

EXHIBIT A, PAGE 5

Re:    Deposition of **Jesse Sardina, Corporate Designee**
       Date: 10/2/2020
       Case: Workplace Technologies Research, Inc. -v- Project Management Institute, Inc.
       Return to: transcripts@planetdepos.com

ACKNOWLEDGMENT OF DEPONENT

I, Jesse Sardina, Corporate Designee, do
hereby acknowledge that I have read and examined the
foregoing testimony, and the same is a true, correct
and complete transcription of the testimony given by
me and any corrections appear on the attached Errata
sheet signed by me.

11/20/20
(Date)                        (Signature)