JOSE L. PATIÑO, CA Bar No. 149568
    JosePatino@eversheds-sutherland.com
NICOLA A. PISANO, CA Bar No. 151282
    NicolaPisano@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
    ScottPenner@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
    JustinGray@eversheds-sutherland.com
REGIS C. WORLEY, JR., CA Bar No. 234401
    RegisWorley@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:      858.252.6502
FACSIMILE:      858.252.6503

Attorneys for Plaintiff and Counter-Defendant
WORKPLACE TECHNOLOGIES RESEARCH, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORKPLACE TECHNOLOGIES RESEARCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> PROJECT MANAGEMENT INSTITUTE, INC. <br><br> Defendant. | Case No. 3:18-cv-01927-JO-MSB <br><br> Honorable Jinsook Ohta <br><br> Complaint Filed: August 20, 2018 <br><br> **JOINT FINAL PRETRIAL CONFERENCE ORDER** |
| PROJECT MANAGEMENT INSTITUTE, INC. <br><br> Counterclaimant, <br><br> v. <br><br> WORKPLACE TECHNOLOGIES RESEARCH, INC.; and DOES 1-15 inclusive, <br><br> Counterdefendants. | |

18cv1927

Plaintiff and Counter-Defendant Workplace Technologies Research, Inc. ("WTRI") and Defendant and Counter-Claimant Project Management Institute, Inc. ("PMI") jointly lodge this Joint Proposed Pretrial Conference Order.[1]

# I.  Statement to Be Read to the Jury of the Nature of the Case and Claims and Defenses

This case involves a contract and trade secrets dispute between Plaintiff Workplace Technologies Research, Inc., who is frequently referred to as "WTRI," and Defendant Project Management Institute, who is frequently referred to as "PMI."

WTRI initiated this action and alleges PMI breached the parties' contracts. PMI alleges WTRI breached the parties' contracts and misappropriated PMI's trade secrets.

WTRI creates virtual worlds, computer-based simulations that can replicate real-world situations, which enable users to gain experience without the consequences of real-world mistakes. WTRI also performs scientific research on how simulations can develop "accelerated learning," which is the ability for participants to achieve proficiency in a shorter period of time as compared to gaining real world experience.

PMI is a not-for-profit membership organization working in nearly every country around the world to advance careers, strengthen organizational success, and empower project professionals with new skills and ways of working to maximize their impact. PMI offers project management certifications and provides training, education, thought leadership, and academic research.

WTRI and PMI began their business relationship in or around late 2013 and ended the relationship in or around mid-2018. Initially, PMI provided letters of support for WTRI to the National Science Foundation (frequently referred to as "NSF") at WTRI's request in connection with WTRI attempting to secure grant money from NSF.

---

[1] This Joint Proposed Pretrial Conference Order is submitted while the parties' motions *in limine* and *Daubert* motions remain pending. *See* D.I. 248-284. The parties preserve their objections raised in the pending motions. This Joint Proposed Pretrial Conference Order is subject to change based on the Court's rulings on the outstanding motions *in limine* and *Daubert* motions.

18cv1927

Subsequently, the parties attempted to co-develop a virtual world software program aimed at providing project management training through accelerated learning.

The software program the parties attempted to develop would have allowed project management professionals to encounter real-world scenarios in a virtual world.  Project managers would be able to improve their skills in the virtual world without the consequences of real-world mistakes.  The software was supposed to provide a unique experience for each user by providing different scenarios based on the user's project management experience and skills.  The parties contemplated that WTRI would contribute its experience in building virtual worlds and rehearsals, along with its research in "accelerated learning."   PMI would contribute its expertise in the field of project management.  The software program never made it to market.

WTRI developed a software program called "Maxx Virtual World Agile Leadership Rehearsal" after the breakdown of the relationship between WTRI and PMI.

The two contracts at issue in this case are the "Software Technology Development and Purchase Agreement" (which is often referred to as the "Development Agreement") and the "Services Agreement."   The Development Agreement was effective as of September 8, 2015.  The "Services Agreement" was entered into as of December 15, 2016.  The parties' dispute in this litigation relates to what happened in connection with the software program the parties attempted to co-develop under the Development Agreement and Services Agreement, whether the parties fulfilled their contractual and legal obligations in connection with the two agreements and related work, whether and to what extent PMI developed any trade secrets and, if so, what happened with PMI's alleged trade secrets after the parties' relationship deteriorated.

WTRI claims that PMI breached the Development Agreement and the Services Agreement.  WTRI also claims that PMI breached the Development Agreement's implied covenant of good faith and fair dealing.  PMI denies those allegations.

PMI claims WTRI breached the Development Agreement and the Services Agreement.  PMI also claims that WTRI breached the implied covenants of good faith and fair dealing in both agreements.   Additionally, PMI claims that WTRI stole and misappropriated PMI's trade secrets.  WTRI denies those allegations.

## II.   List of Causes of Action to be Tried

### 1)   WTRI's Causes of Action[2]

#### a.   Breach of the Development Agreement.

*Elements*

---

[2] Prior to the commencement of discovery, the Court granted PMI's motion to dismiss WTRI's claims for breach of the implied covenant of good faith and fair dealing in the Services Agreement, fraud, and tortious interference with prospective business relations. *See* D.I. 42 at 8-9.  The Court expressly stated that "[a]fter discovery commences, however, WTRI is free to request leave to amend its Complaint, as consistent with the Federal Rules of Civil Procedure and Local Rules, based on evidence obtained through discovery." *Id*.  In accordance with Rule 15(a) or 15(b) and this Court's prior order, WTRI intends to raise the issue of amending its Complaint at the pretrial conference.

PMI is surprised that WTRI intends to raise further amendment of the Complaint at this late date and given the Court's prior rulings on PMI's motions to dismiss (D.I. 24, D.I. 32, and D.I. 42) and WTRI's motion for leave to file a Fourth Amended Complaint (D.I. 111).  PMI is further surprised that WTRI first raised this issue in the November 24, 2021 Proposed Pretrial Order lodged with the Court and still has not moved for leave to file an amended complaint in the past five months.  The Court granted PMI's motion to dismiss the Third Amended Complaint (WTRI's fourth bite at the apple) without leave to amend on January 20, 2020 with respect to WTRI's claims for breach of the implied covenant of good faith and fair dealing in the Services Agreement, fraud, and tortious interference with prospective business relations.  *See* D.I. 42 at 8-9.  That followed the Court granting PMI's motions to dismiss with leave to amend the same claims in the First Amended Complaint and Second Amended Complaint.  *See* D.I. 24 at 22-25; D.I. 32 at 18 (cautioning WTRI that "further unsuccessful attempts to amend the Complaint may demonstrate that the dismissed claims cannot be cured by amendment").  Moreover, the Court already denied WTRI's motion for leave to file a Fourth Amended Complaint after the close of fact discovery in a January 25, 2021 Order.  *See* D.I. 111 at 5 (holding that WTRI's "reason for seeking amendment is essentially that discovery has occurred, not that newly uncovered evidence or a new admission by PMI confirms facts that were not previously alleged to support claims that were not previously rejected").  WTRI has neither provided a proposed amended complaint nor discussed further amendment with PMI as of the time of the filing of this pretrial order, but it is difficult to understand how further amendment would: (1) be permissible given the Court's prior rulings and that PMI is not aware of what WTRI could have recently learned that would relate to causes of action based on actions occurring no later than 2018; (2) result in properly pled claims; or (3) lead to anything other than substantial delay in resolving this action as further amendment requires a motion for leave to amend, likely triggers a motion to dismiss in response, and may necessitate additional discovery.

18cv1927

To recover damages from PMI for breach of the development contract, WTRI must prove all of the following:

1. That WTRI and PMI entered into a contract;

2. That WTRI did all, or substantially all, of the significant things that the development contract required it to do or was excused from having to complete certain obligations due to PMI's failure to satisfy one or more conditions precedent;

3. That PMI failed to do one or more of the obligations that the development contract required it to do;

4. That WTRI was harmed; and

5. That PMI's breach of the development contract was a substantial factor in causing WTRI's harm.

*See, e.g.,* Judicial Council of California Civil Jury Instructions, CACI, No. 303 (2020).

### b.  Breach of the Services Agreement.

<u>Elements</u>

To recover damages from PMI for breach of the services contract, WTRI must prove all of the following:

1. That WTRI and PMI entered into a contract;

2. That WTRI did all, or substantially all, of the significant things that the services contract required it to do or was excused from having to complete certain obligations due to PMI's failure to satisfy one or more conditions precedent;

3. That PMI failed to do one or more of the obligations that the services contract required it to do;

4. That WTRI was harmed; and

5. That PMI's breach of the services contract was a substantial factor in causing WTRI's harm.

*See, e.g.,* Judicial Council of California Civil Jury Instructions, CACI, No. 303 (2020).

**c.  Breach of the Implied Covenant of Good Faith and Fair Dealing of the Development Contract.**

_Elements_

WTRI claims that PMI violated the duty to act fairly and in good faith in regard to the development contract. To establish this claim, WTRI must prove all of the following:

1. That WTRI and PMI entered into a contract;

2. That WTRI did all, or substantially all of the significant things that the development contract required it to do or that it was excused from having to do those things;

3. That PMI's conduct prevented WTRI from receiving the benefits under the contract;

4. That by doing so, PMI did not act fairly and in good faith; and

5. That WTRI was harmed by PMI's conduct.

_See, e.g.,_ Judicial Council of California Civil Jury Instructions, CACI, No. 325 (2020).

**2)  PMI's Defenses to WTRI's Causes of Action**

PMI has asserted the following defenses to WTRI's claims:

a.  No Injury (Second Affirmative Defense)

b.  Offset And/Or Setoff (Third Affirmative Defense)

c.  Unclean Hands (Fourth Affirmative Defense)

d.  _In Pari Delicto_ (Fifth Affirmative Defense)

e.  Unjust Enrichment (Sixth Affirmative Defense)

f.  Consent (Seventh Affirmative Defense)

g.  Waiver (Eighth Affirmative Defense)

h.  Ratification (Ninth Affirmative Defense)

i.  Estoppel (Tenth Affirmative Defense)

j.  Adequate Remedy at Law (Eleventh Affirmative Defense)

k.  Failure To Mitigate Damages (Twelfth Affirmative Defense)

l.      Failure Of Condition Precedent (Thirteenth Affirmative Defense)

m.      Excuse For Non-Performance (Fourteenth Affirmative Defense)

n.      Frustration Of Purpose (Fifteenth Affirmative Defense)

o.      Novation (Sixteenth Affirmative Defense)

p.      Fraud (Seventeenth Affirmative Defense)

q.      Statute Of Limitations (Eighteenth Affirmative Defense)

r.      Laches (Nineteenth Affirmative Defense)

s.      No Breach (Twentieth Affirmative Defense)

t.      Independent Or Superseding Cause (Twenty-First Affirmative Defense)[3]

### 3)    PMI's Causes of Action

### a.    Breach of the Development Agreement

*Elements*

To recover damages from WTRI for breach of the Development Agreement, PMI must prove:

1.  That PMI and WTRI entered into the Development Agreement;

2.  That PMI did all, or substantially all, of the significant things that the Development Agreement required it to do or was excused from having to complete certain obligations due to WTRI's failure to satisfy one or more conditions precedent;

3.  That WTRI:

    a.  failed to do one or more of the obligations that the Development Agreement required it to do; or

---

[3] PMI asserted affirmative defenses in its Answer for: (1) Failure To State A Claim (First Affirmative Defense); (2) Failure To State A Claim For Attorneys' Fees (Twenty-Third Affirmative Defense); and (3) No Entitlement To Prejudgment Interest (Twenty-Fourth Affirmative Defense).  PMI does not concede or withdraw any of these affirmative defenses.  But, these defenses and the issues relating to these defenses are matters for the Court and not the jury to decide.

18cv1927

b.  did something that the Development Agreement prohibited it from doing;[4]

4.  That PMI was harmed; and

5.  That WTRI's breach of the Development Agreement was a substantial factor in causing PMI's harm.

*See, e.g.*, Judicial Council of California Civil Jury Instructions, CACI, No. 303 (2020).

**b.      Breach of the Services Agreement**

*Elements*

To recover damages from WTRI for breach of the Services Agreement, PMI must prove:

1.  That PMI and WTRI entered into the Services Agreement;

2.  That PMI did all, or substantially all, of the significant things that the Services Agreement required it to do or was excused from having to complete certain obligations due to WTRI's failure to satisfy one or more conditions precedent;

3.  That WTRI

a.  failed to do one or more of the obligations that the Services Agreement required it to do; or

b.  did something that the Services Agreement prohibited it from doing;[5]

4.  That PMI was harmed; and

5.  That WTRI's breach of the Services Agreement was a substantial factor in causing PMI's harm.

*See, e.g.*, Judicial Council of California Civil Jury Instructions, CACI, No. 303 (2020).

---

[4] These alleged breaches include: (1) failing to satisfy the Acceptance Criteria per Section 5.2; (2) failing to provide quality code pursuant to Section 10.2(c); (3) breaching the field of use provision contained in Section 2.4; and (4) breaching the confidentiality provision in Section 13.  *See* D.I. 47.

[5] These alleged breaches include: (1) failing to meet promotional obligations under Section 2.4; (2) failing to make technical and content development contributions pursuant to Sections 2.1 and 2.5; (3) breaching the confidentiality provision in Section 10.3; and (4) violating License Agreement attached as Exhibit A to the Services Agreement.  *See* D.I. 47.

### c.   Breach Of Implied Covenant Of Good Faith And Fair Dealing of the Development Agreement

_Elements_

PMI claims that WTRI violated the duty to act fairly and in good faith as to the Development Agreement. To establish this claim, PMI must prove:

1. That PMI and WTRI entered into the Development Agreement;
2. That PMI did all, or substantially all, of the significant things that the Development Agreement required it to do or that PMI was excused from having to do those things;
3. That WTRI's conduct prevented PMI from receiving the benefits under the contract;
4. That by doing so, WTRI did not act fairly and in good faith; and
5. That PMI was harmed by WTRI's conduct.

_See, e.g._, Judicial Council of California Civil Jury Instructions, CACI, No. 325 (2020).

### d.   Breach Of Implied Covenant Of Good Faith And Fair Dealing of the Services Agreement

_Elements_

PMI claims that WTRI violated the duty to act fairly and in good faith as to the Services Agreement. To establish this claim, PMI must prove:

1. That PMI and WTRI entered into the Services Agreement;
2. That PMI did all, or substantially all, of the significant things that the Services Agreement required it to do or that PMI was excused from having to do those things;
3. That WTRI's conduct prevented PMI from receiving the benefits under the contract;
4. That by doing so, WTRI did not act fairly and in good faith; and
5. That PMI was harmed by WTRI's conduct.

18cv1927

*See, e.g.*, Judicial Council of California Civil Jury Instructions, CACI, No. 325 (2020).

### e.  Theft Of Trade Secrets (18 U.S.C. § 1836, et seq.).

<u>Elements</u>

PMI claims that WTRI has misappropriated a trade secret under Federal law.  To succeed on this claim, PMI must prove:

1.  That PMI owned its trade secrets related to its Flow activity templates and corresponding spreadsheet designs (the "PMI Technology") that is subject to the misappropriation claim;

2.  That the PMI Technology was trade secret at the time of misappropriation;

3.  That WTRI improperly acquired, used, or disclosed the trade secrets;

4.  That the PMI Technology is related to a product or service used in, or intended for use in, interstate or foreign commerce;

5.  That PMI was harmed or WTRI was unjustly enriched; and

6.  That WTRI's acquisition, use, or disclosure was a substantial factor in causing PMI's harm or WTRI to be unjustly enriched.

*See, e.g.*, 18 U.S.C. § 1836(b)(1); *Attia v. Google, LLC*, 983 F.3d 420 (9th Cir. 2020); Judicial Council of California Civil Jury Instructions, CACI, No. 4401 (2020); *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (noting that the elements of misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq., are similar to those under the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, et seq.).

### f.  Misappropriation Of Trade Secrets (Cal. Civ. Code § 3426, et seq.).

<u>Elements</u>

PMI claims that WTRI has misappropriated a trade secret under state law.  To succeed on this claim, PMI must prove:

1.  That PMI owned its related to its Flow activity templates and corresponding

spreadsheet designs (the "PMI Technology") that is subject to the misappropriation claim that is subject to the misappropriation claim;

2. That the PMI Technology was trade secret at the time of misappropriation;

3. That WTRI improperly acquired, used, or disclosed the trade secrets;

4. That PMI was harmed or WTRI was unjustly enriched; and

5. That WTRI's acquisition, use, or disclosure was a substantial factor in causing PMI's harm or WTRI to be unjustly enriched.

*See, e.g.*, Judicial Council of California Civil Jury Instructions, CACI, No. 4401 (2020).

### 4) **WTRI's Defenses to PMI's Causes of Action**

Plaintiff has asserted the following defenses to PMI's counterclaims:

    a.    False Claims (Second Affirmative Defense)

    b.    No Damage or Injury (Third Affirmative Defense)

    c.    Offset and/or Setoff (Fourth Affirmative Defense)

    d.    Unclean Hands (Fifth Affirmative Defense)

    e.    In Pari Delicto (Sixth Affirmative Defense)

    f.    Unjust Enrichment (Seventh Affirmative Defense)

    g.    Consent (Eighth Affirmative Defense)

    h.    Waiver (Ninth Affirmative Defense)

    i.    Ratification (Tenth Affirmative Defense)

    j.    Estoppel (Eleventh Affirmative Defense)

    k.    Adequate Remedy at Law (Twelfth Affirmative Defense)

    l.    Failure to Mitigate Damages (Thirteenth Affirmative Defense)

    m.    Failure of Condition Precedent (Fourteenth Affirmative Defense)

    n.    Excuse for Non-Performance (Fifteenth Affirmative Defense)

    o.    Frustration of Purpose (Sixteenth Affirmative Defense)

    p.    Novation (Seventeenth Affirmative Defense)

    q.    Laches (Eighteenth Affirmative Defense)

r.      No Breach by WTRI (Nineteenth Affirmative Defense)

s.      Breach of Contract by PMI (Twentieth Affirmative Defense)

t.      Substantial Performance (Twenty-first Affirmative Defense)

u.      The Information Is Not A Trade Secret (Twenty-second Affirmative Defense)

v.      Independently Developed (Twenty-third Affirmative Defense)

w.      Readily Ascertainable (Twenty-fourth Affirmative Defense)

x.      PMI Failed To Take Prompt Action (Twenty-fifth Affirmative Defense)

y.      Lack Of Improper Acquisition, Disclosure or Use (Twenty-sixth Affirmative Defense)

z.      PMI Has Not Sufficiently Described Its Purported Trade Secrets (Twenty-seventh Affirmative Defense)

aa.     Statute Of Limitations (Twenty-eighth Affirmative Defense)

## III.   Witnesses

### a.    Witnesses counsel expects to call at trial

#### LAY WITNESSES WTRI EXPECTS TO CALL

1.   Sterling Chamberlain                Mr. Chamberlain is WTRI's CTO and is expected to testify regarding WTRI's business, the relationship between PMI and WTRI, including, but not limited to work performed under the parties' agreements, and development of the Maxx virtual environment.  Mr. Chamberlain may also testify regarding his knowledge (or lack thereof) of certain PMI flows alleged to be PMI's trade secrets.  Mr.

Chamberlain may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

2.    Lia DiBello

Dr. DiBello is WTRI's CEO and is expected to testify regarding WTRI's business, her research on cognitive science and accelerated learning (which are the cornerstones of the technology involved in this case), WTRI's customers, lost business, WTRI's NSF grants, the relationship between PMI and WTRI, including but not limited to the negotiations she personally conducted relating to the various agreements and work performed under the parties' agreements, WTRI's relationship with CVP, and the development and functionality of the Maxx virtual environment. Dr. DiBello may also testify regarding her knowledge (or lack thereof) of certain PMI flows alleged to be PMI's trade secrets. Dr. DiBello may also testify as to those matters for which she was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

12                                    18cv1927

3.  David Lehmann

Dr. Lehmann is WTRI's CFO and he is expected to testify regarding WTRI's business, financial projections, and the relationship between WTRI and PMI, including, but not limited to, work performed under the parties' agreements.

4.  Chris Mancus

Mr. Mancus, a PMI employee, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to, collection of source code, PMI's lack of knowledge regarding a testing tool called SonarQube that PMI appears to rely on for its allegation that WTRI's code was of "poor quality", which parties were responsible for which portions of the development, and those contractual obligations PMI failed to meet. Mr. Mancus may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

5.  Whitney Missildine

Dr. Missildine, a former WTRI employee who worked on the PMI/WTRI collaboration, is expected to testify regarding his employment at WTRI, his personal use and knowledge of flows prior

to PMI and WTRI's collaboration, his recommendation to use Lucid Charts (a software tool PMI alleges was part of the creation of the trade secrets), and work performed under the Development Agreement. Dr. Missildine may also testify regarding his knowledge (or lack thereof) of certain PMI flows alleged to be PMI's trade secrets.

6.    Thom Rossi                Mr. Rossi, a PMI employee, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to, work performed under the parties' respective agreements. Mr. Rossi will also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

7.    Ioana Sfetcu              Ms. Sfetcu, a PMI employee, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to, PMI's expenses for the projects resulting from the parties' agreements. Ms. Sfetcu may also testify as to those matters for which she was designated a corporate designee under Fed.

R. Civ. P. 30(b)(6).

| 8. | Shelby Smith | Dr. Smith, a former WTRI employee who worked on the PMI/WTRI collaboration, is expected to testify regarding her employment at WTRI and her work performed under the parties' agreements. Dr. Smith may also testify regarding her knowledge (or lack thereof) of certain PMI flows alleged to be PMI's trade secrets. |
| 9. | Joshua West | Mr. West, a former WTRI contractor who worked on the PMI/WTRI collaboration, is expected to testify regarding his employment with WTRI, work performed for WTRI as a contractor, development of the product as part of the parties' respective agreements, including, but not limited to, operation of the source code. Mr. West will also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).[6] |

[6] WTRI reserves the right to amend its witness categorizations to the extent they are impacted by: (1) the Court's rulings on pending *Daubert* motions; (2) any future Court rulings (including on motions *in limine*, exhibit objections, or deposition designation objections); (3) any instructions or guidance from the Court regarding whether witnesses can appear remotely; and/or (4) the witnesses PMI calls.

## LAY WITNESSES PMI EXPECTS TO CALL AT TRIAL

| | | |
|---|---|---|
| 1. | Joseph Cahill | PMI's Chief Customer Officer. Mr. Cahill is expected to testify regarding PMI's organizational and decision making structure, the nature of PMI's business, PMI's business strategy regarding the PAL project, PMI's expectations for the PAL project, and termination of the PAL project and the parties' agreements.[7] |
| 2. | Victor Carter-Bey | Former Director of Certification at PMI. Mr. Carter-Bey is expected to testify regarding the negotiation of the parties' agreements, the parties' communications, PMI's commitment to the PAL project and performance under the parties' agreements, and the termination of the parties' agreements. |
| 3. | Sterling Chamberlain | WTRI's Vice President and Senior Technologist. Mr. Chamberlain is |

---

[7] WTRI objects to Mr. Cahill's designation as a witness until PMI makes him available for deposition per the agreement of the parties.

PMI notes in response that it already stated it would make Mr. Cahill available for deposition at a mutually agreeable date and time which moots WTRI's objection. Moreover, WTRI obviously knew of Mr. Cahill's existence long before now given that it noticed his deposition, the parties agreed to a September 29, 2020 date for the deposition, and WTRI opted to take the deposition off calendar the day before it was to occur. Accordingly, there is no legitimate objection to PMI's inclusion of Mr. Cahill though PMI will provide briefing on the issue if the Court requests it.

|   | | expected to testify regarding the parties' relationship, the parties' work on the PAL project, and PMI's commitment to the PAL project.  Mr. Chamberlain may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6). |
|---|---|---|
| 4. | Lia DiBello | WTRI's President and Director of Research.  Dr. DiBello is expected to testify regarding negotiation of the parties' agreements, the parties' rights and obligations under those agreements, the parties' relationship, the parties' work performed on the PAL project, the development of the PAL project, and PMI's commitment to the PAL project. Dr. DiBello may also testify as to those matters for which she was designated a corporate designee under Fed. R. Civ. P. 30(b)(6). |
| 5. | David Garrett | PMI's Chief Strategy & Growth Officer. Mr. Garrett is expected to testify regarding PMI's business strategy and model, the marketability of the PAL product, and PMI's decision not to |

commercialize the PAL product.[8]

6.    Karen Holloway                    Lead Instructional Designer during the
                                         PAL project.  Ms. Holloway is expected
                                         to testify regarding the parties' work
                                         performed on the PAL project, PMI's
                                         relationship with Czarina Games, PMI's
                                         commitment to the PAL project, and the
                                         development and misappropriation of
                                         PMI's trade secrets.  Ms. Holloway may
                                         also testify as to those matters for which
                                         she was designated a corporate designee
                                         under Fed. R. Civ. P. 30(b)(6).

7.    Misael (Mitch) Labrador           Vice President of Software Development
                                         at Creative Veteran Productions (CVP).
                                         Mr. Labrador is expected to testify
                                         regarding CVP's relationship with the
                                         parties, CVP's role in the PAL project,
                                         CVP's work performed on the PAL
                                         project, the software and source code

---

[8] WTRI objects to Mr. Garrett's designation as a witness and intends to raise the issue at the pretrial conference.  Mr. Garrett's designation is also addressed in WTRI's motions *in limine*.

PMI responds that it will oppose WTRI's motion *in limine*.  Moreover, PMI disclosed Garrett as a witness on November 5, 2021.  See D.I. 227-1.  WTRI slept on this purported issue until its April 12, 2022 motion *in limine* – over five months later.  See D.I. 250-1. WTRI could have sought leave to depose Garrett during these five months or taken any other affirmative action – but WTRI did not.  WTRI should not be rewarded for its delay..

|   |   |   |
|---|---|---|
|   |   | development of the PAL project, and CVP's knowledge of PMI's trade secrets. |
| 8. | David Lehmann | WTRI's Vice President and Chief Operating Officer. Dr. Lehmann is expected to testify regarding the parties' agreements, the parties' rights and obligations under those agreements, the parties' relationship, the parties' work performed on the PAL project, and PMI's commitment to the PAL project. |
| 9. | Christopher Mancus | System Architect at PMI during the PAL project and technical lead on the PAL project. Mr. Mancus is expected to testify regarding software and source code development of the PAL product, the roles of Neudesic and CVP in software development of the PAL product, the parties' work performed on the PAL project, and PMI's commitment to the PAL project. Mr. Mancus may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6). |
| 10. | Timothy Marshall | President and Founder of Neudesic. Mr. Marshall is expected to testify regarding |

19                                          18cv1927

|  |  |  |
|---|---|---|
|  |  | Neudesic's relationship with the parties, Neudesic's role in and work on the PAL project, the software and source code development of the PAL project, and Neudesic's knowledge of PMI's trade secrets. |
| 11. | Betsy Redden | Manager of Online Learning at PMI during the PAL project.  Ms. Redden is expected to testify regarding the parties' agreements, PAL project deadlines and progress, the parties' work performed on the PAL project, PMI's relationship with Czarina Games, the development and misappropriation of PMI's trade secrets, and PMI's commitment to the PAL project.  Ms. Redden may also testify as to those matters for which she was designated a corporate designee under Fed. R. Civ. P. 30(b)(6). |
| 12. | Alicia Sanchez | CEO of Czarina Games and serious games designer.  Dr. Sanchez is expected to testify regarding Czarina Games's relationship with the parties, Czarina Games's role on the PAL project, Czarina Games's work completed on the PAL project, the software development |

|  | of the PAL project, and Czarina Games's knowledge of PMI's trade secrets. |
|---|---|
| 13.   Jesse Sardina | PMI's Project Manager for the PAL project.  Mr. Sardina is expected to testify regarding the parties' agreements, the division of the parties' responsibilities under the agreements, PMI's relationship with Neudesic, PMI's relationship with CVP, communications between the parties, PMI's work performed on the PAL project, the development and confidentiality of PMI's trade secrets, PMI's investment in the PAL project, and PMI's commitment to the PAL project. Mr. Sardina may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).[2] |

**b.    Expert Witnesses counsel expect to call at trial**

<u>EXPERT WITNESSES WTRI EXPECTS TO CALL AT TRIAL</u>

| **Ryan LaMotta** | Mr. LaMotta is expected to provide testimony as to |
|---|---|
| ASQ Consulting Group | appropriate damages and/or remedies due WTRI as |

---

[2] PMI reserves the right to amend its witness categorizations to the extent they are impacted by: (1) the Court's rulings on pending *Daubert* motions; (2) any future Court rulings (including on motions *in limine*, exhibit objections, or deposition designation objections); (3) any instructions or guidance from the Court regarding whether witnesses can appear remotely; and/or (4) the witnesses WTRI calls during its case-in-chief.

720 Rusk, Suite 425

Houston, TX 77002

281-728-8651

a result of the alleged wrongful conduct as well as to assess and comment on the reports of PMI's experts, Ms. Irwin, Mr. Fincher, and Dr. Ferri, relating to PMI's claims for damages. Mr. LaMotta will testify in accordance with and consistent with his expert reports produced previously in this matter and his deposition testimony.

**Dr. Mahesh Raisinghani**

Texas Woman's University

304 Administration Dr.

Denton, TX 76204

940-898-2000

Dr. Raisinghani will testify in accordance with and consistent with his expert reports produced previously in this matter and his deposition testimony, including, but not limited to the scope of project, program, and portfolio management, as compared to product management, whether PMI and WTRI used professional project management techniques for the project under the parties' respective agreements, and the Maxx game and what skills it teaches.

## EXPERT WITNESSES PMI EXPECTS TO CALL AT TRIAL

**Clark Aldrich**

Clark Aldrich Designs LLC

265 Warpas Road

Madison, CT 06443

(203) 245-3743

Expert in developing virtual educational simulations and serious games. Mr. Aldrich is expected to testify: (1) in response to WTRI's analysis of the scope of the field of use provision in the parties' agreements;[10] and (2) in support of

---

[10] WTRI objects to Mr. Clark Aldrich's designation as a rebuttal witness to Dr. Raisinghani's field of use opinions. PMI bears the burden to show that WTRI breached the field of use provision and therefore was obligated to provide an opening report on the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PMI's analysis of the scope of the project and product management industries and the field of use of the Maxx simulation.

**Dr. Mickey Ferri**

Insight Economics

4275 Executive Sq., Suite 200

San Diego, CA 92037

(858) 373-9901

Expert in applied business economics with extensive experience in economic analysis, business strategy, consulting, and data analysis. Dr. Ferri is expected to testify regarding the marketability of the PAL product and the reasonableness of PMI's decision not to commercialize the PAL product.

**Richard Fincher**

Gerson Lehrman Group, Inc.

60 E. 42nd St., 3rd Floor

New York, NY 10165

(212) 984-8500

Global business and engineering executive with expertise in strategic planning, budget development, marketing, and operations.  Mr. Fincher is expected to testify regarding the practices of the project management industry, professional project management methodologies and processes, and the reasonableness of PMI's business approach to the PAL project.

**Carlyn Irwin**

Cornerstone Research

555 W. 5th St., 38th Flr.

Los Angeles, CA 90013

(213) 553-2533

Expert in analyzing economic, financial, causation, and accounting issues in context of damages claims, valuing businesses, and conducting financial forensic analysis in commercial disputes.  Ms. Irwin is expected to testify: (1) in response to WTRI's damages

subject matter.  WTRI intends to raise this issue at the pretrial conference and the issue is part of WTRI's *Daubert* briefing.

analysis; and (2) in support of PMI's damages claim and offset defense.

**Jeremiah Stepan**

Exponent

5401 McConnell Avenue

Los Angeles, CA 90066

(310) 754-2743

Expert in electrical and electronic systems including software design. Mr. Stepan is expected to testify regarding the efficacy of the software developed for the PAL project, source code for the PAL project, and the reasonableness of PMI's decision to terminate the development of the software.

**Dr. Ricardo Valerdi**

University of Arizona

1127 E. James E. Rogers Way

Tucson, AZ 85721

(520) 621-6561

Expert in industrial and systems engineering. Dr. Valerdi is expected to testify regarding PMI's methods of developing its trade secrets, the identification of PMI's trade secrets, and WTRI's misappropriation of PMI's trade secrets.

> c.    **Additional Witnesses, including experts, counsel do not expect to call but reserve the right to call**

**ADDITIONAL WITNESSES WTRI RESERVES THE RIGHT TO CALL**

1.    Robert Burke

Mr. Burke, a PMI employee, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to, PMI's document collections efforts, PMI's document retention policies, and to what extent those were followed in this case.

24                                              18cv1927

|   |   |   |
|---|---|---|
|   |   | Mr. Burke may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6). |
| 2. | Victor Carter-Bey | Dr. Carter-Bey, a former PMI executive, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to his employment with PMI, negotiations relating to the parties' agreements, work performed under the parties' respective agreement, and an offer to sell the product to WTRI when the project was winding down. |
| 3. | Nick Ferrara | Mr. Ferrara will testify in accordance with and consistent with his expert reports produced previously in this matter and his deposition testimony, including, but not limited to his analysis of the source code via visual inspection and through the use of tools, and whether certain acceptance criteria were met and if not, why not. Mr. Ferrara's testimony is expected to rebut PMI's allegations regarding WTRI's code quality and PMI's allegation that certain acceptance |

25                                                                18cv1927

criteria were not met.

4.    Dr. Philip Greenspun

Dr. Greenspun will testify in accordance with and consistent with his expert reports produced previously in this matter and his deposition testimony, including, but not limited to his analysis of the source code via visual inspection, scalability of WTRI's code, and whether certain acceptance criteria were met and if not, why not.   Dr. Greenspun's testimony is expected to rebut PMI's allegations regarding whether certain acceptance criteria were met.

5.    Karen Holloway

Ms. Holloway, a PMI employee who worked on the PMI/WTRI collaboration, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to PMI's alleged trade secrets, including their development, value (or lack thereof), damages (or lack thereof), marking (or lack thereof), WTRI's access (or lack thereof) to the alleged trade secrets, and alleged misappropriation, as well as the development of the PAL

| | | |
|---|---|---|
| | | project, including software development, content creation, subject matter experts, individual roles and responsibilities, and contributions and interactions between individuals involved with the project. Ms. Holloway may also testify as to those matters for which she was designated a corporate designee under Fed. R. Civ. P. 30(b)(6). |
| 6. | Mitch Labrador | Mr. Labrador, the CEO of CVP (a vendor associated with the PMI/WTRI collaboration) is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to work performed by CVP as part of the parties' respective agreements, CVP's prior work with WTRI, and his understanding of any alleged benefits to PMI's alleged trade secrets. |
| 7. | Timothy Marshall | Mr. Marshall, an employee of Neudesic (a third-party vendor associated with the PMI/WTRI collaboration), is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to project |

management, risk analysis, and other contributions by Mr. Marshall and Neudesic to the PAL project, interactions with others involved with the project, industry terms and usage, industry customs and norms.

8.   Betsy Redden

Ms. Redden, a PMI employee, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to her work on the projects resulting from the parties' respective agreements.   Ms. Redden may also testify as to those matters for which she was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

9.   Alicia Sanchez

Dr. Sanchez is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to validation and other contributions by Dr. Sanchez and Czarina Games to the PAL project, interactions with others involved with the project, identification of risk, and PMI's risk mitigation (if any).

10.   Jesse Sardina

Mr. Sardina, a PMI employee and the PMI project manager for the PMI/WTRI collaboration, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to PMI's verified interrogatories, his work on the projects resulting from the parties' respective agreements, and how PMI's alleged damages are related to WTRI's alleged breaches.  Mr. Sardina may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

11.   Dr. Rajeev Surati

Dr. Surati will testify in accordance with and consistent with his expert report produced previously in this matter and his deposition testimony, including, but not limited to, his analysis of the Maxx virtual environment, whether PMI's alleged trade secrets qualify as trade secrets, and whether WTRI misappropriated any alleged trade secret. Dr. Surati's testimony is expected to rebut PMI's allegations that WTRI misappropriated PMI's alleged trade secrets.

12.   Brian Weiss                 Mr. Weiss, a former PMI employee, is expected to testify consistent with the parties' respective deposition designations in this case, including, but not limited to the negotiations that resulted in the agreements and work performed under the parties respective agreements.  Mr. Weiss may also testify as to those matters for which he was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

**ADDITIONAL WITNESSES PMI RESERVES THE RIGHT TO CALL**

1.   Murat Bicak                  Former Chief Strategy & Growth Officer at PMI. Mr. Bicak is expected to testify regarding the parties' relationship, the marketability of the PMI Advanced Learning ("PAL") software, PMI's decision not to commercialize the PAL product, and PMI's good faith commitment to the PAL project.[11]

---

[11] WTRI objects to Mr. Bicak's designation as a witness until PMI makes him available for deposition in the United States per the agreement of the parties.

PMI responds by noting at the outset that WTRI's characterization of the parties' earlier agreement regarding Mr. Bicak is incorrect.  PMI never agreed to make Mr. Bicak available for deposition "at least 21 days prior to the start of trial" or "in the United States."  Instead, PMI agreed to make Mr. Bicak available for deposition prior to trial if it intends to call him to testify in connection with WTRI's earlier failed attempts at serving a deposition subpoena.  Mr. Bicak is a former employee of PMI who PMI understands does not generally reside in the United States.  PMI stated in this order that he "may" be called to testify.  PMI already agreed to make Mr. Bicak available for deposition at a mutually agreeable date and time if he "will" testify which should moot any WTRI

2.     Whitney Missildine          WTRI's Lead Designer for the PAL project.  Dr Missildine is expected to testify regarding the parties' work performed on the PAL project, the development of PMI's trade secrets, and PMI's commitment to the PAL project.

3.     Thom Rossi          Manager of Information Technology for Advanced Learning while at PMI.  Mr. Rossi is expected to testify regarding the parties' responsibilities for technical aspects of the PAL project, the parties' work performed on the PAL project, the development of the software and source code for the PAL project, Neudesic and CVP's roles on the PAL project, and PMI's commitment to the PAL project.

4.     Ioana Sfetcu          Senior Accountant at PMI.  Ms. Sfetcu is expected to testify regarding the preparation and contents of PMI''s expense records relating to the PAL project.  Ms. Sfetcu may also testify as to those matters for which she was designated a corporate designee under Fed. R. Civ. P. 30(b)(6).

5.     Shelby Smith          Product Engineer at WTRI.   Dr. Smith is expected to testify regarding the parties' work

---

objection.  Additionally, WTRI has not provided any authority (despite PMI's request for authority) showing that PMI has any obligation to do more than it already said it would with respect to making Mr. Bicak available for deposition.  PMI will provide briefing on this issue at the Court's request.

performed on the PAL project, the development of PMI's trade secrets, and PMI's commitment to the PAL project.

6.  Steven Townsend

Director of Network Programs at PMI during the PAL project.  Mr. Townsend is expected to testify regarding PMI's business strategy, the purpose of the PAL project, the parties' negotiations of the agreements, the parties' communications, and PMI's expectations for the PAL project.

7.  Brian Weiss

Former Vice President of Practitioner Markets at PMI.  Mr. Weiss is expected to testify regarding the negotiation and execution of the parties' agreements, the terms of the parties' agreements, the parties' relationship, communications between the parties, PMI's investment in the PAL project, termination of the parties' agreements, the parties' work performed on the PAL project, and PMI's commitment to the PAL project.

8.  Joshua West

Software Engineer at WTRI during the PAL project.  Mr. West is expected to testify regarding PMI's work on the PAL project, the software development of the PAL product, and PMI's commitment to the PAL project.

**IV.   Exhibits**

     **a.   Exhibits that counsel actually expect to offer at trial**

WTRI's list of exhibits it expects to offer and may offer at trial are attached hereto as **Exhibit A**, which includes PMI's objections.  WTRI further reserves the right to rely upon any exhibit identified by PMI in Exhibit B.

PMI's list of exhibits it expects to offer and may offer at trial are attached hereto as **Exhibit B**, which includes WTRI's objections.  PMI further reserves the right to rely upon any exhibit identified by PMI in Exhibit A.

**V.   Statement of Facts to Which the Parties Stipulate**

1.   Plaintiff Workplace Technologies Research, Inc. ("WTRI") is a Delaware corporation with its principal place of business in San Diego, California.

2.   Defendant Project Management Institute, Inc. ("PMI") is a Pennsylvania corporation organized as a not-for-profit membership association, with its principal place of business in Newtown Square, Pennsylvania.

3.   In late 2013, WTRI approached PMI, per the National Science Foundation's ("NSF") recommendation, to request a letter of support in connection with a grant WTRI intended to seek from the NSF.

4.   In early 2014, PMI and WTRI began discussions about a potential commercial partnership to co-develop an immersive accelerated learning technology platform for project management professionals.

5.   The parties entered two agreements relating to the co-development of an immersive accelerated learning technology platform for project management professionals.

6.   The parties' project came to be known as the Project Management Institute Advanced Learning ("PAL") project.

7.    The first agreement is called the "Software Technology Development And Purchase Agreement" (which the parties often refer to as the "Development Agreement") and has an effective date of September 8, 2015.

8.    The Development Agreement contemplated a phased software build with three phases named Alpha, Beta, and Charlie.

9.    The parties amended the Development Agreement through the "First Amendment to Software Technology Development and Purchase Agreement" (sometimes referred to as the "First Amendment to the Development Agreement"). The First Amendment to the Development Agreement has an effective date of November 30, 2016.

10.    The First Amendment to the Software Technology Development Agreement provided that the parties would enter into a Services Agreement (with PMI owing no additional payments under the Development Agreement) if PMI rejected the fifth version "Alpha Software" and retained the rejected version.

11.    On December 2, 2016, Dr. Victor Carter-Bey (with PMI) sent an email to Dr. Lia DiBello (with WTRI) stating PMI's election to reject the fifth version "Alpha Software" and retain the rejected software.

12.    The second agreement is called the "Services Agreement" and has an effective date of December 15, 2016.

13.    PMI and WTRI jointly collaborated on two software programs under the Development Agreement and Services Agreement: (a) Proteum ERP rehearsal, which began development under the Development Agreement; and (b) IceBochz rehearsal, which began development under the Services Agreement.

14.    WTRI sent PMI a letter dated June 18, 2018 containing a notice of termination of the Development Agreement and claiming alleged damages.

15.    WTRI developed the Maxx Virtual World Agile Leadership Rehearsal. WTRI advertises Maxx Virtual World Agile Leadership Rehearsal as one of its products.

## VI. List of all Deposition Transcripts by Page and Line, or Videotape Depositions by Section, that Will be Offered at Trial

WTRI's list of all deposition transcripts by Page and Line, or Videotape Depositions by Section, that will be offered at trial are attached here as **Exhibit C**, which includes PMI's objections and counter-designations and WTRI's objections to PMI's counter-designations.

PMI's list of all deposition transcripts by Page and Line, or Videotape Depositions by Section, that will be offered at trial are attached here as **Exhibit D**, which includes WTRI's objections and counter-designations and PMI's objections to WTRI's counter-designations.

## VII. Jury Instructions, Verdict Forms, Trial Briefs, and Proposed Voir Dire

Both sides will file proposed jury instructions, verdict forms, trial briefs and proposed voir dire questions one week prior to the commencement of trial pursuant to CivLR 16.1(f)(9).  In addition to filing proposed jury instructions in accordance with Fed. R. Civ. P. 51 and CivLR 5.1, the parties will e-mail the proposed instructions to Chambers. If a party disagrees with a particular instruction, the party must submit an alternate instruction.

## VIII. Jury Trial Demanded

This case will be tried by jury.

## IX. Time Estimated for Trial

Each side is entitled to thirty hours to present their case, not including voir dire. Jury trial is to start on June 3, 2022 at 1:30 p.m.  The court will go dark as to this matter on June 16, 2022, and trial will commence again on June 17, 2022 at 8:30 a.m.[12]

---

[12] The Parties are reminded June 20, 2022 is a Federal Holiday.

Dated:  May 11, 2022

_____
Hon. Jinsook Ohta
United States District Judge

Dated:  April 28, 2022                     Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**


*/s/ Jose L. Patiño*
JOSE L. PATIÑO, CA Bar No. 149568
   JosePatino@eversheds-sutherland.com
NICOLA A. PISANO, CA Bar No. 151282
   NicolaPisano@eversheds-sutherland.com
SCOTT A. PENNER, CA Bar No. 253716
   ScottPenner@eversheds-sutherland.com
JUSTIN E. GRAY, CA Bar No. 282452
   JustinGray@eversheds-sutherland.com
REGIS C. WORLEY, JR., CA Bar No. 234401
   RegisWorley@eversheds-sutherland.com
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:        858.252.6502
FACSIMILE:        858.252.6503

Attorneys for Plaintiff and Counter-Defendant
WORKPLACE TECHNOLOGIES RESEARCH,
INC.

Dated:  April 28, 2022        **WILLKIE FARR & GALLAGHER LLP**

By:  */s/ Eric J. Bakewell*
        Eric J. Bakewell
        Hannah L. McMeans
        Benita S. Yu
        Emily Horak

Attorneys for Defendant and Counterclaimant
PROJECT MANAGEMENT INSTITUTE, INC.

Eric J. Bakewell (SBN 241529)
 EBakewell@willkie.com
Hannah L. McMeans (SBN 323551)
 HMcmeans@willkie.com
Benita S. Yu (SBN 329195)
 BYu@willkie.com
Emily Horak (SBN 340115)
 EHorak@willkie.com
**WILLKIE FARR & GALLAGHER LLP**
2029 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone:  (310) 855-3000
Facsimile:   (310) 855-3099

*Attorneys for Defendant and Counterclaimant*
Project Management Institute, Inc.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WORKPLACE TECHNOLOGIES RESEARCH, INC., | Case No. 3:18-CV-01927-JO-MSB |
| Plaintiff, | Hon. Jinsook Otah<br>Courtroom No. 4C |
| v. | **DEFENDANT AND COUNTERCLAIMANT PROJECT MANAGEMENT INSTITUTE, INC.'S OBJECTIONS TO WORKPLACE TECHNOLOGIES RESEARCH, INC.'S DEPOSITION DESIGNATIONS** |
| PROJECT MANAGEMENT INSTITUTE, INC., | |
| Defendant. | |
| PROJECT MANAGEMENT INSTITUTE, INC., | Action Filed:  August 20, 2018<br>Trial Date:    June 2, 2022 |
| Counterclaimant, | |
| v. | |
| WORKPLACE TECHNOLOGIES RESEARCH, INC.; and DOES 1-15 inclusive, | |
| Counterdefendants. | |

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

51967573

Defendant and Counterclaimant Project Management Institute, Inc. ("PMI") hereby submits its objections to Workplace Technologies Research, Inc.'s ("WTRI") deposition designations pursuant to Federal Rule of Civil Procedure 26(a)(3)(B). PMI cites the Federal Rules of Evidence upon which it relies in objecting to WTRI's designations where applicable.

PMI makes the following General Objections to WTRI's deposition designations in addition to the specific objections made herein:

- PMI objects under Federal Rules of Evidence 402 and 403 to WTRI's inclusion of attorney colloquy in its designations as Counsel's testimony is irrelevant, prejudicial, needlessly confusing, and misleading to a jury.

- PMI objects to the use of designations as "beyond the scope" where WTRI's questions and/or a witness's response are outside the scope of the deposition topics for which the witness was designated as a corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6).

- PMI objects to the use of deposition designations to the extent those designations are submitted in violation of Federal Rule of Civil Procedure 32 regarding the use of depositions in court proceedings.

PMI notes that the applicability of certain objections (including, but not limited to, objections based on relevance and hearsay) ultimately may depend on the context and purpose for which a designation is used by WTRI at trial. PMI reserves the right to withdraw its objections or assert additional objections to WTRI's designations at the time that WTRI's intended usage of such designations becomes clear.

PMI also reserves its rights to: (1) offer any of WTRI's deposition designations even if not offered by WTRI; and (2) revise its list of objections and counter-designations (including by supplementing or amending its objections or counter-designations) as appropriate especially to the extent that WTRI withdraws or modifies any of its designations, the Court sustains any of PMI's objections to

1

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

1  WTRI's designations, the Court makes other rulings that impact the issues to be

2  tried and the evidence that is admissible, and/or the parties reach any agreements

3  impacting the necessity of certain testimony and other evidence.

4      Additionally, PMI is separately objecting to exhibits included on WTRI's

5  Trial Exhibit List filed on concurrently filed.  PMI reserves the right to revise its

6  deposition designation objections and counter-designations to the extent that they

7  are impacted by the resolution of PMI's objections to WTRI's exhibits.

8  Dated:  April 18, 2021         WILLKIE FARR & GALLAGHER LLP

9          By:  */s/ Eric J. Bakewell*

10             Eric J. Bakewell

           Hannah L. McMeans

11             Benita S. Yu

           Emily Horak

12             *Attorneys for Defendant and*

13             *Counterclaimant*

           Project Management Institute, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

PMI'S OBJECTIONS TO WTRI'S DEPOSITION DESIGNATIONS

51967573